12/29/2021 2:02 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 60372053
By: Monica Jackson
Filed: 12/29/2021 11:36 AM

CAUSE NO. _____

| | | |
|---|---|---|
| RIPPY OIL COMPANY | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ACE AMERICAN INSURANCE | § | |
| COMPANY, CHARTIS SPECIALTY | § | |
| INSURANCE COMPANY N/K/A AIG | § | |
| INSURANCE COMPANY | § | |
| SPECIALTY INSURANCE COMPANY, | § | |
| AND RISK SPECIALISTS COMPANIES | § | |
| INSURANCE AGENCY, INC. | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE AND JURY OF SAID COURT:

COMES NOW, Plaintiff Rippy Oil Company ("Rippy Oil"), on its own behalf, and on behalf of all working interest owners, to-wit: Rippy Interest, LLC, the Genecov Group, Inc. and John D. Proctor (hereinafter sometimes referred to as "Plaintiff Rippy Oil" or Plaintiffs) file this Original Petition against Defendant ACE American Insurance Company ("ACE"), Chartis Specialty Insurance Company, now known as, AIG Specialty Insurance Company ("AIG"), and Risk Specialists Companies Insurance Agency ("Risk Specialists"), and for cause of action would show the Court as follows:

I.

### DISCOVERY PLAN

1.   Pursuant to Texas Rule of Civil Procedure 190.1, Plaintiff requests that this case be designated as a Level 3 case in accordance with the discovery control plan tailored to the circumstances of this specific suit.



EXHIBIT
A

2. Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that Defendants tender required disclosures pursuant to Texas Rules of Civil Procedure 194.1, 194.2, 194.3, and 194.4.

## II.

## <u>PARTIES</u>

3. Plaintiff Rippy Oil Company is a Texas Corporation with its principal place of business in Tyler, Smith County, Texas.  Rippy Oil Company brings suit on its own behalf and on behalf of all working interest owners, to wit: Rippy Interest, LLC, the Genecov Group, Inc. and John D. Proctor.

4. Rippy Interest, LLC is a Texas limited liability company with its principal place of business in Tyler, Smith County, Texas.

5. The Genecov Group, Inc. is a Texas corporation with its principal place of business in Tyler, Smith County, Texas.

6. John D. Proctor is an individual residing in Tyler, Smith County, Texas.

7. Defendant ACE American Insurance Company ("ACE") is a fire and casualty insurance company incorporated in the state of California, with its principal place of business in Pennsylvania. Defendant ACE is admitted, authorized, and licensed by the Texas Department of Insurance to write general liability insurance policies, providing commercial general liability insurance coverage in the state of Texas, including issuing general liability policy No. HDO G24940214, providing commercial general liability insurance coverage to Knight Oil Tools, Inc. now known as Knight Oil Tools, LLC and all its operations in Texas.  Defendant ACE is engaged in the business of insurance in this state and designated an agent for service of process in Texas.  Defendant ACE American Insurance Company may be served with process by serving

its designated registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. Issuance of citation and service of process by certified mail, return receipt requested, is requested at this time.

8.     Defendant Chartis Specialty Insurance Company, now known as, AIG Specialty Insurance Company ("Defendant AIG"), is an insurance company incorporated in the state of Illinois with its principal place of business in the state of New York. Defendant AIG is not admitted, authorized, or licensed to issue liability insurance in the state of Texas. On information and belief, Chartis Specialty Insurance Company, was not eligible in 2010 and 2011 to issue surplus lines liability insurance, including the surplus lines commercial general liability coverage, issued by policy No. BE 13074559 in Texas under Chapter 981 of the Texas Insurance Code and therefore was an unauthorized insurer. Defendant AIG nevertheless engaged in the business of insurance in this state, including issuing surplus lines commercial umbrella liability policy No. BE 13074559 providing surplus lines commercial general liability insurance coverage to Knight Oil Tools, Inc. now known as Knight Oil Tools, LLC. and all it operations in Texas. Defendant AIG's policy was issued through Patrick Dwayne David and Knox Insurance Agency Group LLC. On information and belief Mr. David was not a licensed surplus lines agent in Texas and Knox Insurance Agency Group LLC was not a licensed surplus lines agency in Texas. Defendant AIG is engaged in the business of insurance in this state, but has not designated an agent for service of process in Texas. Defendant AIG, as an ineligible and therefore unauthorized surplus lines carrier issuing policies in Texas, is deemed to have designated the Commissioner of Insurance of the Texas Department of Insurance as its agent for service pursuant to Texas Insurance Code 804.201. Indeed, Defendant AIG pursuant to Paragraph O titled "Service of Suit" under IV headed "Conditions" in its commercial umbrella liability policy

No. BE 13074559, agreed that service of process may be made upon Counsel, Legal Department, Chartis Specialty Insurance Company (now known as AIG Specialty Insurance Company), 175 Water Street, New York, New York 10038, or his or her representative.  Further Defendant AIG agreed in Condition VI(O) headed "Service of Suit" to designate the Commissioner of Insurance as its true and lawful attorney upon whom may be served any lawful process and further designated the above-named counsel as the person to whom the Commissioner of Insurance of the Texas Department of Insurance is authorized to mail such process.

9.      Accordingly, Defendant AIG may be served with process by serving the Commissioner of the Texas Department of Insurance at 333 Guadalupe, Austin, Texas 78701, who is thereafter requested to mail process including Citation and this Petition to Counsel, Legal Department, Chartis Specialty Insurance Company, 175 Water Street, New York, New York 10038.  Issuance of Citation and service of process by certified mail, return receipt requested, is requested at this time.  The mailing address for Counsel, Legal Department, Chartis Specialty Insurance Company is 175 Water Street, New York, New York 10038 should be typed on the face of the Citation.

10.      Defendant Risk Specialists Companies Insurance Agency, Inc. ("Defendant Risk Specialists"), is a managing general agent incorporated in the state of Massachusetts with it principal place of business in Houston, Harris County Texas.  Defendant Risk Specialists is engaged in the business of insurance in this state and designated an agent for service of process in the state of Texas. Defendant Risk Specialists may be served with process by serving its designated registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin Texas, 78701-3218. Issuance of citation and service of process by certified mail, return receipt requested, is requested at this time.

4

III.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this lawsuit because the amount in controversy and damages sought are within the jurisdictional limits of this Court. Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiffs seek monetary relief over $1,000,000.00. Additionally, the district court has residual jurisdiction of suits for declaratory relief pursuant to the Texas Uniform Declaratory Judgment Act set out in Tex. Civ. Prac. & Rem. Code §§ 37.001 – 37.011, as the amount in controversy is in excess of the minimum jurisdictional limits of this Court. The Court has both general and specific personal jurisdiction over Defendants.   Defendant ACE is an authorized and admitted fire and casualty insurance carrier approved and licensed by the Texas Department of Insurance to issue general liability insurance policies with commercial general liability insurance coverage to Texas insureds and Louisiana insureds doing substantial business in the State of Texas like judgment debtor Knight Oil Tools, Inc. now known as Knight Oil Tools, LLC ("KOT"). Defendant AIG is not an authorized or admitted liability insurance carrier, but is currently an eligible surplus lines carrier subject to Chapter 981 of the Texas Insurance Code and regulation by the Texas Department of Insurance pursuant to Chapter 15 of the Texas Administrative Code. Defendant AIG has issued surplus lines general liability insurance policies with commercial general liability coverage to Texas insureds and Louisiana insureds like KOT doing business in Texas. Defendant ACE and AIG's business activities were purposefully directed to the state of Texas and the disputes between Plaintiff and Defendant ACE arise from and are related to those business activities, including defense of and indemnification of KOT pursuant to ACE policy No. HDO G24940214 and Chartis Specialty Insurance Company policy No. BE 13074559 in the underlying Texas state

court lawsuit brought by Plaintiff against KOT.  Further, the contacts of Defendants ACE and AIG with Texas are purposeful, continuous, and systematic in that the insurance company Defendants have issued numerous liability insurance policies to multiple Texas insureds since they began conducting the business of insurance in Texas, including the issuance of general liability insurance policies with commercial general liability insurance coverage to KOT, who conducts business in the state of Texas.

12.     Venue is proper in Harris County, Texas pursuant to the provisions of Section 15.002(a)(3) of the Texas Civil Practice & Remedies Code as Defendant Risk Specialist has a principal office in Houston, Harris County, Texas as defined by Section 15.001(a). Venue is also proper in Harris County, Texas or in the alternative  Leon County, Texas pursuant to the provisions of Section 15.002(a)(1) of the Texas Civil Practice & Remedies Code because all or a substantial part of the events giving rise to this insurance dispute occurred in  Harris or Leon County, Texas. The surplus lines policy No. BE 13074559, issued on behalf of  Chartis Specialty Insurance Company, was bound and issued by Defendant Risk Specialists in Houston, Harris County Texas. The occurrence of property damage sustained by Plaintiffs occurred in Leon County, Texas. The underlying lawsuit asserting the claims of Plaintiff against Defendants ACE and AIG's named insured KOT, was filed in the 278th Judicial District Court of Leon County, Texas. Defendants ACE and AIG retained defense attorneys located in Houston, Harris County Texas and  directed the defense of KOT in Leon County, Texas.  A final judgment was entered in favor of Plaintiffs against KOT, in the 278th Judicial District Court of Leon County, Texas after a fully adversarial trial and jury verdict in favor of Plaintiff.  Subsequent to discharge from bankruptcy, KOT moved its principal office and principal place of business from Lafayette Louisiana to Houston, Harris County Texas.  Plaintiff, as judgment creditor and third-party

6

beneficiary of the Defendants ACE and AIG liability insurance policies in question, seek to recover the full amount of the final judgment entered in the 278th Judicial District Court of Leon County, Texas from Defendants ACE and AIG. Venue is also proper in Harris or Leon County, Texas pursuant to 15.005 of the Texas Civil Practice Remedies Code because Plaintiff has established proper venue against one or more of the Defendants in Harris or Leon County, and therefore Plaintiff has venue over all of the Defendants and all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences. Finally, under IV "Conditions" Paragraph O, headed "Service of Suit," Defendant AIG agreed "in the event of our failure to pay any amount claimed to be due hereunder, we, at the insured's request, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Harris County or in the alterative Leon County, Texas District Courts qualify as courts of competent jurisdiction to which Defendant AIG has submitted to the jurisdiction.

## IV.

## CHOICE OF LAW

13.    The dispute between Plaintiff and Defendants is directly related to policies of general liability insurance with commercial general liability insurance coverage issued by Defendants and concerns whether the policies of liability insurance are required to pay the final judgment obtained by Plaintiff against KOT. Plaintiff is a judgment creditor and third-party beneficiary under the policies issued by Defendants ACE and AIG. Defendant ACE's policy No. HDO G23740214 issued to KOT provides in pertinent part at Section IV headed "Commercial General Liability Conditions," Paragraph 3 titled "Legal Action Against Us," "a person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured".

14.     Likewise, Defendant AIG policy No. BE 13074559 issued to KOT provides in pertinent part at Section VI titled "Conditions," in Paragraph J that "a person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured;....". Plaintiff is a Texas company with its principal place of business in Texas that obtained a jury verdict and final judgment in Cause No. 0-10-498 styled Rippy Oil Company, et al. vs. Knight Oil Tools, Inc., et al., in the 278th Judicial District Court of Leon County, Texas, after a fully adversarial trial in which Defendants ACE and AIG hired Texas attorneys to vigorously defend and contest the allegations against Defendants ACE and AIG's named insured KOT.  As a Texas judgment creditor of KOT and third-party beneficiary under the policies issued by Defendants ACE and AIG, Plaintiff brings a declaratory judgment and breach of contract action to recover the amount of the final judgment, interest and costs, from Defendants ACE and AIG under Texas law. Article 21.42 of the Texas Insurance Code provides:

(a) Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this state or at the home office of the company or corporation issuing same.

15.     The Texas Insurance Code therefore directs that Texas law applies when: (1) the insurance proceeds were paid or are payable to a citizen or inhabitant of Texas; (2) the policy was issued by a company doing business in Texas; and (3) the policy was issued in the course of the company's insurance business in Texas.  Scottsdale Ins. Co. v. National Emergency Services,

8

Inc., 175 S.W.3d 284, 292 (Tex. App.—Houston [1st Dist.] 2004, no pet.). All three elements are met here.

16.     Additionally, Plaintiffs seek a declaration that Chartis Specialty Insurance Company policy No. BE 13074559 is unauthorized insurance pursuant to Texas Insurance Code §§ 981.103-981.105, 981.202-981.203, 981.211, 981.213 and 981.216. Anyone who assists in procuring unauthorized insurance like Defendant Risk Specialist is individually liable for unpaid claims under the policy pursuant to Texas Insurance Code §101.201. Likewise an unauthorized insurer cannot enforce policy exclusions in an attempt to avoid coverage pursuant to Texas Insurance Code §101.201

17.     Accordingly, Texas law governs this dispute between Plaintiff and Defendants.

<div align="center">V.</div>

<div align="center">FACTUAL BACKGROUND</div>

18.     KOT rents steel drill pipe delivered from storage facilities in Houston, Alice, and Odessa, Texas as well as Broussard, Louisiana and locations in other states. On or about May 11, 2010, Pioneer Drilling was utilizing the drill pipe rented, supplied and represented to have been API inspected and API Premium Class by KOT during normal drilling operations to finish drilling the horizontal leg of the Easterling No. 1-H well in Leon County, Texas. The drill pipe was being utilized on that date well within the capacity, capabilities, and operating parameters of API Premium Class drill pipe, when the drill pipe supplied by Defendant KOT catastrophically failed physically damaging and destroying a valuable portion of the Easterling No. 1-H well which prevented its completion and subsequent production of oil reserves from the target intervals Plaintiff had successfully penetrated with the Easterling No. 1-H well bore. Plaintiff made every effort to mitigate their damages by attempting to fish the failed drill pipe, separated

<div align="center">9</div>

drill pipe string, bottom-hole assembly, and drill bit damaged and lost in the hole after notifying Defendant KOT of the drill pipe failure. Despite efforts to salvage the Easterling No. 1-H well, the jury found that the Easterling No. 1-H well could not be reproduced resulting in physical damage to and loss of well bore, the oil bearing formation the well bore had penetrated, and hydrocarbon reserves, the drilling equipment damaged and lost down hole and charged to Plaintiffs, all of which tangible property damage was caused by the failed drill pipe delivered by KOT. After days of technical evidence, in a fully adversarial trial, a jury found for Plaintiff Rippy Oil on all liability issues submitted. A true and correct copy of the jury's charge is attached hereto as Exhibit A.

19. In response to Question 5 the jury found that Easterling No. 1-H well could not be reproduced finding that the KOT drill pipe failure ruined the well beyond repair and beyond the ability to replicate. In other words, the jury found that the Easterling No. 1-H well was totaled.

20. If KOT had totaled someone's pickup, the measure of damages would have been the value before minus the value after: "The ordinary measure of damage for injury to property is the difference between the value of that damage before the damage was done and its value after injury…." *Texas & P. Ry. Co. v. Levi & Bro., 59 Tex. 674, 679 (1883); see Gilbert Wheeler, Inc. v. Enbridge Pipelines (E.Texas), L.P., 449 S.W.3d 474,481 (Tex. 2014)* .

The same concept applies to a lost oil and gas well, *i.e.* a well that cannot be reproduced:

> If the well cannot be reproduced or if the cost of reproduced exceeds the value of the well, the proper measure of damages is the difference in the reasonable cash market value of the well, as equipped, immediately before and immediately after the tubing collapse.

*Atex Pipe & Supply, Inc. v. Sesco Prod. Co., 736 S.W. 2d 914, 917 (Tex. App.—Tyler 1987, writ denied).*

This rule from *Atex* has been the law for years in Texas and remains good law today. *Dowell v. Cichowski*, 640 S.W.2d 342,350 (Tex. Civ. App. — San Antonio 1976, no writ); *Whitson Co. v. Bluff Creek Oil Co.*, 278 S.W.2d 339, 346 (Tex.Civ. App.--Fort Worth 1955), *aff's* 293 S.W. 2d488 (Tex. 1956); *Hazlewood Patterson Co. v. Hancock*, No. 10-03-00274-CV, 22004 WL 2903861, at*2 (Tex. App. —Waco Dec. 15, 2004. Pet. denied). *"Atex* sets forth the measure of damages for a damaged well."

21.     All the evidence produced during the fully adversarial trial showed that the Easterling No. 1-H well was not reproducible as a result of the KOT drill pipe failure. KOT brought no witnesses who testified that the well could be reproduced. The jury found that KOT ruined the well- beyond repair and beyond the ability to replicate-so KOT and Defendants ACE and AIG justly ought to pay the value of the destroyed property which the jury found in Question 7 to be $5.9 million dollars.

22.     The judge of the 278th entered a Final Judgment in Plaintiff Rippy Oil's favor against KOT in the amount of $5,538,643.13. Additionally, the Court awarded prejudgment interest on "these past damages in the amount of $2,056,885.14 through June 1, 2017 and an additional $758.72 per day until the day before final judgment was signed" on June 4, 2018. The Court further ordered that the Final Judgment would bear post-judgment interest at the rate of 5% compounded annually, from the date of the Final Judgment on June 4, 2018 until paid. A copy of the Final Judgment is attached as Exhibit B.

23.     KOT had previously filed for Chapter 11 bankruptcy on August 8, 2017. Plaintiff Rippy Oil filed a Motion for an Order Granting Relief From the Automatic Stay in the bankruptcy court, which Motion was granted by then United States Bankruptcy Judge Robert Summerhays by Order signed October 24, 2017. A copy of the Bankruptcy Court's Order is

attached hereto as Exhibit C. As set out in the attached Order, the automatic stay was modified for the purpose of allowing the prosecution of the underlying lawsuit. The Order further allowed Plaintiff Rippy Oil to seek recovery on the claims asserted in the underlying lawsuit solely from applicable insurance policies of Defendant KOT and the other non-debtor defendants. The Order further set forth that Defendant KOT's liability in the underlying lawsuit and for any claims or causes of action that were or could have been raised in that lawsuit, shall be limited to the extent of any coverage provided by Defendant KOT's applicable insurance policies.

24.     KOT was a named insured on general liability insurance policies providing commercial general liability coverage to KOT in force and effect on the May 11, 2010 date of occurrence issued by ACE American Insurance Company ("ACE") policy No. HDO G24940214 and Chartis Specialty Insurance Company now known as AIG Specialty Insurance Company ("AIG") policy No. BE13074559. ACE and AIG retained attorneys to vigorously defend KOT and contest Plaintiff Rippy Oil's claims, causes of actions, and damages in the above-captioned lawsuit through jury trial, verdict, and Final Judgment signed June 4, 2018. Plaintiff Rippy Oil believes on information and belief that just before, during, or shortly after the fully adversarial trial of this case, ACE tendered its policy limit of $1 Million to AIG, and that AIG accepted same. After the verdict and entry of Final Judgment, AIG retained attorneys to appeal the Final Judgment in favor of Plaintiff Rippy Oil against Defendant KOT.

25.     On December 30, 2020, the Waco Court of Appeals initially affirmed this Court's Final Judgment. The attorneys retained by AIG filed a Motion for Rehearing on behalf of Defendant KOT. On November 10, 2021, the Waco Court of Appeals once again affirmed this trial court's Final Judgment. A copy of the Waco Appellate Court's Opinion is attached hereto as Exhibit D.

26.   On December 7, 2021, AIG filed a Declaratory Judgment against KOT in the United States District Court for the Western District of Louisiana despite the fact that KOT principal office and principal place of business was by that date Houston, Harris County, Texas, seeking a Declaration that the AIG policy is not triggered until the limits of liability of the ACE policy had been exhausted by payment, as well as a Declaration that AIG has no coverage for KOT's liability under the Final Judgment.   A true and correct copy of AIG's Complaint for Declaratory Judgment without exhibits is attached hereto as Exhibit E.

27.   KOT's Joint Chapter 11 Plan of Reorganization as of November 29, 2017 was confirmed December 1, 2017, KOT was previously discharged from bankruptcy, and the bankruptcy proceeding terminated on June 17, 2019.   Based upon information and belief, Plaintiff Rippy Oil asserts that neither ACE, nor AIG asserted claims of no-coverage against KOT in Bankruptcy Court or otherwise attempted to reserve no-coverage defenses before KOT was discharged in bankruptcy.   Although the ACE and AIG policies were produced in discovery as required by the Texas Rules of Civil Procedure, no denials of coverage letters or reservation of rights to deny coverage for ACE or AIG were produced by KOT or Defendants ACE and AIG. A true copy of the ACE and AIG policies produced by KOT and ACE in discovery pursuant to the Texas Rules of Civil Procedure, bates labeled Knight 000001 to Knight 000198, are attached as Exhibits F and G. Accordingly, it is doubtful that there is any case or controversy between Defendant KOT and AIG which is ripe for determination by the United States District Court for the Western District of Louisiana.   On the other hand, it is clear that AIG's conduct in waiting until December 7, 2021 to attempt to deny coverage to Defendant KOT by filing and requesting a Declaratory Judgment that it has no coverage raises potential claims and causes of action by KOT of estoppel and waiver and for breach of the AIG policy contract, breach of the

13

common law duty of good faith and fair dealing, violations of Chapter 541 and 542 of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practice Act.  It is unknown at this point whether  KOT intends to vigorously defend AIG's allegations as KOT has not been served in the Declaratory Judgment action pending in the United States District Court for the Western District of Louisiana.  Likewise, it is further unknown at this time whether KOT has entered into a fraudulent and collusive agreement or understanding with AIG to buy back the policy or otherwise to lay down and not vigorously defend the AIG Declaratory Judgment action in an effort to prevent Plaintiff Rippy Oil from satisfying the Final Judgment from the ACE and AIG policy proceeds.  To prevent any fraudulent or collusive agreement between KOT and AIG, Plaintiff Rippy Oil intends to file an Application for Turnover Order pursuant to Section 32.001 of the Texas Civil Practice & Remedies Code in the 278th Judicial District Court of Leon County Texas where the Final Judgment was entered.

28.   Since being discharged from bankruptcy KOT currently operates its drill pipe rental business at its principal office and principal place of business in Houston, Harris County, Texas.

VI.

**BREACH OF CONTRACT AGAINST DEFENDANTS ACE & AIG**

29.   Plaintiff Rippy Oil Company incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully alleged herein.

30.   Plaintiff Rippy Oil has standing to sue ACE and AIG under their policies issued to named insured and judgment debtor KOT,  as a judgement creditor after a fully adversarial jury trial defended by ACE and AIG, favorable jury verdict,  and final judgment ( see Supra, paragraphs 18 to 22 and Exhibits A and B) and third-party beneficiary under the ACE and AIG

14

policies ( see Supra, paragraphs 13 and 14 and Exhibits G and F).  Under the ACE and AIG policies, Defendants ACE and AIG had a duty to defend and indemnify and protect KOT against the property damage claims asserted by the Plaintiffs against named insured KOT in the underlying lawsuit by paying those sums that the insured KOT becomes legally obligated to pay as damages because of property damage to which their respective policies apply. (Exhibit G, Knight 000009; Exhibit F, Knight 000112).  Pursuant to the ACE and AIG policies, Defendants ACE and AIG have an obligation to pay Plaintiff Rippy Oil as judgment creditor of KOT and third-party beneficiary under the ACE and AIG policies up to their respective policy limits to satisfy the final judgment in favor of Plaintiff Rippy Oil against KOT (Exhibit F, Knight 000019; Exhibit G, Knight 000126).

31.    KOT made proper notification to and demand for coverage, defense and indemnification upon Defendant ACE and AIG.  KOT has complied with all necessary conditions and other terms of the policies or is otherwise excused from the performance of those conditions and terms on the basis of waiver and/or estoppel.  All conditions precedent to coverage under the ACE and AIG policies have been performed.

32.    Defendant ACE and AIG's liability policies provide coverage for KOT against all property damage claims asserted against KOT by Plaintiffs and no exclusions apply or the exceptions to those exclusions apply to bring the property damage claims back within the policies coverage. The burden of proof is on Defendants ACE and AIG to establish that any exclusion or limitation of coverage applies.  See Texas Insurance Code § 554.002.

33.    Both the ACE and AIG policies provide coverage for an "occurrence" causing "property damage", meaning injury to tangible property. See *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23-24 (Tex. 2008). There can be no doubt that physical

damage to and loss of the Easterling No. 1-H well bore, the oil bearing formation the well bore had penetrated, and the oil reserves from that formation are in fact injury to tangible property.

34.     Both the ACE and AIG policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions (Exhibit F, Knight 000022; Exhibit G, Knight 000133)." An accident is generally understood to be a fortuitous, unexpected, and unintended event. See *Lamar Homes, Inc. v. Mid-Continental Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). There can be no doubt that the catastrophic failure of the KOT drill pipe and resulting injury to Plaintiffs' tangible property was a fortuitous, unexpected, and unintended event from the point of view of both Plaintiff Rippy Oil and KOT and conclusively qualifies as an "occurrence" of property damage.

35.     Both the ACE and AIG policies define "property damage" to mean:

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

There is likewise no doubt that after a fully adversarial jury trial in which the defense of KOT was controlled by Defendants ACE and AIG, the jury in the underlying lawsuit returned a verdict and findings that demonstrate conclusively an "occurrence" causing "property damage", meaning injury to tangible property. Defendants ACE and AIG are bound by the findings by the jury in the underlying lawsuit which verdict became the basis of the final judgment in favor of Plaintiff Rippy Oil against KOT. See *Getty Oil Co., Inc. v. Ins. Co. of N. Am.*, 845 S.W. 2d 794, 802 (Tex. 1992).

36.     The duty to indemnify owed by Defendants ACE and AIG means that ACE and AIG are obligated to "pay all covered claims and judgments against an insured (KOT)".  See *D.R. Horton—Texas v. Markel Intern. Ins.*, 300 S.W. 3d 740, 743 (Tex. 2009).

37.     Defendants ACE and AIG breached their policies by wrongfully denying coverage to KOT including indemnification against and payment of the final judgment in favor of Plaintiff Rippy Oil for property damages resulting from the failure of KOT's drill pipe.

38.      As a proximate result of Defendant ACE's breach of contract, Plaintiff Rippy Oil has been damaged in an amount in excess of the minimum jurisdictional limits of the Court.

39.     As a proximate result of Defendants' breach of contract, Plaintiff Rippy Oil has been required to retain attorneys and incur fees and expenses to prosecute its rights as a judgment creditor and third party beneficiary including asserting the claims in this action.  Plaintiff Rippy Oil has previously made demand on Defendants ACE and AIG to satisfy the final judgment in its favor against KOT but Defendants ACE and AIG refused to do so.  Accordingly, Rippy Oil seeks to recover all attorneys' fees and expenses to prosecute this breach of contract cause of action against Defendants pursuant to Tex. Civ. Prac. & Rem. Code § 38.001

## VII.

## DAMAGES

40.     As a result of Defendant ACE and AIG's breach of their policies of liability insurance to indemnify KOT and pay Plaintiff Rippy Oil's final judgment against KOT up to the policy limits of the ACE and AIG policies, Plaintiffs have suffered damages in the full amount of the final judgment plus post judgment interest until the final judgment is paid in full.

41.     As a proximate result of Defendant ACE and AIG's breach of contract, Plaintiff Rippy Oil has been required to retain attorneys and incur fees and expenses to prosecute its rights

and recover its damages. Plaintiff has previously presented its demands to Defendants including demands for satisfaction of the final judgment. Accordingly, Plaintiff Rippy Oil seeks to recover all attorneys' fees and expenses to prosecute its breach of contract calls of action against Defendant pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code

## VIII.

## DEFENDANT RISK SPECIALIST IS INDIVIDUALLY LIABLE FOR UNPAID CLAIMS UNDER THE AIG POLICY

42.     Plaintiff Rippy Oil Company incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully alleged herein.

43.     Defendant AIG's policy issued by Chartis Specialty Insurance Company is a surplus lines policy and Defendant AIG is an unlicensed carrier in the state of Texas and therefore an unauthorized insurer subject to regulation under the Texas Insurance Code.  See *Mid-American Indemnity Insurance Co. v. King*, 22 S.W. 3d 321, 326 (Tex. 1995); *Lexington Insurance Company v. Strayhorn*, 209 S.W. 3d 83 (Tex. 2006).

44.     Both the surplus lines and unauthorized insurance statutes include among their purposes a concern that many insureds in this state hold insurance policies issued by insurers who are not authorized to do business in this state and who are not qualified as eligible surplus lines insures under Chapter 981 of Texas Insurance Code. See Texas Insurance Code §§ 101.001 (b) and 981.001 (b).  Accordingly, a licensed surplus lines agent and eligible surplus lines carrier are mandatory prerequisites for issuance of all surplus lines policies covering Texas risks.  Texas Insurance Code §§ 981.002 (3), 981.004 (a).  Failure to meet the statutory requirements renders Defendant AIG surplus lines policy unauthorized insurance.  Moreover anyone who assists in procuring unauthorized insurance is individually liable for unpaid claims under the policy.  See Texas Insurance Code §§ 981.103-981.105, 981.202-981.203, 981.211, 981.213, & 981.216; §

101.201. Moreover, an unauthorized insurer cannot enforce its policies while an eligible surplus line carrier may do so except in cases of a material and intentional Texas Insurance Code violation. See Texas Insurance Code § 101.201; § 981.005. Unauthorized insurers cannot even defend themselves in Texas without filing a bond. See Texas Insurance Code §§ 101.352-101.354.

45.     Defendant Risk Specialist is a Houston, Texas located and domiciled managing general agent who bound and issued Chartis Specialty Insurance Company policy No. BE 130774459. Defendant Risk Specialist assisted Patrick DeWayne David and Knox Insurance Agency Group, LLC with procuring the Chartis Specialty Insurance Company policy in question to cover KOT including KOT's Texas based facilities, business, and liability risks. On information and belief, Mr. David was not a licensed surplus lines agent in Texas and Knox Insurance Agency Group, LLC was not a licensed surplus agency in Texas and Defendant Risk Specialist did not comply with the requirements of Chapter 981 and the Texas Administrative Code Chapter 15.

46.     Accordingly, Defendant Risk Specialist is individually liable for any unpaid claims under the Chartis Specialty Insurance Company policy in question.

## IX.

## DECLARATORY JUDGMENT AGAINST DEFENDANTS

47.     Against all Defendants, Plaintiff Rippy Oil alleges the following cause of action.

48.     Plaintiff Rippy Oil incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully alleged herein.

49.     Pursuant to Tex. Civ. Prac. & Rem. Code, Chapter 37, Plaintiff Rippy Oil as judgment creditor of KOT under the June 4, 2018 final judgment and third party beneficiary

under the ACE and AIG policies requests that the Court declare rights, status and other legal relations as between Plaintiff Rippy Oil and Defendants under the liability insurance policies and applicable Texas Insurance Code provisions with respect to coverage for, indemnity against, and payment of the final judgment in Plaintiff Rippy Oil's favor against KOT after a fully adversarial trial controlled by Defendants ACE and AIG and jury verdict in favor of Plaintiff Rippy Oil.

50.    Specifically, Plaintiff Rippy Oil requests a declaration that:

a.     KOT is a named insured under Defendant ACE's Policy No. HDO G 24940214 and Defendant AIG Policy No. BE 13074559 entitled to coverage for defense, indemnification against, and payment of the final judgment signed and entered on June 4, 2018 in favor of Plaintiff Rippy Oil against KOT;

b.     Property damage claims caused by an occurrence asserted and established by Plaintiff Rippy Oil against KOT after a fully adversarial trial, jury verdict, and final judgment are covered under the provisions of Defendant ACE's policy No. HDO G 24940214 and Defendant AIG's policy No. BE 13074559;

c.     No exclusions or endorsements in the ACE and AIG policies apply to deny coverage to KOT or payment of the final judgment entered June 4, 2018 in favor of Plaintiff Rippy Oil, including exclusions D and K or endorsements 10, 24, or 28;

d.     Defendants ACE and AIG waived conditions in their policies and are estopped to assert same;

e.     Chartis Specialty Insurance Company is an unauthorized insurer and Chartis Specialty Insurance Company policy No. BE 13074559 is unauthorized insurance under the Texas Insurance Code and Defendant AIG is prohibited from asserting exclusions or limitations of coverage contained in the unauthorized policy pursuant to Texas Insurance Code § 101.201;

f.     Chartis Specialty Insurance Company materially and intentionally violated the Texas Insurance Code Chapter 981 and / or Chapter 225 in issuing Chartis Specialty Insurance Company policy No. BE 13074559;

g.      Defendant AIG is required to put up a bond to defend Plaintiffs claims and causes of action in Court pursuant to Texas Insurance Code §§ 101.352 – 101.354;

h.      Defendant Risk Specialists assisted directly and / or indirectly in the procurement of Chartis Specialty Insurance Company policy No. BE 13074459 and is liable for the full amount of a claim or loss under the terms of the policy if Defendant AIG fails to pay the full amount of the June 4, 2018 final judgment to Plaintiff Rippy Oil.

51.      Plaintiff Rippy Oil further requests a declaration that it is entitled to court costs, together with reasonable and necessary attorneys' fees as are equitable and just, pursuant to Tex. Civ. Prac. & Rem. Code § 37.009 and for such other declaratory judgment or decree as may be necessary and proper.

## X.

## SELF-AUTHENTICATION OF DOCUMENTS

52.      Pursuant to Texas Rule of Civil Procedure 193.7, Plaintiffs hereby gives notice of its intent to utilize documents produced by Defendants at pre-trial proceedings and at trial as self-authenticated documents.

## XI.

## DEMAND FOR JURY

53.      Pursuant to Texas Rule of Civil Procedure 216(a), Plaintiffs respectfully requests a trial by jury. A jury fee is being paid by Plaintiff simultaneously with this request for jury trial.

## XII.

## CONCLUSION AND PRAYER

54.      Plaintiffs respectfully requests that Defendants be cited to appear and answer, and that upon final jury trial, Plaintiff have judgment against Defendants for all relief requested.

Further, Plaintiffs seek an award of reasonable attorneys' fees as well as pre-judgment and post-judgment interest at the maximum rate allowed by law together with taxable court costs.

55.     Finally, Plaintiffs demand a judgment for such other and further relief, whether in law or at equity, to which it shows itself justly entitled.

Respectfully submitted,

LAW OFFICE OF KENNETH TEKELL, SR.
PLLC

By: *_Kenneth Tekell Sr._

Kenneth Tekell, Sr.
State Bar No. 19764000
ktekell@balagiatekell.com
6 Broad Oaks Lane
Houston, Texas 77056
Telephone:  713-823-6558

•   Signed by Mike Morris with permission


TAYLOR, BOOK, ALLEN & MORRIS, L.L.P.


By: _Mike Morris_

Mike Morris
State Bar No. 14495800
1221 McKinney, Suite 4300
Houston, Texas 77010
(713) 222-9542
(713) 655-7727 - Fax
mmorris@taylorbook.com

ATTORNEYS FOR PLAINTIFFS,
RIPPY OIL COMPANY INDIVIDUALLY
AND ON BEHALF OF ALL WORKING
INTEREST OWNERS, TO-WIT: RIPPY
INTEREST, LLC, THE GENECOV GROUP,
INC. AND JOHN D. PROCTOR

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Denise Nesbitt on behalf of Michael Morris
Bar No. 14495800
dnesbitt@taylorbook.com
Envelope ID: 60372053
Status as of 12/29/2021 3:21 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael Morris | | mmorris@taylorbook.com | 12/29/2021 2:02:38 PM | SENT |



12/29/2021 2:02:38 PM
Marilyn Burgess District Clerk
Harris County
Envelope No: 60372053
By: JACKSON, MONICA J
Filed: 12/29/2021 11:36:00 AM

**Marilyn Burgess**

HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

## Request for Issuance of Service

**CASE NUMBER:** _____  **CURRENT COURT:** _____

**Name(s) of Documents to be served:** Plaintiff's Original Petition

**FILE DATE:** __12-28-21_____ Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** **ACE American Insurance Company**

Address of Service: **1999 Bryan Street, Suite 900**

City, State & Zip: __**Dallas, Texas  75201-3136**_____

Agent (if applicable) __**CT Corporation System**_____

**TYPE OF SERVICE/PROCESS TO BE ISSUED**: (Check the proper Box)

☒ **Citation**   ☐ **Citation by Posting**   ☐ **Citation by Publication**   ☐ **Citations Rule 106 Service**

☐ **Citation Scire Facias**   **Newspaper**_____

☐ **Temporary Restraining Order**   ☐ **Precept**   ☐ **Notice**

☐ **Protective Order**

☐ **Secretary of State Citation ($12.00)**   ☐ **Capias (not by E-Issuance)**   ☐ **Attachment (not by E-Issuance)**

☐ **Certiorari**   ☐ **Highway Commission ($12.00)**

☐ **Commissioner of Insurance ($12.00)**   ☐ **Hague Convention ($16.00)**   ☐ **Garnishment**

☐ **Habeas Corpus (not by E-Issuance)**   ☐ **Injunction**   ☐ **Sequestration**

☐ **Subpoena**

☐ **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY (check one):**
☐ **ATTORNEY PICK-UP (phone)** _____   ☐ **E-Issuance by District Clerk**
☐ **MAIL to attorney   at:** _____   **(No Service Copy Fees Charged)**
☐ **CONSTABLE**   *Note:* The email registered with EfileTexas.gov must be
☒ **CERTIFIED MAIL by District Clerk**   used to retrieve the E-Issuance Service Documents.
   Visit www.hcdistrictclerk.com for more instructions.

☐ **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: _____   Phone: _____

☐ **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: __**Mike Morris / Plaintiff**__ Bar # __**14495800**__

Mailing Address: __**1221 McKinney, Suite 4300, Houston, Texas  77010**_____

Phone Number: _____**713-222-9542  Ext. 354**_____

# EXHIBIT A

CAUSE NO. O-10-498

| | | |
|---|---|---|
| RIPPY OIL COMPANY, RIPPY INTEREST LLC, THE GENECOV GROUP, INC., AND JOHN D. PROCTOR, | §<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | §<br>§ | LEON COUNTY, T E X A S |
| VS. | §<br>§ | |
| KNIGHT OIL TOOLS, INC. AND PIONEER DRILLING COMPANY, | §<br>§ | 278ᵗʰ JUDICIAL DISTRICT |
| *Defendants.* | | |

FILED
BEVERLY WILSON, DISTRICT CLERK
LEON COUNTY, TEXAS

510-18

## CHARGE OF COURT

MAY 10 2010

BY

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1.      Do not let bias, prejudice, or sympathy play any part in your decision.

2.      Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.      You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.      If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.      All the questions and answers are important. No one should say that any question or answer is not important.

6.      Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

7.      Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8.      Do not answer questions by drawing straws or by any method of chance.

9.      Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.     Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11.     Unless otherwise instructed, the answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## DEFINITIONS

"Occurrence": in the questions, below "occurrence" means the drill pipe separation that occurred on the Easterling No. 1-H well on May 11, 2010.

"Knight Oil Tools" includes its employees and, Robinson Tubular Services and its employees.

"Rippy Oil Company" includes Rippy Oil Company, and its agents, employees, or consultants, including Leo Wiggins and Larry Elkins.

"Gyrodata" means Gyrodata, and its agents and employees.

## QUESTION 1

Did Knight Oil Tools breach the implied warranty of fitness for a particular purpose, and, if so, was such breach a proximate cause of the occurrence in question?

A warranty that the goods are fit for a particular purpose is implied at the time of contracting if –

1. Knight Oil Tools had reason to know the particular purpose for which the drill pipe was required; and

2. Knight Oil Tools had reason to know that Rippy Oil Company was justifiably relying on Knight Oil Tools' skill and judgment to furnish suitable drill pipe.

There is a breach of an implied warranty of fitness for a particular purpose if at the time of lease, the drill pipe supplied by Knight Oil Tools was unfit for the particular purpose for which the drill pipe was leased.

"Proximate cause" means a cause that was a substantial factor in bringing about an occurrence, and without which cause such occurrence would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the occurrence, or some similar occurrence, might reasonably result therefrom.  There may be more than one proximate cause of an occurrence.

Answer "Yes" or "No."

Answer: ___Yes___

## QUESTION 2

Did Knight Oil Tools make a negligent misrepresentation with respect to the condition of the drill pipe at issue, on which Rippy Oil Company justifiably relied and was the proximate cause of the occurrence in question?

Negligent misrepresentation occurs when—

    1.    a party makes a representation in the course of his business; and

    2.    the representation supplies false information for the guidance of others in their business; and

    3.    the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information.

"Proximate cause" means a cause that was a substantial factor in bringing about an occurrence, and without which cause such occurrence would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the occurrence, or some similar occurrence, might reasonably result therefrom. There may be more than one proximate cause of an occurrence.

A person may not justifiably rely on a representation if there is information indicating such reliance is unwarranted.

Answer "Yes" or "No."

Answer: _____Yes_____

## QUESTION 3

Did the negligence, if any, of those named below proximately cause the occurrence in question?

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause, unbroken by any new and independent cause, that was a substantial factor in bringing about an occurrence, and without which cause such occurrence would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that occurrence, or some similar occurrence, might reasonably result therefrom. There may be more than one proximate cause of an occurrence.

"New and independent cause" means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

You are instructed that the occurrence of an accident is not of itself evidence of negligence.

Answer "Yes" or "No" for each of the following:

1. Rippy Oil Company        NO

2. Gyrodata        NO

If you answered "Yes" to Question 1 or 2 and "Yes" to one or more entities in Question 3, then answer the following question. Otherwise, do not answer the following question.

Assign percentages of responsibility only to those you found caused or contributed to cause the occurrence in question. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found. The percentage attributable to any one need not be the same percentage attributed to that one in answering another question.

## QUESTION 4

For each person you found caused or contributed to cause the occurrence, find the percentage of responsibility attributable to each:

1. Knight Oil Tools _____ %

2. Rippy Oil Company _____ %

3. Gyrodata _____ %

   *Total* _____100_____ %

## QUESTION 5

Was the Easterling No. 1-H well capable of being reproduced by drilling another well as it existed at the time of the occurrence in question?

Answer "Yes" or "No."

Answer: ___NO___

## QUESTION 6

What would have been the reasonable and necessary costs of drilling and equipping the Easterling 2-H well in the condition the Easterling 1-H well was equipped before the occurrence in question less the salvage value?

Do not include in your answer any amount that you find Rippy Oil Company could have avoided by the exercise of reasonable care. Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any:

      a.     The reasonable and necessary drilling and equipping costs for the Easterling No. 2-H well.

            Answer: ___1.5 Million___

If you answered "Yes" to Question 1 or 2 as to Knight Oil ~~Company~~ Tools *HER*, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 7

What is the reasonable fair market value of the Rippy Oil Company's Easterling 1-H well immediately before the occurrence in question and immediately after the occurrence in question and proximately caused by the occurrence in question?

"Fair market value" means the price a willing seller not obligated to sell can obtain from a willing buyer not obligated to buy.  Do not include interest on any amount of damages you find.

Answer each question in dollars and cents, if any.

**a.   Before the occurrence in question.**

Consider only evidence of fair market value immediately prior to the time of the occurrence, not at any time after the occurrence. Do not consider evidence from wells not in the same field and formation as the Easterling No. 1-H well.

Answer:   _5.9 Million_

**b.   After the occurrence in question.**

Consider only evidence of fair market value immediate after the time of the occurrence.  Do not consider evidence from wells not in the same field and formation as the Easterling No. 1-H well.

Answer:   _0_

## QUESTION 8

Did Rippy fail to comply with the parties' Agreement by failing to pay the Invoices?

For the purpose of answering this question, "Invoices" means Knight Oil Tools Invoice Nos. 232983, 233524, 233853, 234340, and 234461.

Answer "Yes" or "No":

Answer: ___yes___

## QUESTION 9

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Knight Oil Tools for its damages, if any, that resulted from such failure to comply?

Consider this measure of damages, and none other, the total amount of the invoices.

Please answer in dollars and cents.

Answer: $ _361,356.87_

## Presiding Juror:

1.     When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2.     The presiding juror has these duties:

    a.  have the complete charge read aloud if it will be helpful to your deliberations;

    b.  preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

    c.  give written questions or comments to the bailiff who will give them to the judge;

    d.  write down the answers you agree on;

    e.  get the signatures for the verdict certificate; and

    f.  notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## Instructions for Signing the Verdict Certificate:

1.     You may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2.     If 10 jurors agree on every answer, those 10 jurors sign the verdict.

If 11 jurors agree on every answer, those 11 jurors sign the verdict.

If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.     All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_Dan R. Radley_
Judge Presiding

## VERDICT CERTIFICATE

Check one:

_____   Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.


_____          _____
**Signature of Presiding Juror**              **Printed Name of Presiding Juror**


_____   Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____   Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| | Signature | Name Printed |
|---|---|---|
| 1. | *[signature]* | Jean Davis |
| 2. | Powell Ward | Powell WARD |
| 3. | *[signature]* | Paul Bosse |
| 4. | *[signature]* | Tomas Clark |
| 5. | Margaret Gray | MARGARET GRAY |
| 6. | *[signature]* | Tony H Gonzalez |
| 7. | *[signature]* | Louisa Hargrave |
| 8. | *[signature]* | LAWRENCE J CORNETT |
| 9. | *[signature]* | George Pawley |
| 10. | *[signature]* | JACOB HolcomB |
| 11. | | |

FILED
BEVERLY WILSON, DISTRICT CLERK
LEON COUNTY, TEXAS

MAY 10 2018          5-10-18
                     5:50pm

BY _____
         1388

CHARGE OF THE COURT
16                                                                           Page

CHARGE OF THE COURT
17

Page

# EXHIBIT B

FILED
BEVERLY WILSON, DISTRICT CLERK
LEON COUNTY, TEXAS

ᴐ �

JUN 0 4 2018

by _____

## CAUSE NO. O-10-498

| | | |
|---|---|---|
| RIPPY OIL COMPANY, RIPPY INTEREST LLC, THE GENECOV GROUP, INC., AND JOHN D. PROCTOR, | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| VS. | § § | LEON COUNTY, TEXAS |
| | § | |
| KNIGHT OIL TOOLS, INC. AND PIONEER DRILLING COMPANY, | § § | |
| *Defendants.* | § | 278TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

BE IT REMEMBERED that on the 1st day of May 2018, came on to be heard the above-entitled and numbered cause for trial, with due and proper notice to all parties, and came Plaintiff Rippy Oil Company ("Plaintiff"), by and through its attorneys of record, and announced ready for trial, and came Defendants Knight Oil Tool, Inc. and Pioneer Drilling Co., by and through their attorneys of record, and announced ready for trial.

A jury of twelve (12) good and lawful citizens of Leon County was duly qualified, selected, impaneled, and sworn. The case proceeded to trial and the parties presented their evidence.

At the conclusion of the evidence, the Court submitted the questions of fact to the jury. The jury returned and announced its verdict in open Court in the presence of the parties and their counsel. The verdict was by ten jurors who together concurred in and agreed to the answers to all required questions and who signed their names to the verdict. There being no objection, the Court thereafter accepted the verdict and ordered same duly filed. The charge of the Court and the verdict of the jury are incorporated herein for all purposes by reference.

1440

Based on the pleadings, the evidence, the jury verdict, and the stipulations of the parties, the Court finds that Plaintiff is entitled to recover from Defendant Knight Oil Tools, Inc. as follows.

It is ORDERED, ADJUDGED and DECREED that Plaintiff Rippy Oil Company have and recover $5,900,000.00 in past damages from Defendant Knight Oil Tools, Inc., less the amount of Defendant Knight Oil Tools' counterclaim of $361,356.87, for a net recovery of $5,538,643.13. Additionally, the Court awards prejudgment interest on these past damages in the amount of $2,056,885.14 through June 1, 2017 and an additional $758.72 per day until the day before this final judgment is signed.

IT IS FURTHER ORDERED that this judgment will bear interest at the rate of 5.00%, compounded annually, from the date of this judgment until paid.

All costs of court spent or incurred in this cause are adjudged against Defendant.

All writs and processes for the enforcement and collection of this judgment or court costs may issue as necessary. All relief requested in this case and not expressly granted is denied. This judgment finally disposes of all parties and claims and is appealable.

SIGNED this _____4_____ day of June 2018.

THE HONORABLE HAL R. RIDLEY
JUDGE PRESIDING

APPROVED AS TO SUBSTANCE AND FORM:

LAW OFFICE OF KENNETH TEKELL, SR. PLLC          HERRICK & ASSOCIATES, P.C.


By: _____                By: _____
Kenneth Tekell                                 David P. Herrick
State Bar No.                                   State Bar No. 00785957
ktekell@halagintekell.com                      dherrick@herrickassociates.com
1221 McKinney, Suite 3200                       18111 Preston Road, Suite 480
Houston, TX 77010                               Dallas, TX 75252
(713) 654-5191                                  (214) 303-1258
                                                (214) 303-1257 (Fax)


THE KRIST LAW FIRM, P.C.                        DAVID HAMMIT LLC


By: _____                By: _____
Ronald D. Krist                                David Hammit
State Bar No. 11727000                          State Bar No. 08857660
psteele@kristlaw.com                            david@hammitlaw.com
The Krist Building                              109 South Madison Street
17100 El Camino Real                            Madisonville, TX 77864
Houston, TX 77058                               (936) 349-1600
(281) 283-8500                                  (936) 349-0505 (Fax)
(281) 488-3489 (Fax)


BECK REDDEN LLP


By: _____
David M. Gunn
State Bar No. 08621600
dgunn@beckredden.com
John S. Adcock
State Bar No. 00790206
jadcock@beckredden.com
1221 McKinney, Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720 (Fax)

3

ATTORNEYS FOR PLAINTIFFS

**APPROVED AS TO FORM ONLY:**

DONATO, MINX, BROWN & POOL, P.C.

By: _____
Randy Donato
State Bar No. 05973300
rdonato@donatominxbrown.com
James T. Sunosky
State Bar No. 24033372
jsunosky@donatominxbrown.com
3200 Southwest Freeway, Suite 2300
Houston, TX  77027
(713) 877-1112
(713) 877-1138 (Fax)

WRIGHT CLOSE & BARGER, LLP

By: _____
Jessica Z. Barger
State Bar No. 24032706
barger@wrightclosebarger.com
One Riverway, Suite 2200
Houston, TX  77056
(713) 572-4321
(713) 572-4320 (Fax)

**ATTORNEYS FOR DEFENDANTS**

4

# EXHIBIT C



**SO ORDERED.**

**SIGNED October 24, 2017.**

ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

---

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 17-51014 |
| | § | |
| KNIGHT ENERGY HOLDINGS, LLC, | § | CHAPTER 11 |
| et al.,[1] | § | |
| | § | |
| DEBTORS. | § | |
| | § | |

### AGREED ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Upon consideration the Motion for an Order Granting Relief From the Automatic Stay

(Doc. 357) (the "Motion"), filed herein by Rippy Oil Company, Rippy Interests LLC, The Genecov

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Knight Energy Holdings, LLC (1930) (Case No. 17-51014); Knight Oil Tools, LLC (2667)
(Case No. 17-51015); Knight Manufacturing, LLC (0600) (Case No. 17-51016); KDCC, LLC, f/k/a Knight Well
Services, LLA (4156) (Case No. 17-51017); Tri-Drill, LLC (4957) (Case No. 17-51018); Advanced Safety & Training
Management, LLC (0510) (Case No. 17-51019); Knight Security, LLC (0923) (Case No. 17-51020); Knight
Information Systems, LLC (0000) (Case No. 17-51021); El Caballero Ranch, Inc. (7345) (Case No. 17-51022); Rayne
Properties, LLC (0000) (Case No. 17-51023); Knight Aviation, LLC (3329) (Case No. 17-51024); Knight Research
& Development, LLC (3760) (Case No. 17-51025); Knight Family Enterprises, LLC (7190) (Case No. 17-51026);
HMC Leasing, LLC (0814) (Case No. 17-51027); and HMC Investments, LLC (0000) (Case No. 17-51029. The
Debtors' service address is 2272 SE Evangeline Thruway, Lafayette, Louisiana 70508, except for Knight
Manufacturing, LLC, which can be served at 2710-A Melancon Road, Broussard, Louisiana 70518, and Advanced
Safety and Training Management, LLC, which can be served at 1042 Forum Drive, Broussard, Louisiana 70518.

DM3\4873250.1

{00360226-2}1

EXHIBIT
C

Group, Inc., and John D. Proctor (together, "Rippy Oil"), the agreement of the Debtors to the relief requested therein, and the Court finding that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) proper and adequate notice of the Motion has been given and no other or further notice is necessary; and (iv) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein; therefore:

IT IS ORDERED that the Motion is GRANTED.

IT IS FURTHER ORDERED that the automatic stay be and is hereby modified as to Knight Oil Tools, LLC (the "Subject Debtor") for the limited purpose of allowing the prosecution of the case captioned as *Rippy Oil Company, et al. v. Knight Oil Tools, Inc., et al.*, No. 0-10-498, pending in the 369th Judicial District Court in Leon County, Texas (the "Proceeding").

IT IS FURTHER ORDERED that Rippy Oil shall seek recovery on the claims asserted in the Proceeding solely from applicable insurance policies of the Subject Debtor and the other non-Debtor defendants; it is further

IT IS FURTHER ORDERED that the Subject Debtor's liability in the Proceeding, and for any claims or causes of action that were or could have been raised in the Proceeding, shall be limited to the extent of any coverage provided by the Subject Debtor's applicable insurance policies.

IT IS FURTHER ORDERED that except as expressly provided herein, no collection action shall be commenced against the Subject Debtor without prior order of this Court.

IT IS FURTHER ORDERED that Rippy Oil may seek and conduct such discovery involving the Subject Debtor as allowed by the applicable rules of civil procedure, local rules and scheduling orders in the Proceeding.

{00360226-2}2

DM3\4872250.1

IT IS FURTHER ORDERED that nothing herein (i) alters or amends the terms and conditions of any insurance policies issued to the Debtor by ACE American Insurance Company or any of its affiliates or successors (collectively, "Chubb") or any related agreements; (ii) relieves the Debtors of any obligations to Chubb to pay any retentions or to pay (or reimburse Chubb for) any deductibles; (iii) relieves the Debtors of any of their other obligations to Chubb under the insurance policies and related agreements; (iv) creates or permits a direct right of action by Rippy Oil against Chubb that would not otherwise exist under applicable law; or (v) precludes or limits, in any way, any rights of Chubb to contest and/or litigate the existence, primacy and/or scope of available coverage.

<p style="text-align:center">###</p>

This Agreed Order was prepared and is being submitted by:

/s/ Benjamin W. Kadden
Benjamin W. Kadden (La. Bar. No. 29927)
LUGENBUHL, WHEATON, PECK,
        RANKIN & HUBBARD
601 Poydras St., Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

*Attorneys for Rippy Oil Company, Rippy Interests LLC,*
*The Genecov Group, Inc., and John D. Proctor*

/s/ Tristan Manthey
**Heller, Draper, Patrick, Horn & Dabney, L.L.C.**
William H. Patrick, III (La. Bar No. 10359)
Tristan Manthey (La. Bar No. 24539)
Cherie Dessauer Nobles (La. Bar No. 30476)
650 Poydras St., Suite 2500
New Orleans, Louisiana 70130-6175
Telephone: (504) 299-3300
Facsimile: (504) 299-3399

*Attorneys for the Debtors*

DM3\4872256.1

{00360226-2}3

# EXHIBIT D



IN THE
TENTH COURT OF APPEALS

No. 10-18-00284-CV

KNIGHT OIL TOOLS, INC.,

Appellant

v.

RIPPY OIL COMPANY, RIPPY INTEREST LLC,
THE GENECOV GROUP, INC.,
AND JOHN D. PROCTOR,

Appellees

From the 278th District Court
Leon County, Texas
Trial Court No. O-10-498

## MEMORANDUM OPINION

Rippy Oil Company brought suit against Knight Oil Tools, Inc. for damages that occurred when a drill pipe broke while drilling a well. Knight filed a counterclaim against Rippy for unpaid invoices. The jury found Knight liable for damages and also found Rippy failed to pay certain invoices. The trial court signed a judgment ordering

that Rippy recover $5,900,000.00 in damages from Knight Oil, less the amount of Knight's counterclaim of $361, 356.87, for a net recovery of $5,538,643.13. We affirm.

### BACKGROUND FACTS

Knight Oil Tools rents drill pipe to oil companies and oil well operators for drilling oil and gas wells. Rippy Oil Company made plans to drill a well in the Eagle Ford Shale and contacted Knight to supply pipe for drilling the horizontal portion of the Easterling 1-H well. Rippy hired Leo Wiggins as a well consultant, and Larry Elkins to assist Wiggins. Wiggins and Elkins had authority to order equipment as needed for drilling and to accept delivery.

Knight delivered pipe and other equipment to the Easterling 1-H well site with a delivery ticket and sent the invoice to the main office. The delivery ticket contained language that the pipe measurements complied with the dimensions for American Petroleum Institute (A.P.I.) premium class and/or Knight Oil Tools value. The testimony at trial established that pipe marked with two white bands meets the standards for A.P.I. premium pipe. The pipe delivered by Knight was marked with two white bands, but the record shows that some of the pipe delivered did not comply with the dimensions for A.P.I. premium class pipe.

On May 11, 2010, one of the drill pipes supplied by Knight broke while it was in the well. The parties agree that the pipe failure was caused by fatigue. Rippy was not able to recover the broken pipe and the drill string beyond it and eventually had to

abandon the Easterling 1-H well. Rippy attempted to drill an offset well, Easterling 2-H, but that effort was unsuccessful.

Rippy filed suit against Knight to recover damages for the lost well, and Knight filed a counterclaim to recover for unpaid invoices. The jury found in favor of Rippy on submitted questions of negligent representation, breach of implied warranty of fitness for a particular purpose, and alternative damage findings. The jury further found in favor of Knight on unpaid invoices. The trial court entered judgment, after offset, in favor of Rippy.

## SUFFICIENCY OF THE EVIDENCE

The case was submitted to the jury on two theories of liability: (1) negligent misrepresentation, and (2) breach of warranty of fitness for a particular purpose. In its first issue, Knight argues that the evidence is legally and factually insufficient to support the jury's findings regarding causation of the well failure under any theory. Specifically, Knight argues that the evidence was insufficient to prove Knight's conduct was a proximate cause of the loss of the well under either theory submitted to the jury. In the second issue, Knight argues that the evidence is legally and factually insufficient to support the jury's findings on breach of warranty of fitness for a particular purpose and negligent representation.

In reviewing the jury's verdict for the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, "crediting favorable

evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex.2005). We must not substitute our opinion on witness credibility for that of the jury. *Id*. at 816-17.

> Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary.
> Most credibility questions are implicit rather than explicit in a jury's verdict. Thus, reviewing courts must assume jurors decided all of them in favor of the verdict if reasonable human beings could do so. Courts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it.
> ...
> Nor is it necessary to have testimony from both parties before jurors may disbelieve either. Jurors may disregard even uncontradicted and unimpeached testimony from disinterested witnesses. Even uncontroverted expert testimony does not bind jurors unless the subject matter is one for experts alone.
> Of course, "[t]he jury's decisions regarding credibility must be reasonable." Jurors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted. And as noted above, they are not free to believe testimony that is conclusively negated by undisputed facts. But whenever reasonable jurors could decide what testimony to discard, a reviewing court must assume they did so in favor of their verdict, and disregard it in the course of legal sufficiency review.

*Id.* at 819-20 (footnotes and citations omitted).

In a factual-sufficiency challenge, an appellate court must consider and weigh all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* We may not pass upon the witnesses' credibility

or substitute our judgment for that of the factfinder, even if the evidence would support a different result. *2900 Smith, Ltd. v. Constellation New Energy, Inc.*, 301 S.W.3d 741, 746 (Tex. App. —Houston [14th Dist.] 2009, no pet.). If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment. *Id.*

PROXIMATE CAUSE

The components of proximate cause are cause-in-fact and foreseeability. *See Western Investments, Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). The cause-in-fact element is satisfied by proof that (1) the act was a substantial factor in bringing about the harm at issue, and (2) absent the act ("but for" the act), the harm would not have occurred. *HMC Hotel Props. II Ltd. Partnership v. Keystone-Texas Prop. Holding Corporation*, 439 S.W.3d 910, 913 (Tex. 2014). These elements cannot be established by mere conjecture, guess, or speculation. *Id.*

Foreseeability, the other aspect of proximate cause, requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). The question of foreseeability, and proximate cause generally, involves a practical inquiry based on "common experience applied to human conduct." *Id.* It asks whether the injury "might reasonably have been contemplated" as a result of the defendant's conduct. *Id.*

Charles Rippy testified that after the lawsuit was filed, Knight provided serial numbers for some of the drill pipe. Based on those serial numbers, evidence showed that Knight Oil purchased the drill pipe in 1993 and delivered the pipe to the well site in April 2010. Charles Rippy further testified that some of the drill pipe had not been inspected by Knight in over a year. The jury heard evidence that the fatigue cracks in the pipe were present before the pipe was used by Rippy. Hilton Prejean, an A.P.I. member who helped write the A.P.I. standards, testified by deposition that the pipe that broke was "scrap tool joint" with excessive wear. Prejean found that the tool joint on the pipe had pre-existing cracks before being used at the Rippy well and that it "should not have been on location at all."

Knight argues that Rippy was required to produce evidence that the pipe would not have failed assuming it met A.P.I. premium standards citing *BIC Pen Corporation v. Carter*, 346 S.W.3d 533 (Tex. 2011) as authority. In *BIC*, a six year-old girl was severely burned when her five year-old brother started a fire with a BIC lighter. The plaintiff alleged that the manufacturing defects in the lighter were the cause of the fire and the girl's injuries. The Supreme Court stated that there must have been some evidence that the fire that burned the little girl started because of the specific manufacturing defects and that absent those defects her injuries would not have occurred. *Id.* at 542. The Court concluded that the evidence was insufficient to support the finding that manufacturing defects in BIC's Subject Lighter were a cause-in-fact of the injuries. *Id.* at 545.

We do not agree with Knight's premise that under *BIC*, Rippy must show that the pipe would not have failed assuming it met A.P.I. premium standards. Rather, pursuant to *BIC*, Rippy must show that the condition of the pipe supplied by Knight was a substantial factor in the loss of the well and that absent the condition of the pipe, the harm would not have occurred.

The parties agree that the pipe broke as a result of fatigue failure. Knight presented evidence that the fatigue failure could have been caused by corrosion of the drill pipe. Knight also contends that that the drilling operation subjects the drill pipe to significant forces that can fatigue the pipe.

Rippy offered evidence that the tool joint was worn excessively, did not meet A.P.I. premium standards, and had pre-existing cracks before being used in the Rippy well. The jury heard evidence that that A.P.I. premium pipe has a wider tool joint which corresponds to less fatigue throughout the rest of the pipe. Rippy presented evidence that the pipe should not have been on location at all and that it was an A.P.I. reject.

We must not substitute our opinion on witness credibility for that of the jury. *City of Keller v. Wilson*, 168 S.W.3d at 816-17. The jury could conclude that the A.P.I reject pipe was a substantial factor in bringing about the drill pipe separation, and absent the condition of the pipe, the harm would not have occurred. We find that the evidence is legally sufficient to support the jury's finding on proximate cause. Additionally, we

cannot say that the jury's verdict on proximate cause is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule the first issue.

NEGLIGENT MISREPRESENTATION

The jury was asked in Question 2 whether Knight Tool made a negligent representation with respect to the condition of the drill pipe on which Rippy justifiably relied and was a proximate cause of the drill pipe separation. The jury answered "yes," and Knight challenges the jury finding.

The elements of negligent misrepresentation are: (1) a defendant provided information in the course of his business; (2) the information supplied was false; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the information; and (5) the plaintiff suffered damages proximately caused by the reliance. *Retherford v. Castron*, 378 S.W.3d 29, 37 (Tex. App. — Waco 2012, pet. den'd); *Larsen v. Carlene Langford & Associates*, 41 S.W.3d 245, 249-50 (Tex. App. —Waco 2001, pet. den'd).

Charles Rippy, the President of Rippy Oil, testified that Rippy requested A.P.I. premium pipe for the Easterling 1-H well. The evidence shows that A.P.I. premium pipe is marked with two white bands to signify that it is premium. Daniel Rogers, a corporate representative for Knight, testified by deposition that if the drill pipe supplied by Knight had two white bands, the customer could rely on the pipe being A.P.I. premium pipe and

that "the whole world" could rely on it being premium pipe. Rogers further stated that Knight intended to represent the pipe as being inspected to A.P.I. premium standards.

The record shows that the pipe that failed did not meet A.P.I. premium standards. The pipe broke in the well, and the well was lost. Viewing the evidence in the light most favorable to the jury's verdict, we find that a rational factfinder could conclude that Knight made a false representation about the quality of the drill pipe, that Knight did not use reasonable care in obtaining or communicating the information, and that Rippy justifiably relied on the representation.

We find that the evidence is legally sufficient to support the jury's finding on negligent representation. Additionally, we cannot say that the jury's verdict as to this claim is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. When the judgment rests on multiple theories of recovery, we need not address all causes of action if any one theory is valid. *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 870 (Tex. App. ⸺Dallas 2008, no pet.); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 634 (Tex. App. — Waco 2000, pet. den'd). Therefore, we need not address Knight's complaint on appeal as to the sufficiency of the evidence to support the jury's answer on breach of breach of implied warranty of fitness for a particular purpose. We overrule Knight's second issue.

NEGLIGENCE

In the fourth issue, Knight argues that the evidence is factually insufficient to support the jury's failure to find that Rippy and Gyrodata were negligent. In Question 3, the jury was asked if the negligence of the Rippy Oil Company and/or Gyrodata proximately caused the occurrence in question. The jury answered "No" for both Rippy Oil Company and Gyrodata.

Knight contends that there were problems in the well prior to the drill pipe breaking. Early on in the drilling process of the Easterling 1-H well, a mud motor supplied by Gyrodata broke off in the well causing Rippy to have to drill off course from its planned well. Knight also addresses Gyrodata's equipment failure in drilling the Easterling 2-H well; however, that was not before the jury in Question 3.

Charles Rippy testified that they encountered a trouble spot while drilling the Easterling 1-H, but that it was not a "catastrophe" and was fairly common. Rippy also testified that they had to make adjustments after the Gyrodata motor broke off in the well.

In Question 3 the jury was asked if the negligence of Rippy or Gyrodata proximately caused the "occurrence" in question. As stated, the components of proximate cause are cause-in-fact and foreseeability. *See Western Investments, Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Occurrence was defined for the jury as "the drill pipe separation that occurred on the Easterling No. 1-H well on May 11, 2010."

The jury could conclude that the Gyrodata motor breaking was not a substantial factor in bringing about the drill pipe separation on the Easterling 1-H well. Knight does not specifically argue any act of negligence on the part of Rippy that was a proximate cause of the drill pipe separation. We cannot say that the jury's answer to Question 3 is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule the fourth issue.

<div align="center">SUMMARY JUDGMENT</div>

In the third issue, Knight argues that the trial court erred in granting summary judgment. We review a trial court's summary judgment de novo. *Provident Life & Accident Insurance Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The movant in a traditional summary judgment motion must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See id.* at 756. In our review, we take the nonmovant's competent evidence as true. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005).

A no-evidence motion for summary judgment is essentially a motion for pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006); *see also Humphrey v. Pelican Isle Owners Ass'n*, 238 S.W.3d 811, 813 (Tex. App. —Waco 2007, no pet.). Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Tamez*, 206 S.W.3d at 583. The nonmovant must produce "summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a (i). When determining if more than a scintilla of evidence has been produced, the evidence must be viewed in the light most favorable to the nonmovant. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004).

The pipe was delivered to the well site with a delivery ticket that had a provision on the front indicating that the customer agrees to the terms and conditions on the reverse side of the document. The reverse side of the delivery ticket contained terms and conditions including a paragraph on release and indemnity and a paragraph on waiver of warranty.

In its answer, Knight pled the affirmative defenses of release and indemnity based upon the terms and provisions on the delivery ticket. Knight argued that Rippy's designated agents, Wiggins and Elkins, had authority to bind Rippy to the terms and conditions on the delivery ticket. Rippy argues that the evidence does not show that Wiggins and Elkins had authority to bind Rippy to release or indemnity provisions.

The trial court initially granted the motion without stating the basis for its ruling. During trial, Knight moved for reconsideration of the trial court's ruling. The trial court denied the motion for reconsideration and found that the Release Discharging Indemnity Agreement on the back of the invoice was not negotiated between the parties. The trial court further found that "neither Elkins or Wiggins had apparent, implied, or actual authority on behalf of Rippy to bind them to the indemnity, discharge and release provisions...."

In *Rourke v. Garza*, the Court stated that the doctrine of apparent authority is based on estoppel, and one seeking to charge a principal through the apparent authority of an agent to bind the principal must prove such conduct on the part of the principal as would lead a reasonably prudent person, using diligence and discretion, to suppose that the agent has the authority he purports to exercise. *Rourke v. Garza*, 530 S.W.2d 794, 802 (Tex. 1975). The Court found that there was no authority based upon the agent's position as general superintendent. *Rourke v. Garza*, 530 S.W.2d at 804. The Court stated,

"Contracts indemnifying one against his distribution of defective products should be viewed as exceptions to the usual business practice, in the same manner as those indemnifying one against his own negligence." *Rourke v. Garza*, 530 S.W.2d 794, 804 (Tex. 1975). The Court further stated that such contracts may have great financial impact on the parties and are therefore not of the kind ordinarily executed by a superintendent of job sites. *Id.*

Leo Wiggins and Larry Elkins were well consultants on the Easterling 1-H well, but they were not employees of Rippy. The summary judgment evidence shows both Wiggins and Elkins had authority to order equipment, to accept delivery of equipment, and to supervise operations at the well. In his deposition, Charles Rippy stated that Wiggins and Elkins did not have authority to negotiate any agreement on behalf of Rippy on release and indemnity.

The record shows that Wiggins placed the order for the drill pipe for the Easterling 1-H. The pipe was delivered by a third-party trucking company. The delivery tickets in evidence are signed primarily by Elkins; however, there are some signed by Wiggins and one ticket in evidence is signed by another unknown person. The delivery tickets prior to the pipe failure are signed by Elkins. The delivery tickets produced by Knight as summary judgment evidence do not provide a copy of the reverse side of the ticket that contains the terms and conditions on release and indemnity.

We find *Rourke v. Garza* to be controlling. Wiggins and Elkins were well consultants, and they had authority to order pipe and accept delivery. However, they did not have authority to negotiate any agreement on behalf of Rippy on release and indemnity. As stated in *Rourke*, such contracts may have great financial impact on the parties and are therefore not of the kind ordinarily executed by a superintendent of job sites. *Rourke v. Garza*, 530 S.W.2d 794, 804 (Tex. 1975). As in *Rourke*, Knight was unaware who actually signed the tickets upon delivery. The pipe was delivered by a third-party

company and not always signed by the person who ordered it. The trial court did not err in granting Rippy's motion for summary judgment. We overrule the third issue.

<div align="center">DAMAGES</div>

In issues five and six, Knight argues that the evidence is insufficient to support the jury's finding on damages, that the trial court erred in admitting evidence and refusing jury charge instructions, and that the trial court erred in wording jury questions.

In Question 5, the jury was asked if the Easterling No. 1-H well was capable of being reproduced by drilling another well as it existed at the time of the occurrence in question. The jury answered "No." In Question 6, the jury was asked what would have been the reasonable and necessary costs of drilling and equipping the Easterling 2-H well in the condition the Easterling 1-H well was equipped before the occurrence in question less the salvage value. The jury answered that the reasonable and necessary drilling and equipping costs for the Easterling No. 2-H well were $1.5 million. In Question 7, the jury was asked the reasonable fair market value of the Easterling 1-H well immediately before the occurrence in question and immediately after the occurrence in question. The jury was instructed that fair market value means the price a willing seller not obligated to sell can obtain from a willing buyer not obligated to buy. The jury answered that the value of the Easterling 1-H before the occurrence was 5.9 million dollars and after the time of the occurrence was 0.

Charles Rippy testified that the fair market value of the Easterling 1-H well just prior to the drill pipe breaking was nine million dollars. Charles Rippy explained that they drilled the Sims 3-H as a concept well to gather information before drilling the Easterling 1-H. Charles Rippy explained that he used the production data from the Sims 3-H to help determine the fair market value of the Easterling 1-H.

Knight produced evidence that the fair market value of the Easterling 1-H before the drill pipe break was between $1,053,315 and $2,231,600. Knight's fair market value made reductions for potential mechanical problems. Knight's expert explained in detail how he arrived at those values.

A jury generally has discretion to award damages within the range of evidence presented at trial. *Gulf States Utilities. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). It may not, however, "arbitrarily assess an amount neither authorized nor supported by the evidence presented at trial." *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex. App. Austin —1993, writ denied). The jury heard differing methods for arriving at the value of the well and for discounting the value for risk. The jury's answer of 5.9 million dollars is in the range of evidence presented at trial.

Knight cites *Basic Energy Services, Inc. v. D-S-B Props., Inc.* as authority on the proper measure of damages when the damaged property is an oil or gas well. *See Basic Energy Services, Inc. v. D-S-B Props., Inc.*, 367 S.W.3d 254 (Tex. App. —Tyler 2011, no pet.). In *Basic Energy Services, Inc.*, the Court stated:

> The measure of damages for the destruction of an oil well that can be reproduced is the lower of two values: (1) the cash market value of the old well or (2) the cost of reproducing the well with a new well equipped like the old one, less any salvage value of the old well.

*Basic Energy Services, Inc. v. D-S-B Props., Inc.*, 367 S.W.3d at 262. Knight states that the trial court should have entered judgment on the jury's answer in Question 6 rather than the jury's finding in Question 7.

If the well can be reproduced by drilling another one, the proper measure of damages is the cost of drilling and equipping another such well, less the value of any salvage; provided that this cost does not exceed the reasonable cash market value of the well immediately before the tubing collapse. *Atex Pipe & Supply, Inc. v. Sesco Production Co.*, 736 S.W.2d 914, 917 (Tex. App. —Tyler 1987, writ den'd). If the well cannot be reproduced or if the cost of reproduction exceeds the value of the well, the proper measure of damages is the difference in the reasonable cash market value of the well, as equipped, immediately before and immediately after the tubing collapse. *Id.*

In Question 5, the jury found that the Easterling No. 1-H well was not capable of being reproduced by drilling another well as it existed at the time of the occurrence in question. The trial court did not abuse its discretion in submitting Question 5 to the jury. Because the jury found the well could not be reproduced, the proper measure of damages is the difference in the reasonable cash market value of the well, as equipped, immediately before and immediately after the drill pipe failure as found by the jury in Question 7. *See Atex Pipe & Supply, Inc. v. Sesco Production Co.*, 736 S.W.2d at 917.

We overrule the fifth and sixth issues on appeal.

CONCLUSION

We affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Davis[1]
(Chief Justice Gray dissents with a note)*
Affirmed
Opinion delivered and filed November 10, 2021
[CV06]

*(Chief Justice Gray dissents. A separate opinion will not issue. Chief Justice Gray notes, however, that prior to the jury trial the trial court granted a motion for summary judgment on the affirmative defenses of indemnity and release. The basis of the motion was that the person who had the authority to order and accept delivery of the pipe for Rippy did not have the authority to accept the terms and conditions on the delivery ticket. The question thus framed was the scope of the agency; was he a "company man" or was he merely a "job superintendent" with no real authority to contract on behalf of the company. Chief Justice Gray believes that Rippy did not conclusively prove through summary judgment evidence that the well consultants did not have that limitation on their authority. The evidence established that they had the authority to agree to the terms necessary to order equipment and accept delivery on behalf of the company. At the very least the scope of the agency was disputed. Moreover, because the evidence regarding these defenses also impacts the reasonableness of the reliance on the representation of Knight, the evidence of the defenses has evidentiary implications on the reasonableness of Rippy's reliance upon the representations of Knight as to the quality/condition of the pipe that was delivered, thus potentially impacting the jury findings on the elements of

---

[1] The Honorable Rex Davis, Senior Justice (Retired) of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.

Rippy's claims.  Therefore, in fairness, a new trial is warranted which is not limited to the affirmative defenses.  Because the Court affirms the trial court's judgment, Chief Justice Gray respectfully dissents.)



# EXHIBIT E

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

AIG SPECIALTY INSURANCE     *    CIVIL ACTION NO.
COMPANY (f/k/a CHARTIS           *
SPECIALTY INSURANCE              *
COMPANY)                        *    JUDGE
                               *
VERSUS                        *
                               *    MAGISTRATE
KNIGHT OIL TOOLS, INC.          *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT FOR DECLARATORY JUDGMENT

     AIG Specialty Insurance Company ("ASIC"), formerly known as Chartis Specialty
Insurance Company ("CSIC"), brings this action for declaratory judgment against defendant,
Knight Oil Tools, Inc. ("Knight").

1.

     ASIC brings this Complaint for Declaratory Judgment in accordance with 28 U.S.C. §§
2201 and 2202. An actual case or controversy exists between ASIC and Knight.

### PARTIES

2.

A.    Plaintiff, AIG Specialty Insurance Company, is a foreign insurance company organized
      under the laws of the State of Illinois with its principal place of business in New York.

B.    Defendant, Knight Oil Tools, Inc., was, at all relevant times, organized and incorporated
      in the State of Louisiana with its principal place of business in the State of Louisiana.
      Knight Oil Tools, Inc. conducts business in Louisiana and has a registered office and
      principal business establishment in Louisiana.

## JURISDICTION

### 3.

This complaint is brought pursuant to the Declaratory Judgment Act, Title §§ 2201, 2202 of the United States Code, because there is an actual controversy among the parties. This Court also has jurisdiction over this complaint pursuant to 28 U.S.C. 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000.

### VENUE

### 4.

Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because the Policy at issue was issued in the State of Louisiana.

## BACKGROUND

### The Underlying Lawsuit

### 5.

On or about December 23, 2010, Rippy Oil Company; Rippy Interest LLC; The Genecov Group, Inc.; and John D. Proctor (collectively "Rippy") filed suit against Knight and Pioneer Drilling in the 12th Judicial District Court in Leon, Texas ("the Underlying Lawsuit"). See, Exhibit A. Rippy filed an amended complaint on October 26, 2016. See, Exhibit B.

### 6.

According to the petition, Rippy sought drilling services and drill pipe for use in its well known as the Easterling No. 1-H well located in Leon County, Texas ("the Well"). The Well was allegedly the first of a multi-well program planned for the Aguila Vado Field, which comprised approximately 14,000 acres in Leon County.

7.

Knight supplied the drill pipe, which was utilized by Pioneer, and allegedly represented that the drill pipe satisfied API Specification 5D 3 1/2" O.D. 13.30-PPF Grade S-135 drill pipe.

8.

Knight allegedly also marked the pipe as API premium and represented that the pipe had been inspected.

9.

According to Rippy, Knight and Pioneer knew the purpose for which Rippy sought the drilling pipe and the drilling services and knew that Rippy was relying on Knight and Pioneer to furnish drill pipe and drilling services suitable and fit for that purpose.

10.

According to Rippy, on May 11, 2010, Pioneer was using the drill pipe supplied by Knight during drilling operations when that drill pipe catastrophically failed, destroying a valuable portion of the Well, which prevented its completion and subsequent production of oil reserves from the target intervals.

11.

According to the petition, after notifying Knight of the drill pipe failure, Rippy attempted to mitigate its damages by attempting to fish the failed drilled pipe, separated drill pipe string, bottom-hole assembly, and drill bit.

12.

According to the petition, despite Rippy's salvage efforts, Rippy "could not reproduce [the Well] with resulting loss of use of well bore and hydrocarbon reserves...."

13.

In the Underlying Lawsuit, Rippy claimed that Knight was negligent in the selection, inspection, labeling, marking, distribution, representation, and use of the drill pipe. Rippy also made a products liability claim against Knight, claiming that the drill pipe was defective in that it failed to conform to its design, specifications, and represented qualities and characteristics; was not properly API inspected or labeled; was not API Premium Class; had undersized O.D. and I.D. tool joints that exceeded the maximum I.D. for API Premium Class drill pipe; and was excessively worn, corroded, pitted, and cracked. Rippy also asserted claims for breach of express warranty, breach of implied warranty of merchantability and fitness for a particular purpose, violation of Texas Deceptive Trade Practices Act, gross negligence, breach of contract, fraud, aiding and abetting, civil conspiracy, concert of action, spoliation, and successor liability.

14.

As damages, Rippy sought cash market value damages for destruction of that portion of the Well, which is the market value of the Well less any salvage value, because reproducing that portion of the Well was impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the Well. In the alternative, and should it be determined that the Well could be reproduced, Rippy sought recovery of the reasonable and necessary cost to reproduce the Well. Rippy also sought direct and/or consequential damages, including lost profits, loss of use, the loss of the lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole—all of which were allegedly caused by the drill pipe failure. In addition, Rippy sought punitive damages and attorneys' fees.

**The Lifting of the Bankruptcy Stay**

15.

On October 24, 2017, the United States District Court for the Western District of Louisiana lifted the automatic bankruptcy stay for the limited purpose of allowing the prosecution of *Rippy Oil Co., et al. v. Knight Oil Tools, Inc., et al.*, Case No. 0-10-498, pending in the 369th JDC in Leon County, Texas.  Pursuant to the Order of the Bankruptcy Court, Rippy was only entitled to seek recovery to the extent the claims were covered by Knight's applicable insurance policies and that Knight's liability was to be limited to the extent of any coverage provided by Knight's insurance policies.  See, Exhibit C.

**The Judgment**

16.

The Underlying Lawsuit proceeded to trial before a jury on May 1, 2018.  On May 10, 2018, after the close of the evidence at trial, the jury found that Knight breached its implied warranty of fitness for a particular purpose and made a negligent misrepresentation with respect to the condition of the drill pipe.  The jury found that neither Rippy nor Gyrodata contributed to the separation of the drill pipe.  See, Exhibit D.

17.

The jury found that the Well was not capable of being reproduced by drilling another well and that the reasonable and necessary costs for drilling and equipping the Well were $1.5 million. The jury also found that the fair market value of the Well before the pipe separation was $5.9 million and that the fair market value of the Well after the pipe separation was $0.  The jury also found that Rippy failed to pay Knight $361,356.87 in invoices.

18.

Rippy filed a Motion for Judgment, and on June 4, 2018, the court entered a Final Judgment ordering Knight to pay Rippy $5,538,643.13, plus prejudgment interest in the amount of $2,056,885.14 through June 1, 2017 and an additional $758.72 per day until the day before the final judgment is signed, with 5% interest, compounded annually, in post-judgment interest. See, Exhibit E.

19.

On or about July 3, 2018, Knight filed a Motion to Disregard Certain Jury Findings and for Entry of Judgment. See, Exhibit F. This motion was not granted.

20.

On or about July 3, 2018, Knight filed a Motion for New Trial and an Alternative Motion for Remitittur. See, Exhibit G. This motion was not granted.

21.

Knight appealed the Judgment to the Court of Appeals, Tenth District of Texas, Case No. 10-18-00284-cv.

22.

The appellate court affirmed the trial court's Judgment on December 30, 2020. *See,* Exhibit H.

23.

On rehearing, the appellate court affirmed the trial court's Judgment on November 10, 2021. *See,* Exhibit I.

24.

ACE American Insurance Company ("ACE"), Knight's primary insurer, has not exhausted its $1 million CGL limits of liability.

## The ASIC Policy

25.

Chartis Specialty Insurance Company, now known as AIG Specialty Insurance Company, issued Commercial Umbrella Liability Policy No. BE 13074559 to Knight Oil Tools, Inc. in effect from March 31, 2010 to March 31, 2011 ("the ASIC Policy"). See, Exhibit J.

26.

The ASIC Policy is subject to a $25 million per occurrence/general aggregate limit of liability in excess of the $1 million commercial general liability policy issued by ACE.

27.

In relevant part, the ASIC Policy provides as follows:

---

**I.   INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY**

A.  We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B.  This policy applies, only if:

  1.  the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

  2.  the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

\*\*\*

---

**III. DEFENSE PROVISIONS**

A.  We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

   1.  the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

   2.  the damages sought because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

   If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

\* \* \*

C.  When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

   1.  investigate, negotiate and settle the **Suit** as we deem expedient; and

   2.  pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

      a.  premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

      b.  premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

      c.  all court costs taxed against the **Insured** in the **Suit**;

      d.  pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest accruing after we make such offer;

      e.  post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

      f.  the **Insured's** expenses incurred at our request or with our consent.

---

**IV. LIMITS OF INSURANCE**

---

\*\*\*

M.  We will not make any payment under this policy unless and until:

   1.  the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss**; or

   2.  the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

   When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

\*\*\*

## V.  EXCLUSIONS

\*\*\*

D.  **Damage to Impaired Property or Property Not Physically Injured**

   This insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

   1.  a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

   2.  a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

   This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

\*\*\*

K.  **Expected or Intended Injury**

   This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the **Insured**.  However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

\*\*\*

## VII.  DEFINITIONS

\*\*\*

L.  **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

   1.  it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   2.  you have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   1.  the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

   2.  your fulfilling the terms of the contract or agreement.

***

P.  Loss means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a Suit or to investigate a claim reduce the applicable limits of Scheduled Underlying Insurance, then Loss shall include such expenses.

***

S.  Occurrence means:

1.  as respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general harmful conditions will be deemed to arise out of one Occurrence.

***

Y.  Property Damage means:

1.  physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.  loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the Occurrence that caused it.

***
***

## Architects and Engineers Professional Liability Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

### Architects and Engineers

This insurance does not apply to any liability arising out of any act, error or omission, malpractice or mistake committed or alleged to have been committed by or on behalf of the Insured in the performance of architectural or engineering services, including but not limited to:

1.  the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications; and

2.  supervisory, inspection or engineering services.

It is understood this exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured.

***

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: KNIGHT OIL TOOLS INC                                    Policy Number: BE    13074559

By: CHARTIS SPECIALTY INSURANCE COMPANY

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY (Knight Oil Tools, Inc.) | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE $10,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE $1,000,000 PERSONAL & ADVERTISING INJURY |
|  |  | Defense Expenses are in addition to the limit |

### Professional Liability Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Professional Liability**

This insurance does not apply to any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

It is understood this exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**.

\*\*\*

### Testing or Consulting Errors and Omissions Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Testing or consulting**

This insurance does not apply to **Bodily Injury, Property Damage,** or **Personal Injury and Advertising Injury** arising out of:

1. An error, omission, defect or deficiency in:

    a. any test performed; or

    b. an evaluation, a consultation or advice given,

    by or on behalf of any **Insured**;

2. The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3. An error, omission, defect or deficiency in experimental data or the **Insured's** interpretation of such data.

\*\*\*

## THE DISPUTE
### 28.

ASIC avers that a real and justiciable controversy exists between ASIC and Knight with regard to ASIC's obligations under the ASIC Policy, as follows:

### COUNT ONE - DECLARATORY RELIEF
#### (Coverage under the ASIC Policy—The Impaired Property Exclusion)

29.

ASIC re-alleges and incorporates by reference paragraphs 1-28 of this Complaint, as if set forth here in full.

30.

The ASIC Policy excludes coverage for Knight's liability.

31.

Pursuant to Exclusion D. Damage to Impaired Property or Property Not Physically Injured, the Policy excludes coverage for Property Damage to Impaired Property or to property that has not been physically injured, arising out of:

a.      a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or

b.      a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

32.

Here, the testimony and exhibits introduced at trial failed to find any physical damage to the well or any surrounding property.

33.

Further, the jury concluded that the Property Damage (i.e., loss of use) relating to the property that was not physically injured (i.e., the Well) arose out of a defect, deficiency, inadequacy or dangerous condition in Knight's Product or Work.

34.

In addition, the jury concluded that the Property Damage (i.e., loss of use) relating to the property that was not physically injured (i.e., the Well) arose out of a failure by Knight to perform a contract or agreement in accordance with its terms.

35.

Because Knight's liability is excluded from coverage by operation of the Damage to Impaired Property or Property Not Physically Injured Exclusion, coverage is not available under the ASIC Policy.

36.

Accordingly, ASIC seeks a declaration that coverage is not owed to Knight under the ASIC Policy.

## COUNT TWO - DECLARATORY RELIEF
### (Coverage under the ASIC Policy—Lack of an Occurrence)

37.

ASIC re-alleges and incorporates by reference paragraphs 1-36 of this Complaint, as if set forth here in full.

38.

The ASIC Policy only provides coverage, if at all, for Property Damage caused by an Occurrence, which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

39.

Here, the jury found that Knight breached its implied warranty of fitness for a particular purpose and that Knight made negligent misrepresentations with respect to the condition of the pipe.

13

40.

The alleged Property Damage was therefore not caused by an Occurrence, as that term is defined by the ASIC Policy, and as such, coverage is not available under the ASIC Policy.

41.

Accordingly, ASIC seeks a declaration that Knight's liability was not caused by an Occurrence and that coverage is therefore not owed to Knight under the ASIC Policy.

### COUNT THREE - DECLARATORY RELIEF
**(Coverage under the ASIC Policy—Expected or Intended Exclusion)**

42.

ASIC re-alleges and incorporates by reference paragraphs 1-41 of this Complaint, as if set forth here in full.

43.

The ASIC Policy excludes coverage for damage expected or intended from the standpoint of the insured.

44.

Here, the jury found that Knight breached its implied warranty of fitness for a particular purpose and that Knight made negligent misrepresentations with respect to the condition of the pipe.

45.

Because Knight expected or intended Rippy's damages, coverage is not available under the ASIC Policy.

46.

Accordingly, ASIC seeks a declaration that coverage is therefore not available under the ASIC Policy.

## COUNT FOUR - DECLARATORY RELIEF
### (Coverage under the ASIC Policy—Professional Liability Exclusion)

47.

ASIC re-alleges and incorporates by reference paragraphs 1-46 of this Complaint, as if set forth here in full.

48.

The ASIC Policy excludes coverage for any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the insured or any person for whom the insured is legally responsible.

49.

Because Knight's liability arose out of an act, error, omission, malpractice or mistake of a professional nature committed by Knight or any person for whom Knight is legally responsible, coverage is not available under the ASIC Policy.

50.

Accordingly, ASIC seeks a declaration that the Professional Liability Exclusion applies and that coverage is therefore not available under the ASIC Policy.

## COUNT FIVE - DECLARATORY RELIEF
### (Coverage under the ASIC Policy—Testing or Consulting Errors and Omissions Exclusion)

51.

ASIC re-alleges and incorporates by reference paragraphs 1-50 of this Complaint, as if set forth here in full.

52.

The ASIC Policy excludes coverage for Property Damage arising out of:

1. Any error, omission, defect or deficiency in:

15

    a.  Any test performed;

    b.  An evaluation, a consultation or advice given,

    By or on behalf of any insured.

2.  The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3.  An error, omission, defect or deficiency in experimental data or the insured's interpretation of such data.

<div align="center">53.</div>

Because the Property Damage arose out of an error, omission, defect or deficiency in a test performed or an evaluation, consultation or advice given by Knight, coverage is not available under the ASIC Policy.

<div align="center">54.</div>

Accordingly, ASIC seeks a declaration that the ASIC Policy does not owe coverage for Knight's liability.

<div align="center">55.</div>

<div align="center">

**COUNT SIX - DECLARATORY RELIEF**
**(The Architects and Engineers Professional Liability Exclusion)**

</div>

ASIC re-alleges and incorporates by reference paragraphs 1-54 of this Complaint, as if set forth here in full.

<div align="center">56.</div>

The ASIC Policy excludes coverage for any liability arising out of any act, error or omission, malpractice or mistake committed or alleged to have been committed by or on behalf of Knight in the performance of architectural or engineering services.

<div align="center">16</div>

57.

Because Knight's liability arose out of Knight's engineering services, the ASIC Policy does not provide coverage.

58.

Accordingly, ASIC seeks a declaration that the ASIC Policy does not owe coverage for Knight's liability.

### COUNT SEVEN - DECLARATORY RELIEF
#### (Coverage under the ASIC Excess Policy—Exhaustion)

59.

ASIC re-alleges and incorporates by reference paragraphs 1-58 of this Complaint, as if set forth here in full.

60.

The ASIC Policy is only potentially triggered, if at all, when the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss, as that term is defined by the ASIC Policy, to which the ASIC Policy applies and any applicable, Other Insurance has been exhausted by the payment of Loss.

61.

Accordingly, ASIC seeks a declaration that coverage under the ASIC Policy is not triggered, if at all, until the limits of liability of the Scheduled Underlying Insurance and any applicable Other Insurance are exhausted by payment of Loss.

### RELIEF REQUESTED

WHEREFORE, AIG Specialty Insurance Company prays that this Complaint for Declaratory Judgment be filed and served, and that the Court finds and declares that:

Coverage under the ASIC Policy is not even potentially triggered unless and until the limits of liability of the Scheduled Underlying Insurance and any other applicable Other Insurance are exhausted by payment of Loss;

There is no coverage under the ASIC Policy for Knight's liability; and

AIG Specialty Insurance Company is entitled to all such other, further or different relief as the Court deems just and equitable, including attorney's fees and costs, to the extent permitted by law.

Respectfully Submitted,

*/s/ Robert I. Siegel*
ROBERT I. SIEGEL (#10263)
ALISTAIR M. WARD (#24693)
GIEGER, LABORDE & LAPEROUSE, LLC
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile:   (504) 561-1011
E-mail: rsiegel@gllaw.com
E-mail: award@gllaw.com
Attorneys for AIG Specialty Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December 2021, I electronically filed this **COMPLAINT FOR DECLARATORY JUDGMENT** with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for all parties to this proceeding.

*/s/ Robert I. Siegel*
ROBERT I. SIEGEL

18

# EXHIBIT F

# General Liability Policy – Declarations

ACE USA


| | |
|---|---|
| ☐ Bankers Standard Insurance Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 | ☐ ACE Property and Casualty Insurance Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 |
| ☐ Century Indemnity Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 | ☐ Indemnity Insurance Company of North America<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 |
| ☐ ACE Fire Underwriters Insurance Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 | ☐ Insurance Company of North America<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 |
| ☒ ACE American Insurance Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 | ☐ Pacific Employers Insurance Company<br>436 Walnut Street, PO Box 1000<br>Philadelphia, Pennsylvania 19106-3703 |

POLICY IDENTIFICATION

| HDO | G24940214 |
|---|---|

NAMED INSURED AND ADDRESS

Knight Oil Tools, Inc.
2030 Hwy 90 E
Lafayette, LA 70508

PRIOR POLICY NO. OR NEW: HDO G23749257

PRODUCER CODE: 273873     COMM: Nil
Knox Insurance Group, LLC
301 E. Kaliste Saloom Rd., Suite 300A
Layfayette, LA 70508

MARKETING OFFICE: 5EM/HOU
MARKET HAZARD CODE:
PIIC CODE: 5084     INDUSTRY CODE:

| | | |
|---|---|---|
| POLICY IS | : Renewal | OF HDO G23749257 |
| NAMED INSURED IS | : Corporation | |
| BUSINESS OF INSURED | : Wholesale | |
| POLICY PERIOD | : FROM 03/31/2010 | TO 03/31/2011 |
| | 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE. | |

## PREMIUM PAYMENT CONDITIONS

| | | |
|---|---|---|
| AUDIT PERIOD | : | ** |
| PAYMENT FREQUENCY | : | ** |
| PAYMENT SCHEDULE | : | ** |

TOTAL ADVANCE PREMIUM:

PREMIUMS RESULTING FROM AUDIT ARE NOT INCLUDED IN THE ABOVE

POLICY IDENTIFICATION

| DECLARATIONS – GENERAL LIABILITY POLICY   Page 2 | HDO | G24940214 |
|---|---|---|

## COVERAGES AND LIMITS OF INSURANCE

In return for the payment of premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all of the terms and conditions of this policy.

Coverage Form:                                                                 Limits of Insurance

COMMERCIAL GENERAL LIABILITY
| Each Occurrence Limit | $ | 1,000,000 |
| Damage to Premises Rented to You Limit | $ | 100,000 |
| Medical Expense Limit (any one person or organization) | $ | 5,000 |
| Personal & Advertising Injury Limit | $ | 1,000,000 |
| General Aggregate Limit (other than Products/ Completed Operations) | $ | 10,000,000 |
| Products/Completed Operations Aggregate Limit | $ | 2,000,000 |

## SCHEDULE OF LOCATIONS

LOCATION NUMBER AND ADDRESS

LD --2F52b (Ed. 10/01) Printed in U.S.A.

AA067274a

KNIGHT000002

| DECLARATIONS – GENERAL LIABILITY POLICY Page 3 | | POLICY IDENTIFICATION |
|---|---|---|
| | | HDO  G24940214 |

## SCHEDULE OF COVERAGES

**COVERAGE PART:**

| Location Number | Coverage | Class Code/ Classification Description | Premium Basis | Exposure | Rate | Premium |
|---|---|---|---|---|---|---|
| | | 50050 | | | | |
| All | All | Wholesale | ** | ** | $  ** | $ ▓▓▓▓▓▓ |
| | | **Refer to the Notice of Election | | | | |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |

TOTAL PREMIUM FOR THIS COVERAGE PART      $ ▓▓▓▓▓▓

When used as a premium basis the following code definitions apply:

A - Area -- Per 1,000 square feet of area
C - Total Cost -- per $1,000 of total cost
D - If Any
E - Admissions -- per 1,000 admissions
F - Flat Charge
J - Total Operating Expenditures -- per $1,000 of Expenditures

O - Other
P - Payroll -- per $1,000 of payroll
S - Gross Sales -- per $1,000 of Gross Sales
U - Units
X - Each

| DECLARATIONS – GENERAL LIABILITY POLICY    Page 4 | POLICY IDENTIFICATION | |
|---|---|---|
| | HDO | G24940214 |

## FORMS AND ENDORSEMENTS (Page 1 of 2)

### FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION

#### SCHEDULE OF COVERAGE FORMS

| | |
|---|---|
| ALL20887 | ACE Producer Compensation Practices & Policies |
| ILP0010104 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| IL00171198 | Common Policy Conditions |
| CG00011207 | Commercial General Liability Coverage Form |
| ALL2Y31b | Arkansas Notice to Policyholders |
| ALL22368 | Colorado Fraud Statement |
| ALL2U78b | Notice To All Oklahoma Policyholders |
| ALL4Y30d | Information and Complaints (TX) |
| ALL11559d | Risk Control Services for Texas Policyholders |

#### SCHEDULE OF FORMS AND ENDORSEMENTS

| Endt. No. | Form No. | Description |
|---|---|---|
| 1. | LD2X58 | Broad Form Named Insured |
| 2. | LD19643e | Reimbursement of Deductible Endorsement |
| 3. | CC1E15 | Gulf Of Mexico Extension |
| 4. | CC1E15 | Watercraft Work Platform Coverage Endorsement |
| 5. | LD21730 | Additional Insured Where Required By Written Contract |
| 6. | LD9863A | Employee Benefits Liability Endorsement |
| 7. | LD3R16 | Exclusion – Asbestos |
| 8. | LD8R38 | Exclusion Extremely Low Frequency Electromagnetic Fields (ELF-EMF) |
| 9. | LD4S35 | Exclusion – Lead |
| 10. | LD20284 | In Rem |
| 11. | LD15284 | MTBE Exclusion |
| 12. | LD20287 | Non-Contributory Endorsement For Additional Insureds |
| 13. | LD5T98 | Nonowned Watercraft Exception |
| 14. | LD6260a | Personal Injury and Advertising Injury Liability |
| 15. | LD0846 | Professional Liability Exclusion Endorsement |
| 16. | LD12991a | Pollution Exclusion – Time Element Exception (Broad Form) |
| 17. | LD21733 | Radioactive Matter Exclusion |
| 18. | LD15270 | Silica, Dust and Particulate Matter Exclusion |
| 19. | ALL18057-0305 | Notification of Premium Adjustment |
| 20. | CG20260704 | Additional Insured – Designated Person or Organization |

This declaration and the coverage form(s) and endorsements, if any, listed above and attached, completes this policy.

COUNTERSIGNED AT: _____   AUTHORIZED AGENT: _____

DATE: _____

LD-2A48a (Ed. 3/87) Printed in U.S.A.                                    AA 067266a

KNIGHT000004

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Named Insured | Knight Oil Tools, Inc. | | | | Endorsement Number (Page 2 of 2) |
|---|---|---|---|---|---|
| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010 | to | 03/31/2011 | Effective Date of Endorsement 03/31/2010 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

| Endt. No. | Form No. | Description |
|---|---|---|
| 21. | CG02241093 | Earlier Notice Of Cancellation Provided By Us |
| 22. | CG21471207 | Employment-Related Practices Exclusion |
| 23. | CG22430798 | Exclusion - Engineers, Architects or Surveyors Professional Liability |
| 24. | CG21411185 | Exclusion - Intercompany Products Suits |
| 25. | CG22330798 | Exclusion - Testing or Consulting Errors and Omissions |
| 26. | CG21671204 | Fungi or Bacteria Exclusion |
| 27. | CG21700108 | Cap on Losses From Certified Acts of Terrorism |
| 28. | CG21800108 | Certified Acts of Terrorism Aggregate Limit; Cap on Losses From Certified Acts of Terrorism |
| 29. | CG24040509 | Waiver of Transfer of Rights of Recovery Against Others To Us |
| 30. | IL09850108 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| 31. | ALL21101 | Trade or Economic Sanctions Endorsement |
| 32. | IL00210702 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| 33. | CG26080490 | Arkansas Changes - Multi-Year Policies |
| 34. | IL02310908 | Arkansas Changes - Cancellation and Nonrenewal |
| 35. | IL02280907 | Colorado Changes - Cancellation and Nonrenewal |
| 36. | CG01181204 | Louisiana Changes - Legal Action Against Us |
| 37. | CG01250303 | Louisiana Changes - Insuring Agreement |
| 38. | CG26841204 | Louisiana Changes - Transfer of Rights of Recovery Against Others To Us Condition |
| 39. | IL02770908 | Louisiana Changes - Cancellation and Nonrenewal |
| 40. | IL01650908 | North Dakota Changes - Examination of Your Books and Records |
| 41. | IL02340908 | North Dakota Changes and Cancellation and Nonrenewal |
| 42. | IL02980908 | New Mexico Changes - Cancellation and Nonrenewal |
| 43. | CG01091185 | Kansas And Oklahoma Changes - Transfer of Rights |
| 44. | IL02360907 | Oklahoma Changes - Cancellation and Nonrenewal |
| 45. | CG01030606 | Texas Changes |
| 46. | CG01861204 | Utah Changes |
| 47. | IL02660908 | Utah Changes - Cancellation and Nonrenewal |
| 48. | CG01600798 | Wyoming Changes |
| 49. | IL01140908 | Wyoming Changes - Defense Costs |
| 50. | IL02520907 | Wyoming Changes - Cancellation and Nonrenewal |
| 51. | CC1K11e | Signatures |

Authorized Agent

CC-1E15 Ptd. in U.S.A.

POLICY NUMBER: HDO G24940214



### ACE Producer Compensation
### Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ALL-20887 (10/06)

KNIGHT000006

POLICY NUMBER: HDO G24940214

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site -- http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

POLICY NUMBER:  HDO G24940214

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

KNIGHT000008

POLICY NUMBER: HDO G24940214

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2006

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

   (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006

KNIGHT000012
CG 00 01 12 07

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc., 2006

KNIGHT000013

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006
KNIGHT000812

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

p. **Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

1. **Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b. **Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2006

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006

KNIGHT000022

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

© ISO Properties, Inc., 2006
KNIGHT000023

      (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

    a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006
KNIGHT000934
CG 00 01 12 07

POLICY NUMBER: HDO G24940214



# Arkansas
# Notice To Policyholders

## QUESTIONS ABOUT YOUR INSURANCE?

If you have questions about your insurance, need coverage information, or require assistance in resolving complaints, do not hesitate to contact either your insurance agent, or ACE USA, Customer Service Department, 436 Walnut Street, Philadelphia, PA 19106-3703, telephone 1-800-352-4462.

If we fail to provide you with reasonable and adequate service, you should feel free to contact:

Arkansas Insurance Department
1200 West Third Street
Little Rock, AR 72201
(501) 371-2640 or 800-852-5494

KNIGHT000025

POLICY NUMBER:  HDO G24940214

# COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company.  Penalties may include imprisonment, fines, denial of insurance, and civil damages.  Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

© ISO Properties, Inc., 2004

KNIGHT000026

POLICY NUMBER: HDO G24940214

## NOTICE TO ALL OKLAHOMA POLICYHOLDERS

**WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

You are insured by the Company listed on the Signature page which is named on the first page of the Declarations of this policy. It is an ACE USA company and has its principal office at 436 Walnut Street, PO Box 1000, Philadelphia, PA 19106-3703.

ALL-2U78b (2/06) Ptd. in U.S.A.

POLICY NUMBER:  HDO G24940214



**ace group**

# Information and Complaints

This information is being provided to you pursuant to the requirements of Title 28, Part 1, Chapter 1, Subchapter E, 1.601 of the Texas Administrative Code relating to our Toll Free information and complaint number.

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|

To obtain information or make a complaint:

You may call the Company's toll-free telephone number for information or to make a complaint at:

**1-(800) 352-4462**

You may also write to the Company at:

ACE USA
Customer Services
PO Box 1000
Philadelphia, PA  19106-3703

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-(800) 252 3439**

You may write the Texas Department of Insurance

P. O. Box 149104
AUSTIN, TX 78714-9104
FAX # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

PREMIUM OR CLAIM DISPUTES:  Should you have a dispute concerning your premium or about a claim you should contact your agent or the company first. If the dispute is not resolved you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY:  This notice is for information only and does not become a part or condition of the attached document.

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de la Compania para informacion o para someter una queja at:

**1 (800) 352-4462**

Usted tambien puede escribir a la Compania:

ACE USA
Customer Services
PO Box 1000
Philadelphia, PA  19106-3703

Puede communicarse con el Departmento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1 (800) 252-3439**

Puede escribir al Departamento de Seguros de Texas

P. O. Box 149104
AUSTIN, TX 78714-9104
FAX # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

DISPUTAS  SOBRE  PRIMAS  O  RECLAMOS:  Si tiene una disputa concerniente a su prima o un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa puede entonces communicarse con el departmento de Seguros en Texas

UNA ESTE AVISO A SU POLIZA: Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

ALL- 4Y30d (10/2009)

POLICY NUMBER:  HDO G24940214



ACE USA

ACE USA
Risk Control Services
436 Walnut Street
Philadelphia, PA 19106-3703

Phone: 1.866.357.3797
Fax: 215.640.5084
www.ace-ina.com

National Manager, Jurisdictional Services

RE:  RISK CONTROL SERVICES FOR TEXAS POLICYHOLDERS
Commercial Automobile Liability, General Liability, Professional Liability, and Medical
Professional Liability (other than Hospitals)

The ACE Companies are required by Texas law and regulations to maintain or provide accident prevention services
for its commercial automobile, general liability and professional liability policyholders.  The Ace Companies offer an
array of accident prevention services in Texas at no additional charge.  These services are intended to help prevent
and/or minimize loss.

These services include but are not limited to:  individual risk surveys; improvement recommendations; loss
investigation; specific loss problem identification and recommended improvement actions.

ACE may recommend one or more of these services based upon hazard, experience, and size of your Texas
operations.  You have the choice of receiving or declining any of the services offered.  If you wish to decline all of the
services or wish to receive only selected risk control service, please indicate that by signing and dating this letter in
the space provided below.  Please mail or fax to the captioned address or fax number.  If you decline all of ACE's risk
control services or choose only a support service, such as ergonomics survey, driving training, or other services and
not a complete risk survey, we still have a responsibility under Texas law and regulation to monitor your losses.  In
the event you start to have a loss problem and a trend is established, and/or adverse loss ratio is developed, we will
contact you and offer to assist you in addressing the situation.

Sincerely,

National Manager, Jurisdictional & Regulatory Services
ACE USA Risk Control Services
436 Walnut Street, Philadelphia, PA 19106-3703
or call toll free at: 1-866-357-3797

☐ . I am aware of the loss control services offered and decline them.  I have made other arrangements for
these services.

☐ I wish to obtain the following offered accident prevention services:

_____

☐ I have no risk control services needs now.  I reserve the right to request loss control services within the
period.

_____   _____   _____
        (Signature)                     (Phone #)                        (Date)

Print Name: _____   Policy # _____

Company Name: _____

Address: _____

City, State, Zip: _____

One of the ACE Group of Insurance & Reinsurance Companies
This Company has undertaken a survey of your premises, equipment, or operations (whichever is pertinent to the type of insurance
applied for or provided) for the purpose of supporting the functions of risk underwriting.  Any recommendations or information
provided is not intended as a substitute for advice from a safety expert or legal counsel you may retain for your own purposes.  It is
not intended to supplant any legal duty you may have to provide a safe premises, workplace, product or operation.

ALL- 11559d (10/07)

POLICY NUMBER: HDO G24940214                                                                    ENDT. #1

## BROAD FORM NAMED INSURED

| Named Insured Knight Oil Tools, Inc. | | | Endorsement Number 1 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010  to  03/31/2011 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

It is agreed that:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any business entity incorporated or organized under the laws of the United States of America (including any State thereof), its territories or possessions or Canada (including any Province thereof) in which the Named Insured shown in the Declarations owns, during the policy period, an interest of more than 50 percent. If other valid and collectible insurance is available to any business entity covered by this policy solely by reason of ownership by the Named Insured shown in the Declarations in excess of 50 percent, this insurance is excess over the other insurance, whether primary, excess, contingent, or any other basis.

........................................................................
                                                              Authorized Agent

LD-2X58 Ptd. in U.S.A.                                                        KNIGHT000030

POLICY NUMBER: HDO G24940214                                                                                          ENDT.  #2

## REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT
## ALLOCATED LOSS ADJUSTMENT EXPENSE ("ALAE")
## INCLUDED IN THE DEDUCTIBLE AMOUNT

| Named Insured | | Endorsement Number |
| --- | --- | --- |
| Knight Oil Tools, Inc. | | 2 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| HDO | G24940214 | 03/31/2010  to  03/31/2011 | |
| Issued By (Name of Insurance Company) | | |
| ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

I)   DEDUCTIBLE AMOUNT

    1)   Deductible Amount:            $ 350,000

    2)   The Deductible Amount applies separately to:

        (a)   The sum of:

            (i)      damages per "occurrence" under Coverage A; and

            (ii)     medical expenses per accident under Coverage C; and

            (iii)    "ALAE" incurred with respect to an "occurrence" under Coverage A.

        (b)   The sum of:

            (i)      damages sustained by any one person or organization under Coverage B; and

            (ii)     "ALAE" incurred with respect to an offense under Coverage B.

II)   ADDITIONAL PROVISIONS

    1)   "We" will pay all sums that "we" become legally obligated to pay up to the Limits of Insurance under this policy.

    2)   "You" must reimburse us up to the Deductible Amount for any amounts we have paid under this policy.

    3)   The Deductible Amount will apply as shown in Section I of this endorsement regardless of the number of claimants, insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits".

    4)   If "you" fail to reimburse "us" for any amount due under this endorsement, or fail to provide "us" any collateral that "we" require, "you" will be in default of "your" obligations to "us", and "we" may take any

LD-15643e (09/09)                                                                                                    Page 1 of 2

Includes copyrighted material of Insurance Services Office, Inc. with its permission

KNIGHT000031

steps "we" deem necessary to enforce our rights against "you", including but not limited to drawing on any amount of collateral "we" hold or canceling this policy, if permitted by law.

5)   Each Named Insured is jointly and severally liable for all reimbursable amounts under this endorsement.

6)   If "we" recover any payment "we" make under this policy from anyone liable for damages or "ALAE", the amount "we" recover will first be applied to any payments "we" made in excess of the Deductible Amount and to "our" expenses in obtaining the recovery. The remainder of the recovery, if any, will reduce the amount that is reimbursable by "you".

III)   ALLOCATED LOSS ADJUSTMENT EXPENSE DEFINITION

"Allocated Loss Adjustment Expense(s)" or "ALAE" means such claim expenses, costs and any interest provided for under Section I – Coverages, Supplementary Payments – Coverages A and B of this policy, that are incurred in connection with the investigation, administration, adjustment, subrogation, settlement or defense of any claim or lawsuit that we, under our accounting practices, directly allocate to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of depositions and court reporters or recorded statements, provided, however, that Allocated Loss Adjustment Expense shall not include the salaries and traveling expenses of our employees or our overhead and adjusters' fees.

IV)   NO OTHER CHANGES

All other terms of this policy, including those with respect to:

(a)   Our right and duty to defend any "insured" against a "suit" asking for damages to which this insurance applies, and

(b)   Limits of Insurance, and

(c)   Your Duties In The Event Of Occurrence, Offense, Claim Or Suit

remain unchanged.

_____

Authorized Agent

Includes copyrighted material of Insurance Services Office, Inc. with its permission

KNIGHT000032

## GULF OF MEXICO EXTENSION

| Named Insured | Knight Oil Tools, Inc. | | Endorsement Number 3 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010 to 03/31/2011 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The Definition of "Coverage territory" is replaced by the following:

4. "Coverage territory" means:

a.   The United States of America (including its territories and possessions), Puerto Rico and Canada;

b.   International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c.   All other parts of the world if the injury or damage arises out of:

    (1) Goods or products made or sold by you in the territory described in a. above;
    (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business;
    (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication; or

d.   Notwithstanding the foregoing, "coverage territory" also means the Gulf of Mexico, but only for the operations of the Named Insured.

provided the insured's responsibility to pay damages under c. and d. above is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

Authorized Agent

KNIGHT000033

## WATERCRAFT WORK PLATFORM COVERAGE ENDORSEMENT

| Named Insured | Knight Oil Tools, Inc. | | Endorsement Number 4 |
|---|---|---|---|
| Policy Symbol HDG | Policy Number G23749257 | Policy Period 03/31/2009 to 03/31/2010 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

1.   It is agreed that Section I Coverage A, exclusion g. will not apply to any liability arising out of the deck space of any owned or chartered tug, barge, work boat, crew boat, drilling or workover barge, when such watercraft is not operating under navigation and when such deck space is used only as a work platform in connection with oil, gas, seismic or geothermal exploration production operations of the Named Insured.

2.   Regardless of the limited watercraft coverage provided by this policy, this policy excludes any losses recoverable under any of the following or similar types policies: Environmental Liability, Hull, Protection & Indemnity including Contractual Liability or Marine Operators/Charter's Liability Coverage on operated, chartered or brokered watercraft; regardless of whether such insurance is actually in force at the time of the loss and regardless of the limit of liability available under such insurance.

3.   Solely for purposes of coverage provided under this endorsement, the following supersedes any Pollution Exclusion contained in or endorsed to this policy:

This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused.
Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

We shall have no duty to defend any suit arising out of or in any way related to pollution.

_____
Authorized Agent

CC-1E16 Ptd. in U.S.A.

KNIGHT000034

POLICY NUMBER: HDO G24940214                                                    ENDT.  #5

## ADDITIONAL INSURED WHERE REQUIRED BY WRITTEN CONTRACT

| Named Insured Knight Oil Tools, Inc. | Endorsement Number 5 |
|---|---|

| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010  to  03/31/2011 | Effective Date of Endorsement |
|---|---|---|---|

| Issued By (Name of Insurance Company) ACE American Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Section II.2 – Who Is An Insured:

e.  Any person or organization that you are required to include as an additional insured under this policy because of a written contract that:

1)  Is in effect during this policy period; and
2)  Was executed prior to the "occurrence" of the "bodily injury" or "property damage"; and
3)  Qualifies as an "insured contract" as defined in this policy.

Such person or organization is an additional insured only for:

4)  Coverage under Section I – Coverages, Coverage A. Bodily Injury and Property Damage Liability; and
5)  Liability arising out of "your work" or "your product" for that additional insured; and
6)  For the period of time required by the written contract and in no event beyond the expiration of this policy.

In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract:

7)  The insurance provided by this endorsement shall be limited to the Limits of Insurance required by the written contract; and
8)  This endorsement shall not increase the Limit of Insurance stated in the Declarations under Item 3. Limits of Insurance pertaining to the coverage provided herein.

Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless the written contract specifically requires that this insurance apply on a primary or non-contributory basis.

In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each additional insured must give us prompt notice of any "occurrence" which may result in a claim, forward all legal papers to us, cooperate in the defense of any actions, and otherwise comply with all of the policy's terms and conditions.

_____
Authorized Agent

LD-21730 (01/07) Printed in U.S.A.                                              Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission

KNIGHT000035

POLICY NUMBER: HDO G24940214                                                                ENDT. #6

## EMPLOYEE BENEFITS LIABILITY ENDORSEMENT

| Named Insured   Knight Oil Tools, Inc. | Endorsement Number 6 |
|---|---|

| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010  to  03/31/2011 | Effective Date of Endorsement |
|---|---|---|---|

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.

Limits of Insurance

| Each Claim Limit | $ | 1,000,000 |
|---|---|---|
| Aggregate Limit | $ | 1,000,000 |
| Retroactive Date | | N/A |
| Deductible Amount | $ | 350,000 |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

INSURING AGREEMENT

We will pay under this endorsement those sums that the insured becomes legally obligated to pay as damages because of a claim or "suit" brought by any employee, former employee, or their beneficiaries or legal representatives in connection with any negligent error, omission, or breach of duty in the "administration" of your "employee benefits" programs.

We will have the right and the duty to defend any "suit" seeking those damages. But:

The amount we will pay for damages is limited as described in the Schedule as Limits of Insurance;

We may investigate and settle any claim or "suit" at our discretion; and

Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this endorsement.

This insurance applies to negligent errors, omissions, breaches of duty, or misstatements only if a claim for damages is first made against any insured during the policy period or any Extended Reporting Period we provide under the paragraph titled Extended Reporting Period.

This insurance does not apply to negligent errors, omissions, breaches of duty, or misstatements which occurred before the Retroactive Date shown above, or which occur after the end of the policy period.

WHO IS AN INSURED

With respect to this endorsement, Section II – Who Is An Insured is modified to include employees only while authorized to act in the "administration" or your "employee benefits" programs.

EXCLUSIONS

Insurance under this endorsement does not apply to any claim or "suit" arising out of

any dishonest, fraudulent, criminal or malicious act;

any "Bodily Injury," "Personal Injury," "Advertising Injury," or "Property Damage";

any claim for failure of performance of contract by any Insurer;

LD-9863a (10/96) Printed in U.S.A.                                            KNIGHT000036 Page 1 of 3

any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law;

any termination of employment;

any failure of stock to perform as represented by you;

any advice given by you to your "employees" to participate or not to participate in stock subscription plans; or

any actual or alleged error or omission or breach of duty, committed or alleged to have been committed by a trustee, in the discharge of fiduciary duties, obligations or responsibilities imposed by the Federal Employee Retirement Income Security Act of 1974 or Title X of the Consolidated Omnibus Budget Reconciliation Act of 1985 (Public Law 99-272) or Section 9319 of the Omnibus Budget Reconciliation Act of 1986 (Public Law 99-509) or any amendments to these Acts.

## LIMITS OF INSURANCE

The Limits of Insurance shown in the Schedule of this endorsement and the rules below, fix the most we will pay regardless of the number of:

insureds;

Claims made or "suits" brought; or

Persons or organizations making claims or bringing "suits".

The Aggregate Limit is the most we will pay for the sum of all damages under this endorsement.

The Each Claim Limit is the most we will pay for damages arising out of any one claim or "suit".

The Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## DEDUCTIBLE

A Deductible in the amount in the Schedule of this endorsement applies to each claim covered by this endorsement.  We will subtract this amount from the amount of damages payable for each claim.

## ADDITIONAL DEFINITIONS

The following additional definitions are added to Section V – Definitions:

"Employee benefits" means group life insurance, group accident or health insurance, profit sharing plans, pension plans, "employee" stock subscription plans, "employee" travel, vacation, or savings plans, workers compensation, unemployment insurance, social security and disability benefits insurance, and any other similar benefit program.

"Administration" means any of the following acts that you do or authorize a person to do:

Counseling "employees", other than giving legal advice, on "employee benefits" programs;

Interpreting your "employee benefits" programs;

Handling records for your "employee benefits" programs; and

Effecting enrollment, termination or cancellation of "employees" under your "employee benefits" programs.

"Administration" does not include:

The failure of performance of any contract by any insurer;

The failure of any investment plan to perform as represented by an insured;

The inability of "employee benefit" programs to meet their obligation due to insolvency.

KNIGHT000037

EXTENDED REPORTING PERIOD

1.   We will automatically provide an Extended Reporting Period as described in paragraph 2. and 3. below if:

    a.   This endorsement is cancelled or not renewed; or

    b.   We renew or replace this endorsement with insurance that:

        (1)   Has a Retroactive Date later than the date shown on this endorsement; or

        (2)   Does not apply to errors, omissions, breaches of duty, or misstatements on a claims-made basis.

2.   The Extended Reporting Period does not extend the policy period or change the scope of coverage provided.  It applies only to claims for errors, omissions, breaches of duty, or misstatements that occur before the end of the policy period but not before the Retroactive Date shown on this endorsement.

    Once in effect, the Extended Reporting Period may not be cancelled.

3.   The Extended Reporting Period is automatically provided without additional charge.  This period starts with the end of the policy period and lasts for Five years.

    The Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4.   The Extended Reporting Period does not reinstate or increase the Limits of Insurance.

_____
Authorized Agent

POLICY NUMBER: HDO G24940214                                                    ENDT.  #7

## EXCLUSION – ASBESTOS

| Named Insured   Knight Oil Tools, Inc. | | | Endorsement Number 7 | |
|---|---|---|---|---|
| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010  to  03/31/2011 | Eff. Date of Endorsement | |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
FARM COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK

This insurance does not apply to any loss, demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

Authorized Agent

LD-3R18 (Ed. 3/87) Printed in U.S.A.   Reprinted in part with permission of Insurance Service Office, Inc., 1985.

KNIGHT000039

POLICY NUMBER:  HDO G24940214                                      ENDT.  #8

## EXCLUSION
## EXTREMELY LOW FREQUENCY ELECTROMAGNETIC FIELDS (ELF-EMF)

| Named Insured   Knight Oil Tools, Inc. | | Endorsement Number 8 |
|---|---|---|
| Policy Symbol   Policy Number | Policy Period | Effective Date of Endorsement |
| HDO   G24940214 | 03/31/2010   to   03/31/2011 | |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
FARM COVERAGE
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

This insurance does not apply to, and we shall have no duty of any kind with respect to, any injury, damage, expense, cost, loss, liability or legal obligation arising out of or allegedly arising out of, or in any way related to, any exposure, other than an instantaneous or abrupt exposure that results in electrocution, electric shock or skin burning, to "extremely low frequency electromagnetic fields," or "ELF-EMF."

"Extremely low frequency electromagnetic fields," or "ELF-EMF," means the 60-Hertz power frequency electric and magnetic fields or invisible lines of force that occur wherever electricity is present.

This exclusion applies, but is not limited, to any injury, damage, expense, cost, loss, liability or legal obligation to treat for, monitor, abate, weaken, control or take any other remedial action with respect to "ELF-EMF."

The addition of this endorsement does not imply that other policy provisions, including but not limited to any pollution exclusion, do not otherwise preclude or exclude coverage for "ELF-EMF" related injury, damage, expense, cost, loss, liability or legal obligation.

_____
Authorized Agent

POLICY NUMBER: HDO G24940214                                                    ENDT. #9

## EXCLUSION - LEAD

| Named Insured   Knight Oil Tools, Inc. | | Endorsement Number 9 |
|---|---|---|
| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010 to 03/31/2011 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY FORM
FARM COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

THE COMBINE POLICY – SECTION II
COMMERCIAL FARM POLICY – SECTION II
FARMERS PACKAGE POLICY – SECTION II

———————————————

This insurance does not apply to, and we shall have no duty of any kind with respect to, any injury, damage, expense, cost, loss, liability or legal obligation arising out of or allegedly arising out of or in any way related to the toxic properties of lead or lead-containing products, materials or substances.

This exclusion applies to all forms of lead, including but not limited to solid, liquid, vapor and fumes.

This exclusion applies, but is not limited, to any injury, damage, expense, cost, loss, liability or legal obligation to test for, monitor, abate, remove, or take any other remedial action with respect to lead or lead-containing products, materials or substances.

The addition of this endorsement does not imply that other policy provisions, including but not limited to any pollution exclusion, do not also exclude coverage for lead-related injury, damage, expense, cost, loss, liability or legal obligation.

_____
Authorized Agent

LD-4S35 (Ed. 6/92) Ptd. in U.S.A.

KNIGHT000041

POLICY NUMBER: HDO G24940214                                                                ENDT. #10

---

### IN REM

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Knight Oil Tools, Inc. | | | 10 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| HDO | G24940214 | 03/31/2010  to  03/31/2011 | |
| Issued By (Name of Insurance Company) | | | |
| ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This Endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

The following is added to the Insuring Agreement of Coverage A. Bodily Injury and Property Damage (Section I – Coverages):

An action "in rem" against a vessel owned by, leased to, operated by, or chartered by or for you, shall be treated as if it were an action "in personam" against you.

_____

Authorized Agent

LD-20284 (06/06)                                                                              Page 1 of 1

KNIGHT000042

POLICY NUMBER: HDO G24940214

ENDT. #11

## MTBE EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Knight Oil Tools, Inc. | | | 11 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| HDO | G24940214 | 03/31/2010  to  03/31/2011 | |
| Issued By (Name of Insurance Company) | | | |
| ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

#### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any injury, damage, expense, cost, loss, demand, claim, liability or legal obligation arising out of, resulting from or in any way related to actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape, spill, leak, handling, sale, distribution, manufacture, remediation, disposal, monitoring, testing, investigation, treatment, neutralization or detoxification of Methyl-Tertiary-Butyl Ether or Methyl-Tert-Butyl Ether ("MTBE"); or any product, substance, or wastes containing MTBE; or any daughter or degradation products of MTBE.

The addition of this endorsement does not imply that other policy provisions, including but not limited to any pollution exclusion, do not also exclude coverage for MTBE related injury, damage, expense, cost, loss, liability, or legal obligation.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

LD-15284 (03/04)                    Reprinted in part, with permission of ISO Properties, Inc., 2001

KNIGHT000043

POLICY NUMBER: HDO G24940214                                    ENDT. #12

## NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS

| Named Insured |  |  | Endorsement Number |
| --- | --- | --- | --- |
| Knight Oil Tools, Inc. |  |  | 12 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| HDO | G24940214 | 03/31/2010  to  03/31/2011 |  |
| Issued By (Name of Insurance Company) |  |  |  |
| ACE American Insurance Company |  |  |  |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COMMERCIAL GENERAL LIABILITY COVERAGE

#### Schedule

Organization                                         Additional Insured Endorsement

BP America Production Company, ITS
Co-Venturers, ITS and Their Respective
Affiliates and ITS and Their
Respective Directors, Officers and
Employees. Dynmcdermott Petroleum
Operations Company & The United
States of America, 850 S. Clearview
Parkway, New Orleans, LA  70123.


All persons or entities added as
additional insureds through an
endorsement with the term "Additional
Insured" in the title.

*(If no information is filled in, the schedule shall read: "All persons or entities added as additional insureds through an endorsement with the term "Additional Insured" in the title)*

For organizations that are listed in the Schedule above that are also an Additional Insured under an endorsement attached to this policy, the following is added to Section IV.4.a:

If other insurance is available to an insured we cover under any of the endorsements listed or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss on a primary basis and we will not seek contribution from the other insurance available to the Additional Insured.

_____

_____
Authorized Agent

LD-20287 (08/06)                                                  Page 1 of 1

KNIGHT000044

POLICY NUMBER: HDO G24940214                                                    ENDT. #13

## NONOWNED WATERCRAFT EXCEPTION

| Named Insured   Knight Oil Tools, Inc. | | Endorsement Number 13 |
|---|---|---|
| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010  to  03/31/2011 |  Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### Commercial General Liability Coverage Form

Subparagraph (2) of Exclusion 2.g of Coverage I.A, Bodily Injury and Property Damage Liability is deleted in its entirety and replaced by the following:

(2)    A watercraft you do not own that is:

    (a)    Less than    90    feet long; and

    (b)    Not being used to carry persons or property for a charge;

<div style="text-align:right;">_____<br>Authorized Agent</div>

LD-5Y98  Ptd. in U.S.A                                                          KNIGHT000045

POLICY NUMBER: HDO G24940214

ENDT. #14

## PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

| Named Insured<br>Knight Oil Tools, Inc. | | | Endorsement Number<br>14 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24940214 | Policy Period<br>03/31/2010  to  03/31/2011 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

It is agreed that the General Liability Coverage – Section I, Coverage B., Exclusion 2(e) is deleted.

All other terms and conditions remain unchanged.

_____
Authorized Agent

LD-5Z50a (10/02) Ptd. in U.S.A.

POLICY NUMBER:  HDO G24940214

ENDT.  #15

## PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT

| Named Insured   Knight Oil Tools, Inc. | | | Endorsement Number  15 |
|---|---|---|---|
| Policy Symbol  HDO | Policy Number  G24940214 | Policy Period  03/31/2010  to  03/31/2011 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)  ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to any damages arising out of any professional services, including, but not limited to,

A.  The rendering or failure to render:

1.  Medical, surgical, dental, x-ray, nursing, or any other health service or treatment, or the related furnishing of food or beverages;

2.  Any cosmetic, ear piercing, tonsorial, massage, physiotherapy, chiropody, hearing aid, optical or optometrical service or treatment;

3.  Any legal advice or legal service;

4.  Any service or advice relating to physical fitness, including services or advice in connection with diet, cardio-vascular fitness, body building or physical training program; or

5.  Any accounting, architectural, or engineering service.

B.  The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

C.  The handling or treatment of dead bodies and remains, including autopsies, organ donation or other procedures.

Authorized Agent

LD-0846  (Ed. 1/89)  Ptd. in U.S.A.

KNIGHT000047

POLICY NUMBER: HDO G24940214

ENDT. #16

## POLLUTION EXCLUSION – TIME ELEMENT EXCEPTION
### (Broad Form)

| Named Insured Knight Oil Tools, Inc. | | | Endorsement Number 16 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010   to   03/31/2011 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement replaces any pollution exclusion and amends all insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to "pollution", however caused.

This exclusion does not apply to "bodily injury" or "property damage" caused by "pollution" if the "pollution":

1. is both unexpected and unintended from the standpoint of the insured;
2. is at or from any:

a. premises, site or location which is owned by or occupied by, or rented or loaned to, any insured; or
b. premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor;

3. commenced abruptly and instantaneously and can be clearly identified as having commenced entirely at a specific time on a specific date during the policy period.

4. is known by any insured within 72 hours of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

5. is reported to us within 30 days of the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants"; and

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the "pollution", this policy shall not apply to:

1. loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the insured, and/or removal of, loss or damage to subsurface oil, gas or other substance;
2. any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to actual or alleged "pollution" or contamination at or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any insured or by others for the storage, disposal, processing or treatment of waste of any kind. Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of waste of any kind, whether permitted or not.

Reprinted with permission of Insurance Services Office

KNIGHT000048

The following definitions are added to the policy:

"Pollution" means the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, bacteria, virus and "waste".

"Waste" means any substance that:
a.  is left over, or no longer in use, or discarded;
b.  is to be reclaimed, reconditioned or recycled; or
c.  has been removed, treated, stored or disposed of as part of any environmental remediation effort.

Notwithstanding the foregoing, we shall have no duty to defend the insured against any claim or "suit" or proceeding arising out of or in any way related to "pollution".

<div style="text-align:center">Authorized Agent</div>

KNIGHT000049

POLICY NUMBER: HDO G24940214                                          ENDT. #17

## RADIOACTIVE MATTER EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Knight Oil Tools, Inc. | | | 17 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| HDO | G24940214 | 03/31/2010   to   03/31/2011 | |
| Issued By (Name of Insurance Company) | | | |
| ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

SECTION I. – Coverages, Coverage A. – Bodily Injury and Property Damage Liability, 2. – Exclusions, is amended to add:

Any liability for "bodily injury" or "property damage" arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

SECTION I. – Coverages, Coverage B. – Personal and Advertising Liability, 2. – Exclusions, is amended to add:

Arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

_____
Authorized Agent

Includes copyrighted material of Insurance Services Office, Inc. with its permission

KNIGHT000050

POLICY NUMBER: HDO G24940214                                          ENDT. #18

## SILICA, DUST AND PARTICULATE MATTER EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Knight Oil Tools, Inc. | 18 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| HDO | G24940214 | 03/31/2010   to   03/31/2011 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of, resulting from, or in any way related to, in whole or in part, the respiration, inspiration, inhalation or breathing in of dust or particulate matter. Dust or particulate matter may include, but is not limited to: dust, particulate matter, inspirable dust, respirable dust, smoke, mist, dirt, fibers, grit, soot, salt, acids, bases, metals, aerosols, crystals, minerals, sand, silicates, or silica.

The addition of this endorsement does not imply that other policy provisions, including but not limited to any pollution exclusion or asbestos exclusion, do not also exclude coverage for dust or particulate matter related injury, damage, expense, cost, loss, liability, or legal obligation.

......................................................

Authorized Representative

LD-15270 (0104)                    Reprinted in part, with permission of ISO Properties, Inc., 2001

KNIGHT000051

POLICY NUMBER:  HDO G24940214

ENDT.  #19

## NOTIFICATION OF PREMIUM ADJUSTMENT

| Named Insured<br>Knight Oil Tools, Inc. | | | Endorsement Number<br>19 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24940214 | Policy Period<br>03/31/2010   to   03/31/2011 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when the endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

CONTRACTUAL INDEMNITY COVERAGE PART OCCURRENCE CORRIDOR
CONTRACTUAL INDEMNITY COVERAGE PART SLIDING ATTACHMENT
CONTRACTUAL INDEMNITY COVERAGE PART DEDUCTIBLE REIMBURSEMENT
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESS AUTO COVERAGE PART
EXCESS COMMERCIAL AUTOMOBILE COVERAGE PART
TRUCKERS COVERAGE PART
EXCESS TRUCKERS COVERAGE PART
MOTOR CARRIER COVERAGE PART
GARAGE COVERAGE PART

For the states and lines of business in which regulatory approval has been granted for the NCCI Large Risk Alternative Rating Option, the ISO Large Risk Alternative Rating Option, or the independently filed ACE Large Risk Rating Plan, the premiums for this policy will be adjusted in accordance with the Notice of Election, signed by you.

_____
Authorized Agent

ALL-18057 (03/05)

KNIGHT000052

POLICY NUMBER: HDO G24940214                                           ENDT.  #20

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
| --- |
| BP America Production Company, ITS Co-Venturers, ITS and Their Respective Affiliates and ITS and Their Respective Directors, Officers and Employees. Dynmcdermott Petroleum Operations Company & The United States of America, 850 S. Clearview Parkway, New Orleans, LA   70123.<br><br>Any person or organization whom you have agreed to name as an additional insured in a written contract, provided such contract was executed prior to the date of loss. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Section II – Who Is An Insured  is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

A.  In the performance of your ongoing operations; or

B.  In connection with your premises owned by or rented to you.

KNIGHT000053

POLICY NUMBER:  HDO G24940214

ENDT.  #21
COMMERCIAL GENERAL LIABILITY
CG 02 24 10 93

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EARLIER NOTICE OF CANCELLATION
# PROVIDED BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Number of Days' Notice**   90

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

Copyright, Insurance Services Office, Inc., 1992

KNIGHT000054

POLICY NUMBER:  HDO G24940214

ENDT.  #22

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

KNIGHT000055

POLICY NUMBER:  HDO G24940214

ENDT.  #23

COMMERCIAL GENERAL LIABILITY
CG 22 43 07 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The following exclusion is added to Paragraph **2., Exclusions** of Section I – **Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability::**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

KNIGHT000056

POLICY NUMBER:  HDO G24940214

ENDT.  #24

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any claim or damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products/completed operations hazard."

CG 21 41 11 85          Copyright, Insurance Services Office, Inc., 1984

KNIGHT000057

POLICY NUMBER:  HDO G24940214

ENDT.  #25

COMMERCIAL GENERAL LIABILITY
CG 22 33 07 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – TESTING OR CONSULTING ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. An error, omission, defect or deficiency in:

   a. Any test performed; or

   b. An evaluation, a consultation or advice given, by or on behalf of any insured;

2. The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3. An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

Copyright, Insurance Services Office, Inc., 1997

KNIGHT000058

POLICY NUMBER:  HDO G24940214                                          ENDT.  #26

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2. Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

KNIGHT000059

POLICY NUMBER: HDO G24940214

ENDT. #27

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

KNIGHT000060

POLICY NUMBER: HDO G24940214

ENDT. #28

COMMERCIAL GENERAL LIABILITY
CG 21 80 01 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CERTIFIED ACTS OF TERRORISM AGGREGATE LIMIT; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Certified Acts Of Terrorism Aggregate Limit: | $ 1,000,000 |
|---|---|

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. Coverage provided by this insurance for "bodily injury", "property damage" or "personal and advertising injury", arising out of a "certified act of terrorism", is subject to the Certified Acts Of Terrorism Aggregate Limit as described in Paragraph B. of this endorsement.

B. The following are added to Section III – Limits Of Insurance:

Subject to Paragraphs 2. and 3. of Section III – Limits Of Insurance, as applicable, the Certified Acts Of Terrorism Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all:

1. "Bodily injury" or "property damage" under Coverage A;

2. "Personal and advertising injury" under Coverage B; and

3. Medical payments under Coverage C;

arising out of all "certified acts of terrorism".

Paragraph 4., the Personal and Advertising Injury Limit, Paragraph 5., the Each Occurrence Limit, Paragraph 6., the Damage To Premises Rented To You Limit, and Paragraph 7., the Medical Expense Limit, of Section III – Limits Of Insurance continue to apply to damages arising out of a "certified act of terrorism". Those limits will only be available if, and to the extent that, limits are available under the Certified Acts Of Terrorism Aggregate Limit.

C. The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2007

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© ISO Properties, Inc., 2007

KNIGHT000062
CG 21 80 01 08

POLICY NUMBER: HDO G24940214

<div align="right">ENDT.  #29
COMMERCIAL GENERAL LIABILITY
CG 24 04 05 09</div>

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY
# AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

Name Of Person Or Organization:
Any person or organization against whom you have agreed to waive your right of
recovery in a written contract, provided such contract was executed prior to the
date of loss.
Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph 8. Transfer Of
Rights Of Recovery Against Others To Us of
Section IV – Conditions:

We waive any right of recovery we may have against
the person or organization shown in the Schedule
above because of payments we make for injury or
damage arising out of your ongoing operations or
"your work" done under a contract with  that  person
or organization and included in the "products-
completed operations hazard". This waiver applies
only to the person or organization shown in the
Schedule above.

© Insurance Services Office, Inc., 2008
KNIGHT000065

POLICY NUMBER: HDO G24940214

ENDT. #30

IL 09 85 01 08

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

## SCHEDULE

Terrorism Premium (Certified Acts) $   1,886

This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):

Additional information, if any, concerning the terrorism premium:

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© ISO Properties, Inc., 2007

KNIGHT000064

POLICY NUMBER: HDO G24940214

ENDT. #31

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured Knight Oil Tools, Inc. | | | Endorsement Number 31 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010   to   03/31/2011 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of policy remain unchanged.

----------------------------------------------------------------
                                                  Authorized Agent

KNIGHT000065

POLICY NUMBER: HDO G24940214

ENDT. #32

IL 00 21 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001

KNIGHT000067

IL 00 21 07 02        □

POLICY NUMBER:  HDO G24940214

<div align="right">ENDT.  #33
COMMERCIAL GENERAL LIABILITY</div>

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ARKANSAS CHANGES – MULTI-YEAR POLICIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the Common Policy Conditions:

**G. MULTI-YEAR POLICIES**

We may issue this policy for a term in excess of twelve months with the premium adjusted on an annual basis in accordance with our rates and rules.

Copyright, Insurance Services Office, Inc., 1990

POLICY NUMBER: HDO G24940214

ENDT. #34

IL 02 31 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 5. of the **Cancellation** Common Policy Condition is replaced by the following:

5.a. If this policy is cancelled, we will send the first Named Insured any premium refund due.

b. We will refund the pro rata unearned premium if the policy is:

(1) Cancelled by us or at our request;

(2) Cancelled but rewritten with us or in our company group;

(3) Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

(4) Cancelled after the first year of a prepaid policy that was written for a term of more than one year.

c. If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in b.(2), (3) or (4) above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

d. The cancellation will be effective even if we have not made or offered a refund.

e. If the first Named Insured cancels the policy, we will retain no less than $100 of the premium, subject to the following:

(1) We will retain no less than $250 of the premium for the Equipment Breakdown Coverage Part.

(2) We will retain the premium developed for any annual policy period for the General Liability Classifications, if any, shown in the Declarations.

(3) If the Commercial Auto Coverage Part covers only snowmobiles or golfmobiles, we will retain $100 or the premium shown in the Declarations, whichever is greater.

(4) If the Commercial Auto Coverage Part covers an "auto" with a mounted amusement device, we will retain the premium shown in the Declarations for the amusement device and not less than $100 for the auto to which it is attached.

© ISO Properties, Inc., 2007

B. The following is added to the Cancellation Common Policy Condition:

7. Cancellation Of Policies In Effect More Than 60 Days

a. If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

(3) The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

(4) Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

(5) Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy, or

(6) A material violation of a material provision of the policy.

b. Subject to Paragraph 7.c., if we cancel for:

(1) Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy at least 10 days before the effective date of cancellation.

(2) Any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy at least 20 days before the effective date of cancellation.

c. The following applies to the Farm Umbrella Liability Policy, Commercial Liability Umbrella Coverage Part and the Commercial Automobile Coverage Part:

(1) If we cancel for nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 10 days before the effective date of cancellation;

(2) If we cancel for any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 20 days before the effective date of cancellation.

C. Paragraph g. of the Mortgageholders Condition, if any, is replaced by the following:

g. If we elect not to renew this policy, we will give written notice to the mortgageholder:

(1) As soon as practicable if nonrenewal is due to the first Named Insured's failure to pay any premium required for renewal; or

(2) At least 60 days before the expiration date of this policy if we nonrenew for any other reason.

D. The following Condition is added and supersedes any other provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail to the first Named Insured shown in the Declarations, and to any lienholder or loss payee named in the policy, written notice of nonrenewal at least 60 days before:

a. Its expiration date; or

b. Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

However, we are not required to send this notice if nonrenewal is due to the first Named Insured's failure to pay any premium required for renewal.

The provisions of this Paragraph 1. do not apply to any mortgageholder.

2. We will mail our notice to the first Named Insured's mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2007

IL 02 31 09 08
KNIGHT000070

POLICY NUMBER: HDO G24940214

ENDT. #35

IL 02 28 09 07

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COLORADO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the **Cancellation** Common Policy Condition is replaced by the following:

2. If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

B. The following is added to the **Cancellation** Common Policy Condition:

7. **Cancellation Of Policies In Effect For 60 Days Or More**

a. If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy by mailing through first-class mail to the first Named Insured written notice of cancellation:

(1) including the actual reason, at least 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

(2) At least 45 days before the effective date of cancellation if we cancel for any other reason.

We may only cancel this policy based on one or more of the following reasons:

(1) Nonpayment of premium;

(2) A false statement knowingly made by the insured on the application for insurance; or

(3) A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

C. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail through first-class mail to the first Named Insured shown in the Declarations written notice of the nonrenewal at least 45 days before the expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

KNIGHT000071

D. The following condition is added:

**INCREASE IN PREMIUM OR DECREASE IN COVERAGE**

We will not increase the premium unilaterally or decrease the coverage benefits on renewal of this policy unless we mail through first-class mail written notice of our intention, including the actual reason, to the first Named Insured's last mailing address known to us, at least 45 days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

1. Nonpayment of premium;

2. A false statement knowingly made by the insured on the application for insurance; or

3. A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

KNIGHT000072
IL 02 28 09 07

POLICY NUMBER:  HDO G24940214                                    ENDT.  #36

COMMERCIAL GENERAL LIABILITY
CG 01 18 12 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOUISIANA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    ELECTRONIC DATA LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCT WITHDRAWAL COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The **Legal Action Against Us** Condition (Section IV –
Conditions) is replaced by the following.

**Legal Action Against Us**

A person or organization may bring a "suit" against us
including, but not limited to, a "suit" to recover on an
agreed settlement or on a final judgment against an
insured; but we will not be liable for damages that are
not payable under the terms of this Coverage Part or
that are in excess of the applicable limit of insurance.
An agreed settlement means a settlement and release
of liability signed by us, the insured and the claimant
or the claimant's legal representative.

POLICY NUMBER:  HDO G24946214

ENDT.  #37

COMMERCIAL GENERAL LIABILITY
CG 01 25 03 03

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOUISIANA CHANGES – INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph 1.a. of Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability is replaced with the following:

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C. However, using up the Medical Expense Limit does not end our right and duty to defend.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

B. Paragraph 1.a. of Section I – Coverages, Coverage B – Personal And Advertising Injury Liability is replaced with the following:

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. However, using up the Medical Expense Limit does not end our right and duty to defend.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

© ISO Properties, Inc., 2002

KNIGHT000074

POLICY NUMBER:  HDO G24940214

ENDT.  #38

COMMERCIAL GENERAL LIABILITY
CG 26 84 12 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOUISIANA CHANGES — TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The Transfer Of Rights Of Recovery Against Others To Us Condition Section IV — Conditions is replaced by the following:

**TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

In the event of any payment under this Coverage Part, we will be entitled to the insured's rights of recovery against any person or organization, and the insured will do whatever is necessary to secure such rights. Our right to recover is subordinate to the insured's right to be fully compensated.

© ISO Properties, Inc., 2003

KNIGHT000075

POLICY NUMBER:  HDO G24940214                                         ENDT.  #39

IL 02 77 09 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOUISIANA CHANGES – CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STANDARD PROPERTY POLICY

A. Paragraph 2. of the **Cancellation** Common Policy Condition is replaced by the following, which applies unless Paragraph B. of this endorsement applies.

   **2. Notice Of Cancellation**

     a. Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals

      If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

      (1) Cancellation for nonpayment of premium

        We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

      (2) Cancellation for any other reason

        We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

     b. Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More

      If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

      (1) Nonpayment of premium;

      (2) Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

      (3) Activities or omissions by you which change or increase any hazard insured against;

      (4) Change in the risk which increases the risk of loss after we issued or renewed this policy including an increase in exposure due to regulation, legislation, or court decision;

      (5) Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

KNIGHT000076

(6) The insured's violation or breach of any policy terms or conditions, or

(7) Any other reasons that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under Paragraph A.2.b., to the first Named Insured at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs A.2.b.(2) through (7) above.

B. Paragraph 2. of the **Cancellation** Common Policy Condition is replaced by the following, which applies with respect to premium payments due on new and renewal policies, including installment payments.

2. Notice Of Cancellation

a. If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **B.2.b.** and **B.2.c.**

b. We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

c. The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

C. Paragraph 5. of the **Cancellation** Common Policy Condition is replaced by the following:

5. Premium Refund

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs C.5.a., C.5.b., C.5.c., C.5.d., C.5.e. and C.5.f. The cancellation will be effective even if we have not made or offered a refund.

a. If we cancel, the refund will be pro rata.

b. If the first Named Insured cancels, the refund may be less than pro rata, and will be returned within 30 days after the effective date of cancellation.

c. We will send the refund to the first Named Insured unless Paragraph C.5.d. or C.5.e. applies.

d. If we cancel based on Paragraph B.2. of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in B.2.c. If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

e. With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

f. When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

D. The **Premiums** Common Policy Condition is replaced by the following:

PREMIUMS

1. The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

2. We will pay return premiums, if any, to the first Named Insured, unless another person or entity is entitled to be the payee in accordance with Paragraph C. of this endorsement.

E. Paragraph f. of the **Mortgageholders** Condition in the Commercial Property Coverage Part, Standard Property Policy, and the Capital Assets Program (Output Policy) Coverage Part and Paragraph 4.f. of the **Mortgageholders** Condition in the Farm Coverage Part are replaced by the following:

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

(1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

(2) 60 days before the effective date of cancellation, if we cancel for any other reason.

© ISO Properties, Inc., 2007

KNIGHT000077
IL 02 77 09 08

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

(1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation, if we cancel for any other reason.

F. The following is added and supersedes any other provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

2. We need not mail or deliver this notice if:

a. We or another company within our insurance group have offered to issue a renewal policy; or

b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

3. Any notice of nonrenewal will be mailed or delivered to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Such notice to the insured shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

© ISO Properties, Inc., 2007

POLICY NUMBER: HDO G24940214

ENDT. #40

IL 01 65 09 08

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NORTH DAKOTA CHANGES – EXAMINATION OF YOUR BOOKS AND RECORDS

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The **Examination Of Your Books And Records** Common Policy Condition is replaced by the following:

**EXAMINATION OF YOUR BOOKS AND RECORDS**

1. Except as provided in 2. below, we may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

2. Any audit conducted to determine the premium due or to be refunded must be completed within 180 days after:

   a. The expiration date of the policy; or

   b. The anniversary date, if this is a continuous policy or a policy written for a term longer than one year;

   unless you agree in writing to extend the audit period.

KNIGHT000079

POLICY NUMBER: HDO G24940214

ENDT. #41

IL 02 34 09 08

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NORTH DAKOTA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraphs 2. and 3. of the Cancellation Common Policy Condition are replaced by Paragraphs 2. and 3. below, except to the extent that Item B. of this endorsement applies.

2. Policies In Effect:

   a. For Less Than 90 Days

   If this policy has been in effect for less than 90 days, we may cancel the policy for any reason by mailing to the first Named Insured, and agent, if any, written notice of cancellation at least:

   (1) 10 days before the effective date of cancellation; or

   (2) Five days before the effective date of cancellation for any condition stated in Paragraph B. of this endorsement.

   b. For 90 Days Or More Or Policies With Terms Longer Than One Year Or Continuous Policies

   If this policy has been in effect for 90 days or more, is a renewal of a policy we issued, is a policy issued for a term longer than one year or is a continuous policy, we may cancel the policy only for one or more of the following reasons:

   (1) Nonpayment of premiums;

(2) Misrepresentation or fraud made by the "insured" or with the "insured's" knowledge in obtaining the policy or in pursuing a claim under the policy;

(3) The "insured's" actions that have substantially increased or substantially changed the risk insured;

(4) The "insured's" refusal to eliminate known conditions that increase the potential for loss, after our notification that the condition must be removed;

(5) Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

(6) Loss of reinsurance which provided us with coverage for a significant amount of the underlying risk insured;

(7) A determination by the insurance commissioner that the continuation of the policy could place us in violation of North Dakota insurance laws;

IL 02 34 09 08

© ISO Properties, Inc., 2007

KNIGHT000080

Page 1 of 3

(8) Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. Cancellation for this reason does not apply to persons who are retired at 62 years of age or older or to any person who is disabled according to social security standards;

(9) A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to Covered Property or the occupancy thereof which substantially increases any hazard insured against; or

(10) Certain conditions exist, as stated in Paragraph B. of this endorsement.

We will mail written notice of cancellation to the first Named Insured, and agent, if any, at least:

(a) Five days before the effective date of cancellation for any condition stated in Paragraph B. of this endorsement;

(b) 10 days before the effective date of cancellation for nonpayment of premium; or

(c) 30 days before the effective date of cancellation for any reason stated in Paragraphs **2.b.(2)** through **(9)** above.

However, for policies with terms longer than one year or continuous policies, notice of cancellation will be mailed at least 30 days prior to any anniversary date for any reason stated in Paragraphs **2.b.(1)** through **(9)** above.

If we cancel for a reason listed in Paragraphs **2.b.(1)** through **(9)** above, the notice of cancellation will state our reasons for cancellation.

3. We will mail our notice, by first-class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

B. We may also cancel the policy if one or more of the following conditions exist:

1. Buildings with at least 65% of the rental units in the building unoccupied.

2. Buildings that have been damaged by a covered cause of loss and the "insured" has stated or such time has elapsed as clearly indicates that the damage will not be repaired.

3. Buildings to which, following a fire, permanent repairs have not commenced within 60 days following satisfactory adjustment of loss.

4. Buildings that have been unoccupied 60 or more consecutive days, except buildings that have a seasonal occupancy, and buildings actually in the course of construction or repair and reconstruction which are properly secured against unauthorized entry.

5. Buildings that are in danger of collapse because of serious structural conditions or those buildings subject to extremely hazardous conditions not contemplated in filed rating plans such as those buildings that are in a state of disrepair as to be dilapidated.

6. Buildings on which, because of their physical condition, there is an outstanding order to vacate or an outstanding demolition order, or which have been declared unsafe in accordance with applicable law.

7. Buildings from which fixed and salvageable items have been or are being removed and the "insured" can give no reasonable explanation for the removal.

8. Buildings on which there is reasonable knowledge and belief that the property is endangered and is not reasonably protected from possible arson for the purpose of defrauding an insurer.

9. Buildings with any of the following conditions:

a. Failure to furnish heat, water, sewer service, or public lighting for 30 consecutive days or more.

b. Failure to correct conditions dangerous to life, health, or safety.

c. Failure to maintain the building in accordance with applicable law.

d. Failure to pay property taxes for more than one year.

10. Buildings that have characteristics of ownership condition, occupancy, or maintenance, which are violative of law or public policy.

C. The following is added and supersedes any provision to the contrary:

NONRENEWAL

1. If we elect not to renew this policy, we will mail to the last known address of the first Named Insured shown in the Declarations, and agent, if any, a notice of intention not to renew at least:

a. 60 days prior to the expiration date of the policy, except as provided in Paragraph b.; or

b. 90 days prior to the expiration date of the policy when the policy provides professional liability coverage for legal and medical services.

The notice of nonrenewal will state our reason for nonrenewal.

© ISO Properties, Inc., 2007
KNIGHT000081
IL 02 34 09 08

2. We will mail our notice, by first-class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

3. We need not mail or deliver this notice if you have:

   a. Insured elsewhere;

   b. Accepted replacement coverage; or

   c. Requested or agreed to nonrenewal.

© ISO Properties, Inc., 2003

KNIGHT000082

POLICY NUMBER: HDO G24940214

ENDT.  #42

IL 02 98 09 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW MEXICO CHANGES — CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

2. **Permissible Reasons And Notice Period**

a. If this policy is in effect less than 60 days, we may cancel for any reason by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

b. If this policy is in effect 60 days or more, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium.

(2) There has been a substantial change in the risk assumed by us since the policy was issued.

(3) The policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us.

(4) Willful and negligent acts or omission by the insured have substantially increased the hazards insured against.

(5) You presented a claim based on fraud or material misrepresentation.

c. If we cancel subject to 2.b. above, we will mail or deliver to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation, for the reason set forth in 2.b.(1).

(2) 30 days before the effective date of cancellation, for the reason set forth in 2.b.(2).

(3) 15 days before the effective date of cancellation, for a reason set forth in 2.b.(3), 2.b.(4) or 2.b.(5).

The written notice will state the reason for cancellation, except that such statement may be omitted from a notice mailed to an additional insured or lienholder under this policy.

B. The following Condition is added:

NONRENEWAL

If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of the nonrenewal not less than 30 days before the expiration date of the policy.

© ISO Properties, Inc., 2007

KNIGHT000083

POLICY NUMBER: HDO G24940214

ENDT.  #43

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KANSAS AND OKLAHOMA CHANGES —
# TRANSFER OF RIGHTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Condition 8. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (Section IV), does not apply to COVERAGE C. MEDICAL PAYMENTS.

KNIGHT000084

POLICY NUMBER:  HDO G24940214                                    ENDT.  #44

IL 02 36 09 07

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OKLAHOMA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the **Cancellation** Common Policy Condition is replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

After coverage has been in effect for more than 45 business days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

(3) Discovery of willful or reckless acts or omissions by you that increase any hazard insured against;

(4) The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

(5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

(6) A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the insurance laws of this state;

(7) Your conviction of a crime having as one of its necessary elements an act increasing any hazard insured against; or

(8) Loss of or substantial changes in applicable reinsurance.

B. The following are added to the Common Policy Conditions and supersede any provisions to the contrary:

KNIGHT000085

1. **Nonrenewal**

   a. If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 45 days before:

      (1) The expiration date of this policy; or

      (2) An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

   b. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

   c. If notice is mailed:

      (1) It will be considered to have been given to the first Named Insured on the day it is mailed.

      (2) Proof of mailing will be sufficient proof of notice.

   d. If notice of nonrenewal is **not** mailed or delivered at least 45 days before the expiration date or an anniversary date of this policy, coverage will remain in effect until 45 days after notice is given. Earned premium for such extended period of coverage will be calculated pro rata based on the rates applicable to the expiring policy.

   e. We will **not** provide notice of nonrenewal if:

      (1) We, or another company within the same insurance group, have offered to issue a renewal policy; or

      (2) You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

   f. If we have provided the required notice of nonrenewal as described in **B.1.a.** above, and thereafter extend the policy for a period of 90 days or less, we will **not** provide an additional nonrenewal notice with respect to the period of extension.

2. **Premium Or Coverage Changes At Renewal**

   a. If we elect to renew this policy, we will give written notice of any premium increase, change in deductible, or reduction in limits or coverage, to the first Named Insured, at the last mailing address known to us.

   b. Any such notice will be mailed or delivered to the first Named Insured at least 45 days before:

      (1) The expiration date of this policy; or

      (2) An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

   c. If notice is mailed:

      (1) It will be considered to have been given to the first Named Insured on the day it is mailed.

      (2) Proof of mailing will be sufficient proof of notice.

   d. If the first Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

   e. If notice is **not** mailed or delivered at least 45 days before the expiration date or anniversary date of this policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

      (1) 45 days after notice is given; or

      (2) The effective date of replacement coverage obtained by the insured;

      whichever occurs first.

      If the first Named Insured then elects **not** to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

   f. We will **not** provide notice of the following:

      (1) Changes in a rate or plan filed pursuant to the Property and Casualty Competitive Loss Cost Rating Act applicable to an entire class of business.

      (2) Changes which are based upon the altered nature or extent of the risk insured; or

      (3) Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

© ISO Properties, Inc., 2006

KNIGHT000086
IL 92 36 09 07        □

POLICY NUMBER: HDO G24940214

ENDT. #45

COMMERCIAL GENERAL LIABILITY
CG 01 03 06 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

© ISO Properties, Inc., 2005

POLICY NUMBER:  HDO G24940214

ENDT.  #46

COMMERCIAL GENERAL LIABILITY
CG 01 86 12 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# UTAH CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. Any Condition titled:

Duties In the Event of An Electronic Data Incident
Duties In the Event of Occurrence, Offense, Claim or Suit
Duties In the Event of Occurrence, Claim or Suit
Duties In the Event of Injury, Claim or Suit
Duties In the Event of A Pollution Incident, Claim or Suit
Duties In the Event of A Claim Or Suit Or A Defect Or Product Withdrawal
Insured's Duties In the Event of a Loss
Duties In the Event of An Underground Storage Tank Incident

requiring notice to us is amended to include:

"Notice to our authorized representative is notice to us".

B. The Legal Action Against Us Condition does not apply.

© ISO Properties, Inc., 2003

KNIGHT000088
Page 1 of 1

POLICY NUMBER: HDO G24940214

ENDT. #47

IL 02 66 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UTAH CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

A. The following is added to the **Cancellation** Common Policy Condition:

7. If this policy has been in effect for more than 60 days or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

a. Nonpayment of premium;

b. Material misrepresentation;

c. Substantial change in the risk assumed unless we should reasonably have foreseen the change or contemplated the risk when entering the contract; or

d. Substantial breaches of contractual duties, conditions or warranties.

If we cancel for nonpayment of premium, notice of cancellation must state the reason for cancellation.

8. With respect to the Commercial Automobile Coverage Part, the following applies in addition to the provisions of Paragraph 7. above:

We may cancel this policy if your driver's license, or the driver's license of a person who customarily drives a "covered auto", is suspended or revoked.

9. Notice of cancellation must be delivered or mailed by first-class mail.

B. The following is added and supersedes any provisions to the contrary:

NONRENEWAL

1. If we elect to not renew this policy, we will mail, by first-class mail, written notice of nonrenewal to the first Named Insured, at the last mailing address known to us, at least 30 days before the expiration or anniversary date of this policy.

2. We need not mail this notice if:

a. You have accepted replacement coverage;

b. You have requested or agreed to nonrenewal; or

c. This policy is expressly designated as nonrenewable.

3. If notice is mailed, proof of mailing is sufficient proof of notice.

IL 02 66 09 08

© ISO Properties, Inc., 2007

KNIGHT000089

Page 1 of 1

POLICY NUMBER:  HDO G24940214

ENDT.  #48

COMMERCIAL GENERAL LIABILITY
CG 01 60 07 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WYOMING CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  The following is added to Paragraph **1.a.(2)** of Section I – **Coverage A – Bodily Injury And Property Damage Liability** and Section I – **Coverage B – Personal And Advertising Injury Liability:**

The tender of the limits of insurance before judgment or settlement does not relieve us of our duty to defend.

B.  The following is added as the final full paragraph of Paragraph **1., Insuring Agreement** of Section I – **Coverage A – Bodily Injury And Property Damage Liability** and Section I – **Coverage B – Personal And Advertising Injury Liability:**

Damages include prejudgment interest awarded against the insured.

C.  Paragraph **1.f.** dealing with prejudgment interest in Section I – **Supplementary Payments – Coverages A And B** is deleted.

Copyright, Insurance Services Office, Inc., 1997

KNIGHT000090

POLICY NUMBER:  HDO G24940214

ENDT.  #49

IL 01 14 09 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WYOMING CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

A. The provisions of Paragraph B. are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Commercial General Liability, Commercial Liability Umbrella, Employment-Related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Professional Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts and the Farm Umbrella Liability Policy;

2. Paragraph A. in Section II – Liability Coverage under the Business Auto, Garage, Motor Carrier and Truckers Coverage Forms;

3. Section A – Coverage under the Legal Liability Coverage Form; and

4. Coverage C – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph B. also applies to any other provision in the policy that sets forth a duty to defend.

B. If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

© ISO Properties, Inc., 2007

KNIGHT000091

POLICY NUMBER:  HDO G24940214

ENDT.  #50

IL 02 52 09 07

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WYOMING CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

2. Cancellation Of Policies In Effect

a. Less Than 60 Days

If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. 60 Days Or More

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium.

(2) Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy.

(3) Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy.

(4) Substantial breaches of contractual duties, conditions or warranties.

If we cancel, we will mail or deliver to the first Named Insured and the agent, if any, written notice of cancellation, stating the reason for cancellation, at least:

(a) 10 days before the effective date of cancellation if cancellation is for the reason stated in b.(1) above; or

(b) 45 days before the effective date of cancellation if cancellation is for the reasons stated in b.(3) or (4) above.

B. The following is added to the Cancellation Common Policy Condition:

7. If we cancel this policy in accordance with Paragraph 2. of the Cancellation Common Policy Condition, any unearned premium will be refunded to the first Named Insured prior to the effective date of cancellation.

IL 02 52 09 07

© ISO Properties, Inc., 2006

C. The following is added as an additional Condition and supersedes any other provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and the agent, if any, at least 45 days before:

   a. The expiration date; or

   b. The anniversary date if this is a continuous policy.

2. Notice of nonrenewal will state the reason for nonrenewal.

3. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

KNIGHT000093
IL 02 52 09 07

## SIGNATURES

| Named Insured | | Endorsement Number |
|---|---|---|
| Knight Oil Tools, Inc. | | 51 |
| Policy Symbol: HDO | Policy Number: G24940214 | Policy Period 03/31/2010 to 03/31/2011 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA
436 Walnut Street, P. O. Box 1000, Philadelphia, Pennsylvania 19106-3703

BANKERS STANDARD FIRE AND MARINE COMPANY
436 Walnut Street, P. O. Box 1000, Philadelphia, Pennsylvania 19106-3703

BANKERS STANDARD INSURANCE COMPANY
436 Walnut Street, P. O. Box 1000, Philadelphia, Pennsylvania 19106-3703

ACE INDEMNITY INSURANCE COMPANY
436 Walnut Street, P. O. Box 1000, Philadelphia, Pennsylvania 19106-3703

ACE AMERICAN INSURANCE COMPANY
436 Walnut Street, P. O. Box 1000, Philadelphia, Pennsylvania 19106-3703

ACE PROPERTY AND CASUALTY INSURANCE COMPANY
436 Walnut Street, P. O. Box 1000, Philadelphia, Pennsylvania 19106-3703

INSURANCE COMPANY OF NORTH AMERICA
436 Walnut Street, P. O. Box 1000, Philadelphia, Pennsylvania 19106-3703

PACIFIC EMPLOYERS INSURANCE COMPANY
436 Walnut Street, P. O. Box 1000, Philadelphia, Pennsylvania 19106-3703

ACE FIRE UNDERWRITERS INSURANCE COMPANY
436 Walnut Street, P. O. Box 1000, Philadelphia, Pennsylvania 19106-3703

GEORGE D. MULLIGAN, Secretary

JOHN J. LUPICA, President

WESTCHESTER FIRE INSURANCE COMPANY
1325 Avenue of the Americas, 19th Floor, New York, NY 10019

GEORGE D. MULLIGAN, Secretary

DENNIS A. CROSBY, JR., President

Authorized Agent



**ace usa**

Notice to Policyholders
Broadening, Restrictions and
Clarifications of Coverage

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the significant broadenings, restrictions and clarifications of coverage that were made in each multistate endorsement contained in this filing. This notice does not reference every editorial change made to these endorsements.

Please read your policy, and the endorsements attached to your policy, carefully.

## BROADENINGS OF COVERAGE

CG 00 55 -- Amendment Of Other Insurance Condition (Occurrence Version)
CG 00 56 -- Amendment Of Other Insurance Condition (Claims-Made Version)

These endorsements amend the OTHER INSURANCE Condition in the CGL policy to make an insured's own CGL coverage excess insurance over the insurance provided by any other liability policy when that same insured is covered by that other policy as an additional insured. In those limited situations in which these endorsements apply, there will be a slight broadening of coverage under the policy of the named insured who is providing additional insured status, since such policy will now provide primary insurance coverage to an additional insured, even if that additional insured has other primary insurance. (See also Restrictions Of Coverage)

CG 21 55 -- Total Pollution Exclusion With A Hostile Fire Exception

This new endorsement excludes all pollution related liability, except such liability arising out of heat, smoke or fumes from a hostile fire. This hostile fire exception does not apply to any premises, site or location used for the handling, storage, disposal, processing or treatment of waste, or to any contractor's site where the contractor's operations are to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess, the effects of pollutants. To the extent that this endorsement is used instead of Total Pollution Exclusion Endorsement CG 21 49, a broadening of coverage will result. If endorsement CG 21 49 had not been previously attached, use of Total Pollution Exclusion With A Hostile Fire Exception Endorsement CG 21 55 will result in a reduction in coverage.

## RESTRICTIONS OF COVERAGE

CG 00 55 -- Amendment Of Other Insurance Condition (Occurrence Version)
CG 00 56 -- Amendment Of Other Insurance Condition (Claims-Made Version)

These endorsements amend the OTHER INSURANCE Condition in the CGL policy to make an insured's own CGL coverage excess insurance over the insurance provided by any other liability policy when that same insured is covered by that other policy as an additional insured. In those limited situations in which these endorsements apply, there will be a slight reduction in coverage under the policy of the named insured who is being added as an additional insured on another policy, since that named insured's policy will now provide excess rather than primary insurance. On the other hand, however, since primary coverage in those situations will be provided by another policy, the insured's limits of insurance will be less likely to be affected by losses covered by the other policy under its additional insured endorsement. Coverage provided to an insured that is not named as an additional insured on another policy will continue to apply as primary insurance. (See also Broadenings of Coverage)

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1996



KNIGHT000095

**CG 21 37 -- Exclusion - Employees As Insureds**

Currently, endorsement CG 21 37 excludes employees as insureds under the CGL policy. This endorsement has been revised to amend the "Aircraft, Auto or Watercraft" exclusion to indicate that liability arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto, or watercraft operated by employees of the insured is excluded. Additionally, the exception to this exclusion that deals with the parking of autos on, or on ways next to, premises the named insured owns or rents has been amended to add reference to autos not owned by or rented or loaned to employees of the insured. For policies to which this endorsement is currently attached and will continue to be attached, there will be a reduction in coverage to the extent that employees operate autos, aircraft or watercraft that are not owned by, or rented or loaned to any insured.

## CLARIFICATIONS OF COVERAGE AND OTHER EDITORIAL REVISIONS

**CG 20 33 -- Additional Insured - Owners, Lessees Or Contractors - Automatic Status When Required In Construction Agreement With You**

New endorsement CG 20 33 provides a mechanism by which certain persons or organizations are added automatically as additional insureds to policies of contractors or subcontractors as required of the named insured under a written contract or agreement, without being required to name such person or organization in the endorsement. Coverage under this endorsement applies to liability arising out of the named insured's ongoing operations performed for the additional insured party and does not require that there be a hold harmless agreement between the parties. Liability arising out of professional architectural, engineering or surveying services is excluded.

**CG 20 34 -- Additional Insured - Lessor Of Leased Equipment - Automatic Status When Required In Lease Agreement With You**

New endorsement CG 20 34 provides a mechanism for lessees to provide additional insured status to lessors of leased equipment, when required in a written lease agreement, without being required to specifically name such person or organization in the endorsement. Coverage under this endorsement applies to liability arising out of the named insured's maintenance, operation or use of leased equipment. Liability arising out of an occurrence that takes place after the equipment lease expires and liability arising out the sole negligence of the lessor are excluded.

**CG 21 56 -- Exclusion - Funeral Services**

This new endorsement (which replaces existing endorsement CG 21 16 -- Exclusion - Designated Professional Services) clarifies that liability arising out of errors or omissions arising out of the handling, embalming, disposal, burial, cremation or disinterment of dead bodies is excluded..

**CG 21 57 -- Exclusion - Counseling Services**

This new endorsement (which replaces existing endorsement CG 21 16 -- Exclusion - Designated Professional Services) clarifies that liability arising out of advisory services or counseling with respect to such things as mental health, crisis prevention, social services or drug and alcohol rehabilitation or similar subjects is excluded.

**CG 21 58 -- Exclusion - Professional Veterinarian Services**

This new endorsement (which replaces existing endorsement CG 21 16 -- Exclusion - Designated Professional Services) clarifies that liability arising out of the following services is excluded:

* Diagnostic testing, surgical or dental procedures used for the prevention, detection, diagnosis or treatment of any sickness, disease, condition or injury in animals, including the furnishing or prescription of drugs or medical, dental or surgical supplies;

* The rendering or failure to render any advice or instruction on health maintenance; and

* Errors or omissions in the handling or treatment of dead animals.

CG 21 59 -- Exclusion - Diagnostic Testing Laboratories

This new endorsement (which replaces existing endorsement CG 21 16 -- Exclusion - Designated Professional Services) clarifies that liability arising out of the following services is excluded:

* Medical or diagnostic testing, techniques or procedures used for the detection, diagnosis and treatment of any sickness, disease, condition or injury or the evaluation of a patient's response to treatment; or

* The reporting of or reliance upon the results of such medical or diagnostic testing, techniques or procedures.

CG 22 33 -- Exclusion - Testing or Consulting Errors and Omissions

This revised endorsement adds new paragraph 3., which excludes liability arising out of an error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

CG 22 74 -- Amendment Of Contractual Liability Exclusion For Personal Injury Limited To False Arrest, Detention Or Imprisonment For Designated Contracts Or Agreements

In order to clarify that:

* The payment of defense expenses, on behalf of the insured, under personal injury liability coverage, when the insured has agreed to a defense obligation in the designated contract or agreement; and/or

* The providing of a defense to an indemnitee under certain circumstances with associated defense expenses being paid as Supplementary Payments

applies to personal injury arising only out of the offenses of false arrest, detention or imprisonment, endorsement CG 22 74 has been amended to list the applicable offenses in the exception to the exclusion, rather than in a revised definition of "personal injury."

CG 20 09 -- Additional Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization (For Use When Contractual Liability Coverage Is Not Provided To You In This Policy)

CG 20 10 -- Additional Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization

The titles of these endorsements have been revised to more accurately describe the intended use of these endorsements.

CG 24 10 -- Excess Provision - Vendors

This endorsement has been revised to delete the reference to the Commercial General Liability Coverage Part, since new endorsements CG 00 55 and CG 00 56 (also contained in this filing) amend the Other Insurance Condition of the CGL policy in basically the same manner that endorsement CG 24 10 does. Endorsement CG 24 10 will now apply to the Products/Completed Operations Liability Coverage Part only.

CG 25 03 -- Designated Construction Project(s) General Aggregate Limit

This endorsement has been revised to specifically set forth which Aggregate Limit will apply with respect to a given occurrence or accident. The determining factor will be whether or not the specific loss can be attributed to a specific construction project. In addition, the language of the revised endorsement now explains that a "separate aggregate limit for a separate project" does not apply when a loss cannot clearly be attributable to a specific construction project.

The major changes to this endorsement are outlined below:

* The title of the endorsement has been changed to reflect the basic change being made in this endorsement from a "blanket project" basis to a "designated construction project" basis.

* New paragraph A. indicates that each designated construction project is subject to its own Designated Construction Project General Aggregate Limit in lieu of the General Aggregate Limit shown in the

KNIGHT000097

Declarations of the policy. The Designated Construction Project General Aggregate Limit is equal to the amount of the General Aggregate Limit shown in the Declarations of the policy. However, each such "Designated Construction Project General Aggregate Limit" will be reduced only when damages resulting from losses under Coverages A and C can be attributed only to the ongoing operations of that specific designated construction project.

* New paragraph B. indicates that payments made under Coverages A and C which cannot be attributed only to ongoing operations at a designated construction project will be subject to the General Aggregate Limit in the policy Declarations.

* New paragraph C. states that the Designated Construction Project General Aggregate Limit does not apply to bodily injury or property damage included in the products/completed operations hazard.

* New paragraph D. clarifies that if any construction project has been abandoned, delayed or changed, it is still deemed to be the same construction project.

* New paragraph E. states that any provisions of LIMITS OF INSURANCE (Section III) not modified by the endorsement continue to apply.

## CG 25 04 -- Designated Location(s) General Aggregate Limit

This endorsement has been revised to specifically set forth which Aggregate Limit will apply with respect to a given occurrence or accident. The determining factor will be whether or not the specific loss can be attributed to a specific location. In addition, the language of the revised endorsement now explains that a "separate aggregate limit for a separate location" does not apply when a loss cannot clearly be attributable to a specific location.

The major changes to this endorsement are outlined below:

* The title of the endorsement has been changed to reflect the basic change being made in this endorsement from a "blanket location" basis to a "designated location" basis.

* New paragraph A. indicates that each designated location is subject to its own Designated Location General Aggregate Limit in lieu of the General Aggregate Limit shown in the Declarations of the policy. The Designated Location General Aggregate Limit is equal to the amount of the General Aggregate Limit shown in the Declarations of the policy. However, each such "Designated Location General Aggregate Limit" will be reduced only when damages resulting from losses under Coverages A and C can be attributed only to operations of that specific designated location.

* New paragraph B. indicates that payments made under Coverages A and C which cannot be attributed only to operations at a single designated location will be subject to the General Aggregate Limit in the policy Declarations.

* New paragraph C. states that the Designated Location General Aggregate Limit does not apply to bodily injury or property damage included in the products/completed operations hazard whether or not such coverage is indicated in the policy Declarations.

* New paragraph D. provides a definition of "location."

* New paragraph E. states that any provisions of LIMITS OF INSURANCE (Section III) not modified by the endorsement continue to apply.

## CG 27 10 -- Supplemental Extended Reporting Period Endorsement With Amendment Of Other Insurance Condition

## CG 27 11 -- Supplemental Extended Reporting Period Endorsement For Specific Accidents, Products, Work or Locations With Amendment Of Other Insurance Condition

These endorsements are introduced in order to be consistent with the language contained in new claims-made endorsement CG 00 56 (also contained in this filing), which provides that coverage provided to a named insured who has coverage available as an additional insured under another policy will apply as excess insurance. With the introduction of endorsements CG 27 10 and CG 27 11, endorsements CG 2701 -- Supplemental Extended Reporting Period Endorsement and CG 27 04 -- Supplemental Extended Reporting Period Endorsement For Specific Accidents, Products, Work or Locations have been withdrawn.

KNIGHT000098



# ACE INA Privacy Statement

The ACE INA group of companies strongly believes in maintaining the privacy of information we collect about individuals. We want you to understand how and why we use and disclose the collected information. The following provides details of our practices and procedures for protecting the security of nonpublic personal information that we have collected about individuals. This privacy statement applies to policies underwritten by the ACE INA group member companies listed below.

### INFORMATION WE COLLECT

The information we collect will vary depending on the type of product or service individuals seek or purchase, and may include:

- Information we receive from individuals, such as their name, address, age, phone number, social security number, assets, income, or beneficiaries;
- Information about individuals' transactions with us, with our affiliates, or with others, such as policy coverage, premium, payment history, motor vehicle records; and
- Information we receive from a consumer reporting agency, such as a credit history.

### INFORMATION WE DISCLOSE

We do not disclose any personal information to anyone except as is necessary in order to provide our products or services to a person, or otherwise as we are required or permitted by law.

We may disclose any of the information that we collect to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

### THE RIGHT TO VERIFY THE ACCURACY OF INFORMATION WE COLLECT

Keeping information accurate and up to date is important to us. Individuals may see and correct their personal information that we collect except for information relating to a claim or a criminal or civil proceeding.

### CONFIDENTIALITY AND SECURITY

We restrict access to personal information to our employees, our affiliates' employees, or others who need to know that information to service the account or in the course of conducting our normal business operations. We maintain physical, electronic, and procedural safeguards to protect personal information.

## CONTACTING US

If you have any questions about this privacy statement or would like to learn more about how we protect privacy, please write to us at ACE INA Customer Services, P.O. Box 1000, 436 Walnut Street, WA04F, Philadelphia, PA 19106. Please include the policy number on any correspondence with us.

ACE American Insurance Company
ACE American Lloyds Insurance Company
ACE Fire Underwriters Insurance Company
ACE Indemnity Insurance Company
ACE Insurance Company of Illinois
ACE Insurance Company of Ohio
ACE Insurance Company of the Midwest
ACE Property and Casualty Insurance Company
Atlantic Employers Insurance Company
Bankers Standard Fire and Marine Company
Bankers Standard Insurance Company
Century Indemnity Company
Illinois Union Insurance Company
Indemnity Insurance Company of North America
Insurance Company of North America
Pacific Employers Insurance Company
Westchester Fire Insurance Company
Westchester Surplus Lines Insurance Company
ESIS, Inc.



ACE USA
ACE Risk Management
Two Riverway, Ste 900
Houston, TX 77056
Direct (713) 403-3077
Fax (713) 403-3085
Cassi.Pepito@acegroup.com

April 29, 2010

**Wendy Arcement**
Knox Insurance Group
2014 W. Pinhook Rd., Suite 610
Lafayette, LA  70508

RE:                    **Knight Oil Tools, Inc.**
Policy Number:     HDO G2 49 40 21 4
Policy Term:       03/31/10 to 03/31/11

Dear Wendy:

ACE USA is committed to giving the best service to its customers.  Per our service standards, we are pleased to provide you with the enclosed *General Liability* policy. Please note that the WC & Auto policies will follow due to a system error. Also your address is not correct on the policy so I will have the policy endorse with the correct address that will follow soon.

Should you have any questions or concerns regarding the enclosed document(s), please feel free to contact *Chris Reichardt @ 713-403-3186*

Sincerely
Cassi Pepito
Underwriting Assistant

One of the ACE Group of Insurance & Reinsurance Companies



# Commercial Liability Insurance Policy



ace usa

(Attach Declarations and Endorsements Here)

KNIGHT000103

(Attach Coverage Part Here)

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

LD-3H21b

KNIGHT000104

ENDORSEMENTS

KNIGHT000105

## GENERAL ENDORSEMENT:

| Named Insured | Endorsement Number |
|---|---|
| Knight Oil Tools, Inc. | 52 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| HDO | G24940214 | 03/31/2010  to  03/31/2011 | 03/31/2010 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that effective 03/31/2010 the Producer address is amended to read:

2014 W. Pinhook Rd., Suite 610
Lafayette, LA  70508

Authorized Agent

CC-3R19 Ptd. in U.S.A. 6/86

KNIGHT000106

POLICY NUMBER: HDOG24940214

ENDT. #53

## ENDORSEMENT CHANGE

| Named Insured<br>Knight Oil Tools, Inc. | | | Endorsement Number<br>53 |
|---|---|---|---|
| Policy Symbol<br>HDO | Policy Number<br>G24940214 | Policy Period<br>03/31/2010 to 03/31/2011 | Effective Date of Endorsement<br>03/31/2010 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies all insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that effective    03/31/2010

| The following endorsement(s) are deleted from the policy: | And, if applicable, are replaced with the following endorsement(s) where noted: |
|---|---|
| Endorsement #13 Nonowned Watercraft Exception LD5T98 | Endorsement #54 Nonowned Watercraft Exception LD5T98 |

Authorized Agent

LD-24672 (03/08) Ptd. in U.S.A.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

KNIGHT000107

POLICY NUMBER: HDOG24940214

ENDT. #54

## NONOWNED WATERCRAFT EXCEPTION

| Named Insured | Knight Oil Tools, Inc. | | Endorsement Number 54 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G24940214 | Policy Period 03/31/2010 to 03/31/2011 | Effective Date of Endorsement 03/31/2010 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Form

Subparagraph (2) of Exclusion 2.g of Coverage I.A., Bodily Injury and Property Damage Liability is deleted in its entirety and replaced by the following:

(2)   A watercraft you do not own that is:

(a)   Less than   *   feet long; and   *

(b)   Not being used to carry persons or property for a charge;

*Unlimited

Authorized Agent

KNIGHT000108

# EXHIBIT G

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from the Chartis companies. Chartis insurance companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by Chartis insurance companies to brokers and independent agents in the United States by visiting our website at www.chartisinsurance.com/producercompensation or by calling 1-800-706-3102.

91222 (12/09)

KNIGHT000109

FORMS SCHEDULE

Named Insured:      KNIGHT OIL TOOLS INC

Policy Number:      BE    13074559
Effective 12:01 AM:  March 31, 2010

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | CHARTIS SPEC PRIME DEC | 81071 | (11/09) |
| | CHARTIS SPEC PRIME JACKET | 81070 | (11/09) |
| | SCHEDULE OF UNDERLYING | UNDSCH | (05/99) |
| | POLICYHOLDER DISC - NOTICE OF TERRORISM INS COVG | 96556 | (01/08) |
| 1 | ACT OF TERRORISM SIR ENDORSEMENT | 83049 | (03/06) |
| 2 | CRISISRESPONSE COVERAGE ENHANCEMENT ENDORSEMENT | 94621 | (05/07) |
| 3 | COVERAGE TERRITORY ENDT. | 89644 | (07/05) |
| 4 | VIOLATION OF ECONOMIC OR TRADE SANCTIONS  COND. AM | 99497 | (06/08) |
| 5 | VIOLATION OF ECO. OR TRADE SANCTIONS COND. AMEND. | 101111 | (03/09) |
| 6 | DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM, OR SU | 83687 | (11/09) |
| 7 | Duties in the Event of an Occurrence, Claim, or Su | 83687 | (01/10) |
| 8 | LOUISIANA AMENDATORY ENDT | 78607 | (03/03) |
| 9 | AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION ENDT | 86428 | (02/09) |
| 10 | ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY EX | 86448 | (06/05) |
| 11 | AUTOMOBILE LIABILITY FOLLOW-FORM ENDORSEMENT | 80398 | (07/02) |
| 12 | BACTERIA EXCLUSION ENDORSEMENT | 90985 | (05/06) |
| 13 | CROSS SUITS EXCLUSION PRIME | 80411 | (01/04) |
| 14 | DISCRIMINATION EXCLUSION ENDT | 86558 | (08/04) |
| 15 | ELECTROMAGNETIC FIELDS EXCLUSION | 80418 | (07/02) |
| 16 | EMP.LIAB.STOP-GAPLMT.ENDT | 82616 | (05/06) |
| 17 | EMPLOYEE BENEFITS LIAB LIMIT (CM) | 83073 | (09/03) |
| 18 | EMPLOYERS LIAB.LIMIT. ENDT. | 83071 | (11/03) |
| 19 | FOR. LIAB. LMT. ENDT.(APP. TO SPEC. CTYS) | 83078 | (05/09) |
| 20 | FUNGUS EXCLUSION ENDT | 82449 | (06/03) |
| 21 | LEAD EXCLUSION ENDORSEMENT | 86471 | (02/06) |
| 22 | MAR. LIAB. LMT. ENDT. INC. JONES ACT AND USLH | 86411 | (08/04) |
| 23 | MTBE AND OTHER FUEL OXYGENATES EXCLUSION ENDT | 80449 | (02/03) |
| 24 | PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT | 83093 | (05/05) |
| 25 | RADIOACTIVE MATTER EXCL | 83094 | (09/03) |
| 26 | SILICA EXCLUSION ENDT | 80479 | (02/03) |
| 27 | SEXUAL ABUSE OR MOLESTATION EXCLUSION | 80478 | (07/02) |
| 28 | TESTING OR CONSULTING ERRORS AND OMISSIONS EXCLUSI | 89485 | (06/05) |
| 29 | TIME ELEMENT SIR POLLUTION ENDT | 80499 | (06/03) |
| 30 | CANCELLATION CLAUSE AMENDED ENDT (CREDIT RATING TR | 100085 | (09/06) |
| 31 | RETAINED LIMIT AMENDATORY ENDT. | 81583 | (04/07) |
| 32 | DESIGNATED ENTITY SUBLIMIT OF INS. | 87213 | (12/04) |
| 33 | WATERCRAFT WORK PLATFORM COVERAGE ENDT | MNSCPT | (03/10) |
| 34 | AIRCRAFT & WATERCRAFT LIMITATION | MNSCPT | (03/10) |
| 35 | SCHEDULE OF NAMED INSURED(S) ENDORSEMENT | MNSCPT | (03/10) |

CIFMSC
CI0226



CHARTIS SPECIALTY INSURANCE COMPANY

A Capital Stock Insurance Company
175 Water Street
New York, NY 10038

NOTICE:   THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.

Umbrella Prime®
Commercial Umbrella Liability Policy With CrisisResponse®

## DECLARATIONS

POLICY NUMBER:  BE   13074559          RENEWAL OF:   7411282          PREMIUM

ITEM 1. NAMED INSURED:    KNIGHT OIL TOOLS INC          FEE

MAILING ADDRESS:  P.O. BOX 52688          TAX
LAFAYETTE, LA 70505-2688

TOTAL

ITEM 2. POLICY PERIOD: FROM:  March 31, 2010          TO:  March 31, 2011
(At 12:01 A.M., standard time, at the address of the Named Insured stated above.)

ITEM 3. LIMITS OF INSURANCE

The Limits of Insurance, subject to the terms of this policy, are:

| | | |
|---|---|---|
| A. | $25,000,000 | Each Occurrence |
| B. | $25,000,000 | General Aggregate (in accordance with Section IV. Limits of Insurance) |
| C. | $25,000,000 | Products-Completed Operations Aggregate (in accordance with Section IV. Limits of Insurance) |
| D. | $250,000 | CrisisResponse Sublimit of Insurance |
| E. | $50,000 | Excess Casualty CrisisFund Limit of Insurance |

ITEM 4. SCHEDULED UNDERLYING INSURANCE - See Schedule of Underlying Insurance

ITEM 5. SELF-INSURED RETENTION - $10,000          Each Occurrence

ITEM 6. PREMIUM AND PREMIUM COMPUTATION
ESTIMATED TOTAL ANNUAL EXPOSURE          NOT APPLICABLE
RATES PER          FLAT
MINIMUM PREMIUM
ADVANCE PREMIUM

ITEM 7. THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE: SEE ATTACHED SCHEDULE

PRODUCER NAME:  KNOX INSURANCE GROUP LLC
ADDRESS:          PO BOX 53406
LAFAYETTE, LA 70505-3406



Authorized Representative or
Countersignature (Where Applicable)

Issue Date:  04/30/10

81071 (11/09)
AH2642
© 2001 Chartis
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

NOTICE

This policy is delivered as a surplus line coverage under the insurance code of the State of Louisiana in the event of insolvency of the company issuing the contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific policies issued by an insurance company authorized to do business in Louisiana. This surplus lines policy has been procured by the following licensed Louisiana surplus lines broker:

KNIGHT000111

  **CHARTIS SPECIALTY INSURANCE COMPANY**

A Capital Stock Insurance Company
175 Water Street
New York, NY 10038

## NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.

Umbrella Prime®
**Commercial Umbrella Liability Policy With CrisisResponse®**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section VII, Definitions.

Except for headings, words that appear in bold print have special meaning. See Section VII, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

| I.   INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY |
| --- |

A. We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section IV, Limits of Insurance.

B. This policy applies, only if:

1. the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2. the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C. 1. This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII, no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII, and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

2. Bodily Injury or Property Damage which occurs during the Policy Period and was not, prior to the Policy Period, known to have occurred by any Insured listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an Occurrence or claim, includes any continuation, change or resumption of that Bodily Injury or Property Damage after the end of the Policy Period.

D. Bodily Injury or Property Damage will be deemed to have been known to have occurred at the earliest time when any Insured listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII, any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee who was authorized by you to give or receive notice of an Occurrence, claim or Suit:

   1. reports all, or any part, of the Bodily Injury or Property Damage to us or any other insurer;

   2. receives a written or verbal demand or claim for damages because of the Bodily Injury or Property Damage; or

   3. becomes aware by any other means that Bodily Injury or Property Damage has occurred or has begun to occur.

E. Damages because of Bodily Injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the Bodily Injury.

F. If we are prevented by law or statute from paying damages covered by this policy on behalf of the Insured, then we will indemnify the Insured for those sums in excess of the Retained Limit.

## II.  INSURING AGREEMENT-CRISISRESPONSE® AND EXCESS CASUALTY CRISISFUND®

A. CrisisResponse

We will advance CrisisResponse Costs directly to third parties on behalf of the Named Insured, regardless of fault, arising from a Crisis Management Event first commencing during the Policy Period, up to the amount of the CrisisResponse Sublimit of Insurance.

B. Excess Casualty CrisisFund

We will pay Crisis Management Loss on behalf of the Named Insured arising from a Crisis Management Event first commencing during the Policy Period, up to the amount of the Excess Casualty CrisisFund Limit of Insurance.

C. A Crisis Management Event will first commence at the time during the Policy Period when a Key Executive first becomes aware of an Occurrence that gives rise to a Crisis Management Event and will end when we determine that a crisis no longer exists or when the CrisisResponse Sublimit of Insurance has been exhausted, whichever occurs first.

D. There will be no Retained Limit applicable to CrisisResponse Costs or Crisis Management Loss.

E. Any advancement of CrisisResponse Costs or payment of Crisis Management Loss that we make under the coverage provided by this Section II. will not be a determination of our obligations under this policy, nor create any duty to defend any Suit under any other part of this policy.

## III.  DEFENSE PROVISIONS

A. We will have the right and duty to defend any Suit against the Insured that seeks damages for Bodily Injury, Property Damage or Personal Injury and Advertising Injury covered by this policy, even if the Suit is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

2. the damages sought because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

1. investigate, negotiate and settle the **Suit** as we deem expedient; and

2. pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

    a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    b. premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    c. all court costs taxed against the **Insured** in the **Suit**;

    d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest accruing after we make such offer;

    e. post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

    f. the **Insured's** expenses incurred at our request or with our consent.

D. Except as provided in Paragraph A. above, we will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

E. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

1. **Insureds**;

2. claims made or **Suits** brought;

81070 (11/09)
AH2650

Page 3 of 25
® 2001 Chartis
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000114

3. persons or organizations making claims or bringing **Suits**; or

4. coverages provided under this policy.

B. The General Aggregate Limit stated in Item 3. of the Declarations is the most we will pay for all damages under this policy, except for:

1. damages included within the Products-Completed Operations Hazard; and

2. damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

C. The Products-Completed Operations Aggregate Limit stated in Item 3C. of the Declarations is the most we will pay for all damages included in the Products-Completed Operations Hazard.

D. Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3A. of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence**.

E. Subject to Paragraphs B. and C. above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.

F. This policy applies only in excess of the **Retained Limit**. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1. greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

2. less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G. If the total applicable limits of Scheduled **Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

1. in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

2. in the event of exhaustion, continue in force as underlying insurance.

H. Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance**, then such expenses will reduce the applicable Limits of Insurance of this policy.

I. The CrisisResponse Sublimit of Insurance is the most we will pay for all CrisisResponse Costs under this policy, regardless of the number of Crisis Management Events first commencing during the **Policy Period**. This CrisisResponse Sublimit of Insurance will be part of, not in addition to, the applicable Limit of Insurance.

J. The Excess Casualty CrisisFund Limit of Insurance is the most we will pay for all Crisis Management Loss under this policy, regardless of the number of Crisis Management Events first commencing during the **Policy Period**. This Excess Casualty CrisisFund Limit of Insurance will be in addition to the applicable Limit of Insurance.

K. We will have no obligation to advance CrisisResponse Costs when we determine that a Crisis Management Event has ended or when the CrisisResponse Sublimit of Insurance has been exhausted, whichever occurs first.

81070 (11/09)
AH2650

Page 4 of 25
© 2001 Chartis
includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000115

L.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M.  We will not make any payment under this policy unless and until:

1.  the total applicable limits of Scheduled Underlying Insurance have been exhausted by the payment of Loss to which this policy applies and any applicable, Other Insurance have been exhausted by the payment of Loss; or

2.  the total applicable Self-Insured Retention has been satisfied by the payment of Loss to which this policy applies.

When the amount of Loss has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the Insured the amount of such Loss falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

## V.  EXCLUSIONS

A.  Aircraft and Watercraft

This insurance does not apply to Bodily Injury or Property Damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the Occurrence which caused the Bodily Injury or Property Damage involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft  that is owned or operated by or rented or loaned to any Insured.

This exclusion does not apply to a watercraft you do not own that  is:

1.  less than 26 feet long; and

2.  not being used to carry persons or property for a charge.

B.  Asbestos

This insurance does not apply to any liability arising out of:

1.  the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2.  any obligation of the Insured to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  any obligation to defend any Suit or claim against the Insured that seeks damages if such Suit or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

C.  Contractual Liability

This insurance does not apply to any liability for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1. that the Insured would have in the absence of a contract or agreement; or

2. assumed in an Insured Contract, provided Bodily Injury or Property Damage occurs subsequent to the execution of the Insured Contract. Solely for the purposes of liability assumed in an Insured Contract, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be damages because of Bodily Injury or Property Damage and included in the Limits of Insurance of this policy, provided:

   a. liability to such party for, or for the cost of, that party's defense has also been assumed in the same Insured Contract; and

   b. such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

D. Damage to Impaired Property or Property Not Physically Injured

This insurance does not apply to Property Damage to Impaired Property or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to Your Product or Your Work after it has been put to its intended use.

E. Damage to Property

This insurance does not apply to Property Damage to:

1. property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. premises you sell, give away or abandon, if the Property Damage arises out of any part of those premises;

3. property loaned to you;

4. personal property in the care, custody or control of the Insured;

5. that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the Property Damage arises out of those operations; or

6. that particular part of any property that must be restored, repaired or replaced because Your Work was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are Your Work and were never occupied, rented or held for rental by you.

Paragraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6. of this exclusion does not apply to Property Damage included in the Products-Completed Operations Hazard.

F. Damage to Your Product

This insurance does not apply to Property Damage to Your Product arising out of it or any part of it.

81070 (11/09)
AH2650

Page 6 of 25
© 2001 Chartis
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000117

G. Damage to Your Work

This insurance does not apply to Property Damage to Your Work arising out of it or any part of it and included in the Products-Completed Operations Hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. Electronic Chatrooms or Bulletin Boards and Electronic Data

This insurance does not apply to Personal Injury and Advertising Injury arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control. Additionally, this insurance does not apply to damages arising out of the loss, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

I. Employees and Volunteers

This insurance does not apply to liability of any employee or volunteer qualifying as an Insured under this policy arising out of Bodily Injury, Property Damage or Personal Injury and Advertising Injury:

1. to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2. to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1. above;

3. for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1. or 2. above; or

4. arising out of his or her providing or failing to provide professional health care services.

Paragraphs 1., 2. and 3. shall not apply to any liability arising out of Bodily Injury or Personal Injury and Advertising Injury if such coverage is provided by Scheduled Underlying Insurance. Coverage under this policy for Bodily Injury or Personal Injury and Advertising Injury will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

J. Employment Practices

This insurance does not apply to any liability arising out of:

1. failure to hire any prospective employee or any applicant for employment;

2. dismissal, discharge or termination of any employee;

3. failure to promote or advance any employee; or

4. employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

   a. coercion, harassment, humiliation or discrimination;

81070 (11/09)
AH2650

Page 7 of 25
© 2001 Chartis
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000118

    b.   demotion, evaluation, reassignment, discipline, or retaliation;

    c.   libel, slander, humiliation, defamation, or invasion of privacy; or

    d.   violation of civil rights.

This exclusion applies:

1.   whether the Insured may be liable as an employer or in any other capacity; and

2.   to any obligation to share damages with or repay someone else who must pay damages because of the injury.

K.  Expected or Intended Injury

This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the Insured. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

L.  Infringement of Copyright, Patent, Trademark or Trade Secret

This insurance does not apply to **Personal Injury** and **Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

M.  Liquor Liability

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any Insured may be held liable by reason of:

1.   causing or contributing to the intoxication of any person;

2.   the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.   any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance.**

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance,** subject to the **Policy Period,** Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

N.  Media and Internet Type Businesses

This insurance does not apply to **Personal Injury** and **Advertising Injury** committed by any Insured whose business is:

1.   advertising, broadcasting, publishing or telecasting;

2.   designing or determining content of web-sites for others; or

3.   an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs U1., U2. and U3. of Section VII.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

Page 8 of 25
© 2001 Chartis
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000119

O. "No-Fault, " "Uninsured Motorist" or "Underinsured Motorist" Laws

This insurance does not apply to any obligation of the Insured under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law, or any similar law.

P. Nuclear Liability

This insurance does not apply to:

1. any liability:

   a. with respect to which the Insured is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability;

   b. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law, (2) the Insured is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

   c. for Bodily Injury or Property Damage resulting from the hazardous properties of nuclear material if:

      i) the nuclear material (1) is at any nuclear facility owned by the Insured or operated by the Insured or on the Insured's behalf or (2) has been discharged or dispensed therefrom;

      ii) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured's behalf; or

      iii) the Bodily Injury or Property Damage arises out of the furnishing by the Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to Property Damage to such nuclear facility and any property thereat.

2. As used in this exclusion:

   a. "hazardous properties" includes radioactive, toxic or explosive properties;

   b. "nuclear material" means source material, special nuclear material or by-product material;

   c. "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto ;

   d. "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   e. "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

   f. "nuclear facility" means:

      i) any nuclear reactor;

      ii) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

81070 (11/09)
AH2650

Page 9 of 25
© 2001 Chartis

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000120

iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

iv) any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g.   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.   Property Damage includes all forms of radioactive contamination of property.

Q.  Pollution

This insurance does not apply to:

1.   Any Bodily Injury, Property Damage or Personal Injury and Advertising Injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants anywhere at any time;

2.   Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants; or

3.   Any loss, cost or expense arising out of any claim or Suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of Pollutants.

However, Paragraph 1 of this exclusion will not apply if coverage for such Bodily Injury or Property Damage as is described in subparagraphs 1) through 6) below is provided by Scheduled Underlying Insurance:

1)   Products-Completed Operations Hazard

Paragraph 1. of this exclusion does not apply with respect to Bodily Injury or Property Damage included within the Products-Completed Operations Hazard provided that Your Product or Your Work has not at any time been:

a)   discarded, dumped, abandoned, thrown away; or

b)   transported, handled, stored, treated, disposed of or processed as waste;

by anyone.

2)   Hostile Fire

Paragraph 1. of this exclusion does not apply with respect to Bodily Injury or Property Damage arising out of heat, smoke or fumes from a Hostile Fire.

3)   Equipment to Cool, Dehumidify, or Heat the Building and Contractor/Lessee Operations

Paragraph 1. of this exclusion does not apply to:

a)   Bodily Injury sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment used to heat water for personal use, by the building's occupants or their guests;

81070 (11/09)
AH2650
Page 10 of 25
© 2001 Charts
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000121

b) Bodily Injury or Property Damage for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional Insured with respect to your ongoing operations performed for that additional Insured at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than the additional Insured.

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

Paragraph 1. of this exclusion does not apply to:

a) Bodily Injury or Property Damage arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of Mobile Equipment or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the Bodily Injury or Property Damage arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

b) Bodily Injury or Property Damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto**

Paragraph 1. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar Pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an Auto covered by Scheduled Underlying Insurance or its parts, if:

a) the Pollutants escape, seep, migrate, or are discharged, dispersed or released directly from an Auto part designed by its manufacturer to hold, store, receive or dispose of such Pollutants; and

b) the Bodily Injury or Property Damage does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of Mobile Equipment.

6) **Upset, Overturn or Damage of an Auto**

Paragraph 1. of this exclusion does not apply to Occurrences that take place away from premises owned by or rented to an Insured with respect to Pollutants not in or upon an Auto covered by Scheduled Underlying Insurance if:

a) the Pollutants or any property in which the Pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an Auto covered by Scheduled Underlying Insurance; and

b) the discharge, dispersal, seepage, migration, release or escape of the Pollutants is caused directly by such upset, overturn or damage.

Coverage under this policy for such Bodily Injury or Property Damage as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

R. **Recall of Your Product, Your Work or Impaired Property**

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. Your Product;

2. Your Work; or

3. Impaired Property;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S. Securities

This insurance does not apply to any liability arising out of:

1. any violation of any securities law or similar law or any regulation promulgated thereunder;

2. the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3. any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4. any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

T. Unauthorized Use of Another's Name or Product

This insurance does not apply to Personal Injury and Advertising Injury arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

U. Various Personal Injury and Advertising Injury

This insurance does not apply to Personal Injury and Advertising Injury:

1. caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal Injury and Advertising Injury;

2. arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any Insured with knowledge of its falsity;

3. arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the Policy Period;

4. arising out of a criminal act committed by or at the direction of the Insured;

5. for which the Insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement;

6. arising out of a breach of contract, except an implied contract to use another's advertising idea in your Advertisement;

7. arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your Advertisement; or

8. arising out of the wrong description of the price of goods, products or services stated in your Advertisement.

V. Various Laws

This insurance does not apply to any obligation of the Insured under any of the following:

81070 (11/09)
AH2850
Page 12 of 25
© 2001 Chartis
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000123

1. the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2. any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

W. Violation of Communication or Information Law

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

X. War

This insurance does not apply to Loss, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1. Civil war; or

2. Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## VI. CONDITIONS

A. Appeals

If the Insured or the Insured's underlying insurers do not appeal a judgment in excess of the total applicable limits of Scheduled Underlying Insurance, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

C. Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of Loss covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under Scheduled Underlying Insurance.

D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3. The Policy Period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6. of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured in Item 1. of the Declarations will act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

## E. Change in Control

If during the Policy Period:

1. the first Named Insured designated in Item 1. of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2. any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first Named Insured designated in Item 1. of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to Bodily Injury and Property Damage that occur prior to the effective date of such transaction and Personal Injury and Advertising Injury caused by an Occurrence that takes place prior to the effective date of such transaction.

Coverage will be afforded by this policy for Bodily Injury or Property Damage that occurs on or after the effective date of such transaction and Personal Injury and Advertising Injury caused by an Occurrence that takes place on or after the effective date of such transaction if the Named Insured notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

If the Named Insured fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth (90th) day after the effective date of such transaction at 12:01 am standard time of the address of the Named Insured shown in Item 1. of the Declarations or the end of the Policy Period, whichever is earlier.

The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the Named Insured on the inception date of this policy.

## F. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

## G. Duties in the Event of an Occurrence, Claim or Suit

1. You must see to it that we are notified as soon as practicable of an Occurrence that may result in a claim or Suit under this policy. To the extent possible, notice should include:

    a.  how, when and where the Occurrence took place;

    b.  the names and addresses of any injured persons and any witnesses; and

    c.  the nature and location of any injury or damage arising out of the Occurrence.

2.  If a claim is made or Suit is brought against any Insured which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

Written notice should be mailed, delivered, faxed or emailed to:

> Chartis Domestic Claims, Inc.
> Excess Casualty Claims Department
> Segmentation Unit
> 175 Water Street, 22nd Floor
> New York, NY 10038
> Fax: (866) 743-4376
> Email: excessfnol@chartisinsurance.com

3.  You and any other involved Insured must:

    a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or Suit;

    b.  authorize us to obtain records and other information;

    c.  cooperate with us in the investigation, settlement or defense of the claim or Suit; and

    d.  assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the Insured because of injury or damage to which this insurance may also apply.

4.  No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

## H. Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

## I. Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

## J. Legal Actions Against Us

No person or organization has a right under this policy:

1.  to join us as a party or otherwise bring us into a Suit asking for damages from an Insured; or

2.  to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured;

81070 (11/09)                      Page 15 of 25
AH2650                           ® 2001 Chartis
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000126

but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

K.   Maintenance of Scheduled Underlying Insurance

You agree that during the Policy Period:

1.   you will keep Scheduled Underlying Insurance in full force and effect;

2.   the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance will not materially change;

3.   the total applicable limits of Scheduled Underlying Insurance will not decrease, except for any reduction or exhaustion of aggregate limits by payment of Loss to which this policy applies; and

4.   any renewals or replacements of Scheduled Underlying Insurance will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

L.   Other Insurance

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the Other Insurance. However, this provision will not apply if the Other Insurance is specifically written to be excess of this policy.

M.   Premium

The first Named Insured designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 6. of the Declarations. At the beginning of the Policy Period, you must pay us the Advance Premium shown in Item 6. of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we will retain the Minimum Premium as shown in Item 6. of the Declarations for each twelve months of the Policy Period.

N.   Separation of Insureds

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first Named Insured designated in Item 1. of the Declarations, this insurance applies:

1.   as if each Named Insured were the only Named Insured; and

2.   separately to each Insured against whom claim is made or Suit is brought.

O.   Service Of Suit

In the event of our failure to pay any amount claimed to be due hereunder, we, at the Insured's request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a

case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Chartis Specialty Insurance Company, 175 Water Street, New York, NY 10038, or his or her representative, and that in any suit instituted against us upon this contract, we will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner, or Director of Insurance, other officer specified for that purpose in the statute, or his or her successor or successors in office as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

P.   Transfer of Rights of Recovery

1.   If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair these rights and must help us enforce them.

2.   Any recoveries will be applied as follows:

a.   any person or organization, including the Insured, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

b.   we then will be reimbursed up to the amount we have paid; and

c.   lastly, any person or organization, including the Insured that has paid an amount over which this policy is excess is entitled to claim the remainder.

Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the Insured, in the ratio of their respective recoveries as finally settled.

3.   If, prior to the time of an Occurrence, you waive any right of recovery against a specific person or organization for injury or damage as required under an Insured Contract, we will also waive any rights we may have against such person or organization

Q.   Transfer of Your Rights and Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

R.   Unintentional Failure to Disclose

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

S.   Violation of Economic or Trade Sanctions

If coverage for a claim or Suit under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or Suit will be null and void.

## VII. DEFINITIONS

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   1. notices that are published include material placed on the Internet or on similar electronic means of communication; and

   2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. **Auto** means:

   1. a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   2. any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged.

   However, **Auto** does not include **Mobile Equipment**.

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

D. **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has or may result in:

   1. damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

   2. significant adverse regional or national media coverage.

   **Crisis Management Event** will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E. **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event**.

F. **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

   1. amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

   2. amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

G. **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

H. **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

81070 (11/09)
AH2650

Page 18 of 25
© 2001 Chartis
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000129

1. medical expenses;

2. funeral expenses;

3. psychological counseling;

4. travel expenses;

5. temporary living expenses;

6. expenses to secure the scene of a Crisis Management Event; and

7. any other expenses pre-approved by the Company.

CrisisResponse Costs does not include defense costs or Crisis Management Loss.

I.  CrisisResponse Sublimit of Insurance means the CrisisResponse Sublimit of Insurance shown in Item 3D. of the Declarations.

J.  Excess Casualty CrisisFund Limit of Insurance means the Excess Casualty CrisisFund Limit of Insurance shown in Item 3E of the Declarations.

K.  Hostile Fire means a fire that becomes uncontrollable or breaks out from where it was intended to be.

L.  Impaired Property means tangible property, other than Your Product or Your Work, that cannot be used or is less useful because:

1. it incorporates Your Product or Your Work that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of Your Product or Your Work; or

2. your fulfilling the terms of the contract or agreement.

M.  Insured means:

1. the Named Insured;

2. if you are designated in the declarations as:

a. an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

b. a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. a limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers;

d. an organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders;

KNIGHT000130

e. a trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees;

3. your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4. your volunteer workers only while performing duties related to the conduct of your business;

5. any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6. your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this policy;

7. any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance**.

Notwithstanding any of the above:

a. no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

b. no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

N. **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**Insured Contract** does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those shown in subparagraph 2. above and supervisory, inspection, architectural or engineering activities.

O. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the Named Insured is a partnership) of the Named Insured or sole proprietor (if the Named Insured is a sole proprietorship).  A **Key Executive** also means any other person holding a title designated by you and approved by us, which title is shown in Schedule B, Additional Key Executives attached to and forming part of this policy.

KNIGHT000131

P. **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

Q. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. power cranes, shovels, loaders, diggers or drills; or

    b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

    a. equipment designed primarily for:

        i) snow removal;

        ii) road maintenance, but not construction or resurfacing; or

        iii) street cleaning;

    b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

    However, **Mobile Equipment** does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law are considered **Autos**.

R. **Named Insured** means:

1. any person or organization designated in Item 1. of the Declarations;

2. as of the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily**

Injury or Property Damage that occurred or any Personal Injury and Advertising Injury that was caused by an Occurrence that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.  after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the Policy Period in which you maintain an interest of more than fifty percent (50%), provided that:

    a.  coverage provided to such organization under this paragraph  does not apply to any Bodily Injury or Property Damage that occurred or any Personal Injury and Advertising Injury that was caused by an Occurrence that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

    b.  you give us prompt notice after you acquire or form such organization.

    Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the Policy Period may be added as an Insured only by a written endorsement that we make a part of this policy.

    We may, at our option, make an additional premium charge for any organization that you acquire or form during the Policy Period.

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an Insured under applicable Scheduled Underlying Insurance. If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an Insured, under the highest applicable limit of Scheduled Underlying Insurance.

S.  Occurrence means:

1.  as respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general harmful conditions will be deemed to arise out of one Occurrence.

2.  as respects Personal Injury and Advertising Injury, an offense arising out of your business that causes Personal Injury and Advertising Injury.  All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one Occurrence, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

T.  Other Insurance means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

    However, Other Insurance does not include Scheduled Underlying Insurance, the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

U.  Personal Injury and Advertising Injury means injury arising out of your business, including consequential Bodily Injury, arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4.  oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.  oral or written publication, in any manner, of material that violates a person's right of privacy;

6.  the use of another's advertising idea in your Advertisement; or

7.  infringement upon another's copyright, trade dress or slogan in your Advertisement.

V.  **Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of termination of this policy.

W.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

X.  **Products-Completed Operations Hazard** means all Bodily Injury and Property Damage occurring away from premises you own or rent and arising out of Your Product or Your Work except:

1.  products that are still in your physical possession; or

2.  work that has not yet been completed or abandoned. However, Your Work will be deemed completed at the earliest of the following times:

    a.  when all of the work called for in your contract has been completed;

    b.  when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

    c.  when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **Products-Completed Operations Hazard** does not include Bodily Injury or Property Damage arising out of:

1.  the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any Insured; or

2.  the existence of tools, uninstalled equipment or abandoned or unused materials.

Y.  **Property Damage** means:

1.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.  loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the Occurrence that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z.  **Retained Limit** means:

1.  the total applicable limits of Scheduled Underlying Insurance and any applicable Other Insurance providing coverage to the Insured; or

2. the Self-Insured Retention applicable to each Occurrence that results in damages not covered by Scheduled Underlying Insurance nor any applicable Other Insurance providing coverage to the Insured.

AA. **Scheduled Underlying Insurance** means:

1. the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

BB. **Self-Insured Retention** means the amount that is shown in Item 5. of the Declarations.

CC. **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged. **Suit** includes:

1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD. **Your Product** means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. **you**;

   b. others trading under **your** name; or

   c. a person or organization whose business or assets **you** have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

EE. **Your Work** means:

1. work or operations performed by **you** or on **your** behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

KNIGHT000135

2.   the providing of or failure to provide warnings or instructions.

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

By signing below, our President and Secretary agree on our behalf to all the terms of this policy.

_____  
Secretary

_____  
President

This policy shall not be valid unless signed at the time of issuance by our authorized representative, either below or on the Declarations page of the policy.

_____  
**Authorized Representative**

81070 (11/09)  
AH2650

Page 25 of 25  
© 2001 Chartis  
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

KNIGHT000136

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: KNIGHT OIL TOOLS INC                    Policy Number: BE    13074559

By: CHARTIS SPECIALTY INSURANCE COMPANY

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY (Knight Oil Tools, Inc.) | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE $10,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE $1,000,000 PERSONAL & ADVERTISING INJURY |
| | | Defense Expenses are in addition to the limit |
| GENERAL LIABILITY (Advanced Safety & Training Management, Inc.) | Endurance Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE $1,000,000 PERSONAL & ADVERTISING INJURY |
| | | Defense Expenses are in addition to the limit |
| GENERAL LIABILITY (El Caballero, Inc.) | Philadelphia Indemnity Ins. Co 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE $1,000,000 PERSONAL & ADVERTISING INJURY |
| | | Defense Expenses are in addition to the limit |
| GENERAL LIABILITY (Le Chevalier) | Philadelphia Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE $1,000,000 PERSONAL & ADVERTISING INJURY |
| | | Defense Expenses are in addition to the limit |

UNDSCH (5/99)
AH0006

KNIGHT000137

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: KNIGHT OIL TOOLS INC

Policy Number: BE   13074559

By: CHARTIS SPECIALTY INSURANCE COMPANY

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| AUTO LIABILITY | ACE American Insurance Co. 03/31/10 03/31/11 | $2,000,000 COMBINED SINGLE LIMIT |
| | | Defense Expenses are in addition to the limit |
| EMPLOYERS LIABILITY | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH ACCIDENT $1,000,000 DISEASE EACH EMPLOYEE $1,000,000 DISEASE POLICY LIMIT |
| | | Defense Expenses are in addition to the limit |
| STOP GAP EL | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH ACCIDENT $1,000,000 DISEASE EACH EMPLOYEE $1,000,000 DISEASE POLICY LIMIT |
| | | Defense Expenses are in addition to the limit |
| MARITIME EMPLOYERS LIABILITY (IF ANY BASIS) | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH ACCIDENT $1,000,000 DISEASE EACH EMPLOYEE $1,000,000 DISEASE POLICY LIMIT |
| | | Defense Expenses are in addition to the limit |

UNDSCH (5/99)
AH0006

KNIGHT000138

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: KNIGHT OIL TOOLS INC          Policy Number: BE    13074559

By: CHARTIS SPECIALTY INSURANCE COMPANY

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| EMPLOYEE BENEFITS LIABILITY (INCL IN GL - CLAIMS MADE) | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH CLAIM $1,000,000 AGGREGATE |
| | | |
| | | Defense Expenses are in addition to the limit |
| PROTECTION & INDEMNITY | Great American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH ACCIDENT |
| | | |
| | | Limits are inclusive of Defense Expenses |
| WHARFINGER'S LEGAL LIABILITY | Great American Insurance Co. 03/31/10 03/31/11 | $1,000,000 OCCURRENCE LIMIT $1,000,000 PER VESSEL, INCLUDING EQUIP., CARGO & FREIGHT LIMIT $1,000,000 PROPERTY DAMAGE & BODILY INJURY LIMIT |
| | | |
| | | Limits are inclusive of Defense Expenses |
| CHARTERER'S LEGAL LIABILITY | Great American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE |

Limits are inclusive of Defense Expenses

_Vincent Cataganno_

AUTHORIZED REPRESENTATIVE

UNDSCH (5/99)
AH0006

KNIGHT000139

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $1,276.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

96556 (1/08)
© 2007 National Association of Insurance Commissioners

KNIGHT000140

ENDORSEMENT No. 1

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no: BE      13074559

Issued to:  KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Policy with CrisisResponse®

Act of Terrorism Self-Insured Retention Endorsement

Solely with respect to any Act of Terrorism, this policy is amended as follows:

The DECLARATIONS, ITEM 5. SELF-INSURED RETENTION is amended to include the following additional Self-Insured Retention:

ACT OF TERRORISM SELF-INSURED RETENTION - $$1,000,000 Each Occurrence (As respects all liability covered under this policy arising out of any Act of Terrorism.) The Act of Terrorism Self-Insured Retention will not be reduced or exhausted by Defense Expenses.

ITEM 6. OF THE DECLARATIONS, PREMIUM AND PREMIUM COMPUTATION is amended to include the following:

ACT OF TERRORISM PREMIUM          

Section IV. LIMITS OF INSURANCE, is amended to include the following additional provision:

The Act of Terrorism Self-Insured Retention applies whether or not there is any available Scheduled Underlying Insurance or Other Insurance providing coverage to the Insured. If there is Scheduled Underlying Insurance or Other Insurance providing coverage to the Insured, amounts received through such Scheduled Underlying Insurance or Other Insurance for payment of the Loss may be applied to reduce or exhaust the Act of Terrorism Self-Insured Retention. However, in no event will amounts received through such Scheduled Underlying Insurance or Other Insurance for the payment of Defense Expenses reduce the Act of Terrorism Self-Insured Retention.

Section III. DEFENSE PROVISIONS, Paragraphs A. 1. and A. 2., and D. are deleted in their entireties, and Paragraph A. is replaced by the following:

A.  We will have no duty to defend any Suit against the Insured. We will, however, have the right, but not the duty, to participate in the defense of any Suit and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

Section VII. DEFINITIONS is amended to include the following additional definition:

Act of Terrorism means:

1.  any act which is verified or recognized by the United States Government as an act of terrorism, including a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions, amendments, or extensions thereto; or

KNIGHT000141

2.  the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

Defense Expenses means any payment allocated to a specific loss, claim or Suit for its investigation, settlement or defense, including but not limited to:

1.  Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2.  Premiums on bonds to release attachments;

3.  Premiums on appeal bonds required by law to appeal any claim or Suit;

4.  Costs taxed against the Insured in any claim or Suit;

5.  Pre-judgment interest awarded against the Insured;

6.  Interest that accrues after entry of judgment.

It is understood and agreed that if any other endorsement to this policy excludes terrorism liability arising in one or more specified countries, the provisions of such exclusion shall supersede this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (in States Where Applicable)

KNIGHT000142

ENDORSEMENT No. 2

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

CrisisResponse Coverage Enhancement Endorsement

This policy is amended as follows:

It is understood and agreed that in every instance in which the phrase "CrisisResponse Sublimit of Insurance" is referenced in this policy and/or its endorsements, the phrase "CrisisResponse Limit of Insurance" shall be substituted.

Section IV. LIMITS OF INSURANCE, Paragraph I. is deleted in its entirety and replaced by the following:

I.   The CrisisResponse Limit of Insurance is the most we will pay for all CrisisResponse Costs under this policy, regardless of the number of Crisis Management Events first commencing during the Policy Period.  This CrisisResponse Limit of Insurance will be in addition to the applicable Limit of Insurance.

All other terms, conditions, definitions and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

94621 (5/07)
AH2035

KNIGHT000143

ENDORSEMENT No. 3

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE      13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

COVERAGE TERRITORY ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_____
Authorized Representative

89644 (7/05)
AH2421

KNIGHT000144

ENDORSEMENT No. 4

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy With CrisisResponse ®

Violation of Economic or Trade Sanctions Condition Amendment Endorsement

This policy is amended as follows:

Section VI. CONDITIONS, Paragraph R. Violation of Economic or Trade Sanctions is deleted in its entirety.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Authorized Representative
or Countersignature (Where Applicable)

99497 (6/08)
AH2423

KNIGHT000145

ENDORSEMENT No. 5

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Violation of Economic or Trade Sanctions Condition Amendment Endorsement

This policy is amended as follows:

Section VI. CONDITIONS, Paragraph S. Violation of Economic or Trade Sanctions is deleted in its entirety.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (Where Applicable)

101111 (3/09)
AH2526

KNIGHT000146

ENDORSEMENT No. 6

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE      13074559

Issued to:  KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Duties in the Event of an Occurrence, Claim or Suit and
Schedule A - Approved Crisis Management Firms

Solely as respects coverage provided by Section II INSURING AGREEMENT - CRISISRESPONSE℠ AND EXCESS CASUALTY CRISIS FUND®, the following conditions are added to Section VI. Conditions, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit:

You must report any Crisis Management Event to us within twenty-four (24) hours of the time that a Key Executive first becomes aware of an Occurrence that gives rise to a Crisis Management Event or as soon as practicable to be eligible for the advancement of CrisisResponse Costs and the payment of Crisis Management Loss.

Notice of a Crisis Management Event may be given by calling 1-877-244-3100.  If notice is given by telephone, written notice will be given as soon as practicable thereafter.  Written notice should include:

1.  how, when and where the Crisis Management Event is taking or took place;

2.  the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the Crisis Management Event.

Written notice should be mailed or delivered to:

Chartis Claims, Inc.
Excess Casualty Claims Department
Segmentation Unit
175 Water Street, 22nd Floor
New York, NY  10038
Fax: (866) 743-4376
E-mail:  excessfnol@chartisinsurance.com

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

83687 (11/09)                                   Page 1 of 6
AH2759

KNIGHT000147

Schedule A

Approved Crisis Management Firms

The following firms are approved Crisis Mangement Firms:

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **The Abernathy MacGregor Group** | | | |
| 501 Madison Avenue New York, NY 10022 | James T. MacGregor (212) 371-5999 Office (646) 236-3271 Cell (212) 752-0723 Fax (212) 343-0818 Home jtm@abmac.com<br><br>Rhonda Barnat (212) 371-5999 Office (917) 912-6378 Cell (212) 752-0723 Fax (646) 478-8740 Home rb@abmac.com | (917) 449-9964 | Public Relations and Crisis Management |
| 611 West Sixth Street, Suite 1880 Los Angeles, CA 90017 | Ian D. Campbell (213) 630-6550 Office (213) 489-3443 Cell (213) 489-3443 Fax (818) 957-5650 Home (818) 541-0954 Home Fax idc@abmac.com | (818) 750-4392 (917) 940-3476 | |
| **Bright Light Marketing Group (Hawaii Only)** | | | |
| 1001 Bishop Street, Suite 900 Honolulu, Hawaii 96813-3429 | Charlene Lo Chan (808) 275-3007 Direct (808) 524-6441 Office (808) 781-7733 Cell (808) 524-8115 Fax charlene@brightlightmarketing.com | | Public Relations and Crisis Management |
| **Edelman Public Relations Worldwide** | | | |
| 200 East Randolph Street, 63rd Floor Chicago, IL 60601 | Bill Keegan (312) 240-2624 Direct (312) 240-3000 Office (312) 927-8424 Cell (312) 240-2900 Fax bill.keegan@edelman.com | | International Public Relations and Crisis Management |
| 1500 Broadway, 26th Floor New York, NY | Chris Deri (212) 704-4526 Office (212) 391-6389 Fax (917) 783-6771 Cell chris.deri@edelman.com | | |

KNIGHT000148

## Edward Howard and Company

| | | |
|---|---|---|
| 1100 Superior Avenue, Suite 1600 Cleveland, OH 44114-2518 | Wayne Hill (216) 781-2400 Office (216) 408-1211 Cell whill@edwardhoward.com | Public Relations and Crisis Management |

## Fleishman-Hilliard, Inc.

| | | |
|---|---|---|
| John Hancock Center 875 N. Michigan Avenue, Suite 3300 Chicago, IL 60611-1901 | David Saltz (312) 751-3530 Direct (312) 751-8878 Office (312) 203-2114 Cell (312) 751-8191 Fax david.saltz@fleishman.com | Public Relations and Crisis Management |
| 1615 L Street NW, Suite 1000 Washington, D.C. 20036-5610 | Benjamin (Ben) Kincannon (617) 692-0501 Office (508) 314-4154 Cell (617) 287-5905 Fax ben.kincannon@fleishman.com | |

## Hill and Knowlton, Inc.

| | | | |
|---|---|---|---|
| 909 Third Avenue New York, NY 10022 | Christopher R. Gidez (212) 885-0480 Direct (212) 885-0300 Office (914) 319-6582 Cell (212) 885-0524 Fax chris.gidez@hillandknowlton.com | (888) 264-5193 | Public Relations and Crisis Management |
| | Richard (Dick) C. Hyde (212) 885-0372 Direct (212) 885-0300 Office (917) 816-2208 Cell (212) 885-0570 Fax dhyde@hillandknowlton.com | | |
| 55 Metcalfe Street, Suite 1100 Ottawa, Canada K1P 6L5 | Jo-Anne Polak (613) 786-9954 Direct (613) 238-4371 Office (613) 761-2684 Cell (613) 238-8642 Fax jpolak@hillandknowlton.com | | |

## Lexicon Communications Corp.

| | | | |
|---|---|---|---|
| 520 Bellmore Way Pasadena, CA 91103 | Steven B. Fink (626) 683-9333 Direct (626) 683-9200 Ext. 225 Office (626) 253-1519 Cell (626) 449-7659 Fax sfink@lexiconcorp.com | (626) 683-9333 | Public Relations and Crisis Management |
| | Daryn Teague (661) 297-5292 Direct (805) 358-3058 Cell | | |

KNIGHT000149

**Robinson Lerer & Montgomery**

| | | | |
|---|---|---|---|
| 1345 Avenue of the Americas, 4th Floor New York, NY 10105 | Michael Gross (646) 805-2003 Direct (646) 805-2000 Office (917) 853-0620 Cell (646) 557-0002 Fax (718) 788-5281 Home mgross@rlmnet.com | (646) 805-2000 | Public Relations and Crisis Management |
| | Patrick S. Gallagher (646) 805-2007 Direct (646) 805-2000 Office (917) 328-9333 Cell (646) 805-2829 Fax (914) 232-4256 Home pgallagher@rlmnet.com | | |

**Sard Verbinnen & Co.**

| | | | |
|---|---|---|---|
| 630 Third Avenue, 9th Floor New York, NY 10017 | George Sard (212) 687-8080 Office (212 687-8344 Fax gsard@sardverb.com | (917) 750-4392 | Public Relations and Crisis Management |
| | Paul Verbinnen (212) 687-8080 Office (212) 687-8344 Fax pv@sardverb.com | | |
| 190 S. LaSalle Street, Suite 1600 Chicago, IL 60603 | Brad Wilks (312) 895-4740 Direct (312) 895-4700 Office (312) 895-4747 Fax bwilks@sardverb.com | | |
| 275 Battery Street, Suite 480 San Francisco, CA 94111 | Paul Kranhold (415) 618-8750 Office (415) 568-9580 Fax pkranhold@sardverb.com | | |

**Sitrick and Company, Inc.**

| | | | |
|---|---|---|---|
| 655 Third Avenue, 22nd Floor New York, NY 10017 | Jeffrey S. Lloyd (212) 660-6393 Direct (212) 573-6100 Office (310) 963-2950 Cell (212) 573-6165 Fax jeff_lloyd@sitrick.com | (310) 358-1011 | Public Relations and Crisis Management |
| 1840 Century Park East, Suite 800 Los Angeles, CA 90067 | Michael S. Sitrick (310) 788-2850 Direct (310) 788-2855 Fax mike_sitrick@sitrick.com | | |

KNIGHT000150

## The Torrenzano Group

| | | |
|---|---|---|
| The Lincoln Building<br>60 East 42nd Street,<br>Suite 2112<br>New York, NY 10165-2112 | Richard Torrenzano<br>(212) 681-1700 Ext. 111 Direct<br>(212) 681-6961 Fax<br>richard@torrenzano.com | Public Relation and<br>Crisis Management |
| | Edward A. Orgon<br>(212) 681-1700 Ext. 102 Direct<br>(917) 539-4000 Cell<br>(212) 681-6961 Fax<br>ed@torrenzano.com | |

## Zeno Group

| | | |
|---|---|---|
| The Foundry Building<br>10555 Thomas Jefferson<br>Street NW<br>Washington, D.C.<br>20007 | Philip Armstrong<br>(202) 965-7801 Direct<br>(202) 669-9926 Cell<br>phil.armstrong@zenogroup.com | Public Relations and<br>Crisis Management |

**THE FOLLOWING NON-PUBLIC RELATIONS FIRMS ARE APPROVED CRISIS RESPONSE FIRMS:**

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **Coventry Health Care, Inc.** | | | |
| 3200 Highland Avenue<br>Downers Grove, IL<br>60515 | Nicole Bennet-Denson<br>(212) 283-7183 Fax<br>(646) 284-8835 Cell<br>nxbennetden@cvty.com<br><br>Anthony Nastasi<br>(914) 874-4727 Cell<br>(845) 265-5086 Fax<br>atnastasi@cvty.com | (800) 552-5378<br>Crisis Response<br><br>(888) 736-3272<br>Case Management | Psychological<br>Counseling,<br>Medical Case<br>Management,<br>Medical Cost<br>Projection and<br>Containment. |
| **D.A.R., Inc.** | | | |
| 4 Iris Drive<br>Scarborough, Maine<br>04074 | David W. Hunt<br>(207) 415-0735 Direct<br>(207) 883-0493 Home<br>(207) 883-2436 Fax<br>dhunt12348@aol.com | | Crisis Management,<br>Global Investigative<br>Services, Access to<br>Local, State and<br>Federal Police<br>Authorities, National<br>& International<br>Intelligence Agencies,<br>Crisis Management<br>Training, Threat and<br>Vulnerability<br>Assessment. |

KNIGHT000151

GAB Robbins North America, Inc.

560 Peoples Plaza,
Suite 215
Newark, Delaware
19702

Gail Oliver
(302) 838-1684 Direct
(302) 521-4985 Cell
(302) 838-1685 Fax
oliverg@gabrobtjins.com

Claims Investigative
Services, Appraisal
Services, Emergency
Claims Services and
Loss Call Center
Operations.

Marsh, Inc. (Reputational Risk & Crisis Management Group)
(Formerly Kroll Associates)

1166 Avenue of the
Americas
New York, NY 10036

Ilene Merdinger
(212) 345-1690 Direct
(914) 924-1040 Cell
(212) 948-8638 Fax
ilene.merdinger@marsh.com

Larry Walsh
(212) 345-2765 Direct
(917) 841-8839 Cell
(212) 948-8638 Fax
larry.walsh@marsh.com

1255 23rd Street NW
Washington, D.C. 20037

Robert Wilkerson
(202) 263-7920 Direct
(202) 256-4931 Cell
(202) 263-7900 Fax
robert.wilkerson@marsh.com

Crisis Management
and Investigative
Services

ENDORSEMENT No. 7

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

#### Duties in the Event of an Occurrence, Claim or Suit and
#### Schedule A - Approved Crisis Management Firms

Solely as respects coverage provided by Section II INSURING AGREEMENT - CRISISRESPONSE[SM] AND EXCESS CASUALTY CRISIS FUND®, the following conditions are added to Section VI. Conditions, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit:

You must report any Crisis Management Event to us within twenty-four (24) hours of the time that a Key Executive  first becomes aware of an Occurrence that gives rise to a Crisis Management Event or as soon as practicable to be eligible for the advancement of CrisisResponse Costs and the payment of Crisis Management Loss.

Notice of a Crisis Management Event may be given by calling 1-877-244-3100.   If notice is given by telephone, written notice will be given as soon as practicable thereafter.  Written notice should include:

1.  how, when and where the Crisis Management Event is taking or took place;

2.  the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the Crisis Management Event.

Written notice should be mailed, e-mailed, or delivered to:

    Chartis Claims, Inc.
    Excess Casualty Claims Department
    Segmentation Unit
    175 Water Street, 22nd Floor
    New York, NY  10038
    Fax: (866) 743-4376
    E-mail: excessfnol@chartisinsurance.com

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

*Vincent Catignano*

Authorized Representative or
Countersignature (Where Applicable)

KNIGHT000153

## SCHEDULE A

THE FOLLOWING PUBLIC RELATIONS FIRMS ARE APPROVED CRISIS RESPONSE VENDORS:

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **Abernathy MacGregor Group** | | | |
| 501 Madison Avenue<br>New York, NY 10022 | James T. MacGregor<br>(212) 371-5999 Office<br>(646) 236-3271 Cell<br>(212) 752-0723 Fax<br>(212) 343-0818 Home<br>jtm@abmac.com | (917) 912-6378 | Public Relations,<br>Crisis Management<br>and Threat &<br>Vulnerability<br>Assessment. |
| | Rhonda Barnat<br>(212) 371-5999 Office<br>(917) 912-6378 Cell<br>(212) 752-0723 Fax<br>(646) 478-8740 Home<br>rb@abmac.com | | |
| 611 W. Sixth Street,<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>(213) 630-6550 Office<br>(213) 489-3443 Cell<br>(213) 489-3443 Fax<br>(818) 957-5650 Home<br>(818) 541-0954 Home Fax<br>idc@abmac.com | (818) 750-4392<br>(917) 940-3476 | |
| **Ann Barks Public Relations (Southeastern United States)** | | | |
| 696 Cross Gates<br>Boulevard<br>Slidell, LA 70461 | Ann W. Barks<br>(985) 847-0750 Direct<br>(985) 290-8304 Cell<br>abarkspr@bellsouth.net | (985) 290-8304 | Public Relations and<br>Crisis Management |
| **Bright Light Marketing Group (Hawaii Only)** | | | |
| 1001 Bishop Street,<br>Suite 900<br>Honolulu, Hawaii<br>96813-3429 | Charlene Lo Chan<br>(808) 275-3007 Direct<br>(808) 524-6441 Office<br>(808) 781-7733 Cell<br>(808) 524-8115 Fax<br>charlene@brightlightmarketing.com | | Public Relations and<br>Crisis Management |
| **Dix & Eaton** | | | |
| Dix & Eaton<br>200 Public Square<br>Suite 1400<br>Cleveland, OH<br>44114-2316 | Matt Barkett<br>(216) 241-3073 Direct<br>(216) 241-3073 Cell<br>mbarkett@dix-eaton.com | (216) 241-3073 | Public Relations,<br>Crisis Management<br>and Threat &<br>Vulnerability<br>Assessment |

KNIGHT000154

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **Edelman** | | | |
| 200 E. Randolf Drive Chicago, IL 60601 | William R. Keegan (312) 240-2624 Direct (312) 240-3000 Office (312) 240-2900 Fax (312) 927-8424 Cell bill.keegan@edelman.com | (312) 927-8424 | Public Relations, Crisis Management and Threat & Vulnerability Assessment |
| **Edward Howard and Company** | | | |
| 1100 Superior Ave., Suite 1600 Cleveland, OH 44114 | Wayne Hill (216) 298-4630 Direct (216) 781-2400 Office (216) 408-1211 Cell whill@edwardhoward.com | (216) 408-1211 | Public Relations, Crisis Management and Threat & Vulnerability Assessment |
| | Kathy Cupper Obert (216) 298-4620 Direct (216) 781-2400 Office (330) 730-5500 Cell kobert@edwardhoward.com | | |
| | Chuck Vella (937) 223-7386 Direct (973) 228-1141 Office (937) 603-5795 Cell cvella@edwardhoward.com | | |
| | Allen Pfenninger (216) 298-4653 Direct (216) 781-2400 Office (216) 554-4455 Cell apfenninger@edwardhoward.com | | |
| **Fleishman-Hilliard International Communications, Inc.** | | | |
| John Hancock Center 875 N. Michigan Avenue, Suite 3300 Chicago, IL 60611-1901 | David Saltz (312) 751-3530 Direct (312) 751-8878 Office (312) 203-2114 Cell (312) 751-8191 Fax david.saltz@fleishman.com | | Public Relations, Crisis Management and Threat & Vulnerability Assessment |
| 1615 L Street NW, Suite 1000 Washington, D.C. 20036-5610 | Benjamin (Ben) Kincannon (617) 69200501 Office (508) 314-4154 Cell (617) 267-5905 Fax ben.kincannon@fleishman.com | | |
| **Levick Strategic Communications, LLC** | | | |
| 1900 M Street NW Washington, D.C. 20036 | Gene Grabowski (202) 973-1351 Direct (202) 270-6560 Cell (202) 973-1301 Fax ggrabowski@levick.com | (202) 270-6560 | Public Relations, Crisis Management and Threat & Vulnerability Assessment |

83687 (1/10)
AH2831

KNIGHT000155

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **Lexicon Communications Corp.** | | | |
| 520 Bellmore Way Pasadena, CA 91103 | Steven B. Fink (626) 683-9333 Direct (626) 683-9200 Ext. 225 Office (626) 253-1519 Cell (626) 449-7659 Fax sfink@lexiconcorp.com | (626) 683-9333 | Public Relations, Crisis Management and Threat & Vulnerability Assessment |
| **Marsh, Inc. (Reputational Risk & Crisis Management Group f/k/a Kroll Associates)** | | | |
| 1166 Avenue of the Americas New York, NY 10036 | Ilene Merdinger (212) 345-1690 Direct (914) 924-1040 Cell (212) 948-8638 Fax ilene.merdinger@marsh.com  Larry Walsh (212) 345-2765 Direct (917) 841-8839 Cell (212) 948-8638 Fax larry.walsh@marsh.com | (914) 924-1040 | Public Relations, Crisis Management and Threat & Vulnerability Assessment |
| 1255 23rd Street NW Washington, D.C. 20037 | Robert Wilkerson (202) 263-7920 Direct (202) 256-4931 Cell (202) 263-7900 Fax robert.wilkerson@marsh.com | | |
| **Robinson Lerer & Montgomery** | | | |
| 1345 Avenue of the Americas 4th Floor New York, NY 10105 | Michael Gross (646) 805-2003 Direct (646) 805-2000 Office (917) 853-0620 Cell (718) 788-5281 Home mgross@rlmnet.com  Patrick S. Gallagher (646) 805-2007 Direct (646) 805-2000 Office (917) 328-9333 Cell (646) 805-2829 Fax (914) 232-4256 Home pgallagher@rlmnet.com | (646) 805-2000 | Public Relations, Crisis Management and Threat & Vulnerability Assessment |
| **Sard Verbinnen & Co.** | | | |
| 630 Third Avenue, 9th Floor New York, NY 10017 | George Sard (212) 687-8080 Office (212) 687-8344 Fax gsard@sardverb.com | (917) 750-4392 | Public Relations, Crisis Management and Threat & Vulnerability Assessment |

KNIGHT000156

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|

## Sard Verbinnen & Co. (cont.)

190 S. LaSalle Street,
Suite 1600
Chicago, IL
60603

**Brad Wilks**
(312) 895-4740 Direct
(312) 895-4700 Office
(312) 895-4747 Fax
bwilks@sardverb.com

275 Battery Street,
Suite 480
San Francisco, CA
94111

**Paul Kranhold**
(415) 618-8750 Office
(415) 568-9580 Fax
pkranhold@sardverb.com

## Sitrick and Company, Inc.

655 Third Avenue,
22nd Floor
New York, NY 10017

**Jeffrey S. Lloyd**
(212) 660-6393 Direct
(212) 573-6100 Office
(310) 963-2850 Cell
(212) 573-6165 Fax
jeff_lloyd@sitrick.com

(310) 358-1011

Public Relations,
Crisis Management
and Threat &
Vulnerability
Assessment

1840 Century Park
East, Suite 800
Los Angeles, CA
90067

**Michael S. Sitrick**
(310) 788-2850 Direct
(310) 788-2855 Fax
mike_sitrick@sitrick.com

## The Rogers Group

1875 Century Park
East, Suite 300
Los Angeles, CA 90067

**Lynne M. Doll**
(310) 552-4108 Direct
(310) 552-6922 Office
(310) 552-9052 Fax
ldoll@rogerspr.com

(310) 552-6922

Public Relations,
Crisis Management
and Threat &
Vulnerability
Assessment

## The Torrenzano Group

The Lincoln Building
60 East 42nd Street,
Suite 2112
New York, NY
10165-2112

**Richard Torrenzano**
(212) 681-1700 Ext. 111 Direct
(212) 681-6961 Fax
richard@torrenzano.com

**Edward A. Orgon**
(212) 681-1700 Ext. 102 Direct
(917) 539-4000 Cell
(212) 681-6961 Fax
ed@torrenzano.com

Public Relations,
Crisis Management
and Threat &
Vulnerability
Assessment

KNIGHT000157

THE FOLLOWING NON-PUBLIC RELATIONS FIRMS ARE APPROVED CRISIS RESPONSE VENDORS:

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
| --- | --- | --- | --- |
| **Coventry Health Care, Inc.** | | | |
| 3200 Highland Ave, Downers Grove, IL 60515 | Michael Lacroix (914) 223-4463 Cell (786) 513-7690 Fax jxlacroix@cvty.com | (888) 552-5378 | Psychological Counseling, Medical Case Management, Medical Cost Projection and Containment. |
| **D.A.R., Inc.** | | | |
| 4 Iris Drive Scarborough, Maine 04074 | David W. Hunt (207) 415-0735 Direct (207) 883-0493 Home (207) 883-2436 Fax dhunt12348@aol.com | (207) 415-0735 | Crisis Management, Global Investigative Services, Access to National & International Intelligence Agencies, Crisis Management, Threat and Vulnerability Assessment. |
| **GAB Robbins North America, Inc.** | | | |
| 560 Peoples Plaza, Suite 215 Newark, Delaware 19702 | Gail Oliver (302) 838-1684 Direct (302) 521-4995 Cell (302) 838-1685 Fax oliverg@gabrobbins.com | | Claims Investigative Services, Appraisal Services, Emergency Claims Services and Loss Call Center Operations. |
| **Lombardi Associates** | | | |
| 277 Fairfield Road, Suite 305A Fairfield, NJ 07004 | Anthony Nastasi (973) 271-8928 Direct (800) 550-0095 Office (310) 552-9052 Fax anthony.nastasi@lombardiassociates.com | (877) 715-2440 | Psychological Counseling, Medical Case Management, Medical Cost Projection and Containment. |
| **Meagher & Geer, P.L.L.P.** | | | |
| 33 S. Sixth Street, Suite 4400 Minneapolis, MN 55402 | Russell D. Melton (612) 371-1317 Direct (612) 338-0661 Office (612) 338-8384 Fax (612) 964-1882 Cell rmelton@meagher.com | (612) 347-9118 | Crisis Management and Threat & Vulnerability Assessment |

83687 (1/10)
AH2831

KNIGHT000158

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|

## T. J. Russo Consultants (Nationwide)

| | | | |
|---|---|---|---|
| 99 Hillside Avenue, Suite X Williston Park, NY 11596 | Michael W. Russo (516) 294-8644 Ext. 15 Direct (516) 747-1009 Fax (516) 456-3900 Cell mwrusso123@aol.com | (516) 456-3900 | Fire Investigation and Analysis Services. |

KNIGHT000159

ENDORSEMENT No. 8

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no.: BE    13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

## LOUISIANA AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "First Named Insured" and "Insured" mean the Named Corporation, Named Organization, Named Entity, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

The following is added and supersedes any provision to the contrary:

A.   The First Named Insured may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

Within thirty days following such cancellation the insurer shall pay to the insured or to the person entitled thereto as shown by the insurer's records, any unearned portion of any premium paid on the policy as computed on the customary short rate or as otherwise specified in the policy and any unearned commission. If no premium has been paid on the policy, the insured shall be liable to the insurer for premium for the period during which the policy was in force.

B.   CANCELLATION OF NEW POLICIES IN EFFECT FOR LESS THAN SIXTY (60) DAYS

If this policy has been in effect for less than sixty (60) days and is not a renewal, the Insurer may cancel this policy for any reason, by mailing or delivering to the First Named Insured written notice of cancellation at least sixty (60) days before the effective date of cancellation.

C.   CANCELLATION OF RENEWAL POLICIES AND NEW POLICIES IN EFFECT FOR SIXTY (60) DAYS OR MORE

If this policy has been in effect for sixty (60) days or more, or is a renewal of a policy the Insurer issued, the Insurer may cancel only for one or more of the following reasons:

(1)    Nonpayment of premium;

(2)    Fraud or material misrepresentation made by, or with the knowledge of, the First Named Insured or Other Insured(s) in obtaining the policy, continuing the policy, or in presenting a claim under a policy;

(3)    Activities or omissions by the First Named Insured which change or increase any hazard insured against, (including a failure to comply with loss control recommendations);

(4)    Change in the risk which increases the risk of loss after the Insurer issued or renewed this policy, including an increase in exposure due to regulation, legislation, or court decision;

(5)    Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize the solvency of the Insurer or would place the Insurer in violation of the insurance laws of this or any other state;

(6)    The violation or breach of any policy terms or conditions by the Insured or Other Insured(s); or

(7)    Any other reasons that are approved by the Commissioner of Insurance.

78807 (3/03)                                                                   1
AH1107

The Insurer will mail or deliver written notice of cancellation under item C to the First Named Insured at least.

   (a)    Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

   (b)    Thirty (30) days before the effective date of cancellation if the insurer cancels for a reason described in C.(2) through (7) above.

D.    WHEN A MORTGAGE HOLDER IS SHOWN IN THE POLICY

If the insurer cancels this policy, the Insurer will give written notice to the mortgage holder at least thirty (30) days before the effective date of cancellation or ten (10) days written notice of cancellation if cancellation is for nonpayment of premium. Like notice must also be delivered or mailed to each mortgagee, pledgee or other known person shown in the policy to have an interest in any loss which may occur.

E.    THE FOLLOWING IS ADDED:

NONRENEWAL

   1.    If the Insurer decides not to renew this policy, the Insurer will mail or deliver written notice of nonrenewal to the First Named Insured, at least sixty (60) days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

   2.    The Insurer need not mail or deliver this notice if:

      (a)    The Insurer or another company within the same insurance group has offered to issue a renewal policy; or

      (b)    The First Named Insured has obtained replacement coverage or has agreed in writing to obtain replacement coverage.

   3.    Any notice of nonrenewal will be mailed or delivered to the First Named Insured at the last mailing address known to the Insurer. If notice is mailed, proof of mailing will be sufficient proof of notice.

   4.    Such notice shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE

ENDORSEMENT No. 9

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no: BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy With CrisisResponse®

Aircraft Products and Grounding Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Aircraft Products and Grounding

This insurance does not apply to any liability included within the Products-Completed Operations Hazard relating to:

1. aircraft or any part thereof, and any ground support or control equipment or any part thereof used therewith whether manufactured by the Insured or anyone else;

2. any goods, products, parts, or materials manufactured, sold, handled or distributed by the Insured or any services provided or recommended by the Insured or by others trading under the Insured's name used by the Insured or others in the manufacture, repair, or operation of any aircraft or part thereof, whether such aircraft or part is manufactured by the Insured or anyone else; or

3. any articles furnished by the Insured, its predecessors, or by others trading under the Insured's name and installed by the Insured or others in any aircraft or part thereof or used in connection with any aircraft or part thereof or for spare parts for any aircraft or part thereof including but not limited to ground handling tools and equipment, training aids, instructions, manuals, blueprints, engineering or other advice or service relating to any aircraft or part thereof, whether manufactured by the Insured or anyone else, and any labor relating to such aircraft or part thereof or articles.

For the purpose of this endorsement, aircraft includes missiles, spacecraft and launch vehicles.

In addition, this insurance does not apply to Bodily Injury or Property Damage arising out of the Grounding of any aircraft whether manufactured by the Insured or anyone else.

Section VII. DEFINITIONS is amended to include the following additional definition:

Grounding means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft, or any part thereof sold, manufactured, handled or distributed by the Insured or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders or drawings of the Insured or with tools, machinery or other equipment furnished to such persons or organizations by the Insured, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations. A Grounding will be deemed to commence on the date of an Occurrence which discloses such defect, fault,

86428 (2/09)                           Page 1 of 2
AH2547

or condition or on the date an aircraft is first withdrawn from service on account of such defect, default or condition, whichever occurs first.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_Authorized Representative or Countersignature (Where Applicable)_

KNIGHT000163

ENDORSEMENT No. 10

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Architects and Engineers Professional Liability Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Architects and Engineers

This insurance does not apply to any liability arising out of any act, error or omission, malpractice or mistake committed or alleged to have been committed by or on behalf of the Insured in the performance of architectural or engineering services, including but not limited to:

1.  the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications; and

2.  supervisory, inspection or engineering services.

It is understood this exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

86448 (6/05)
AH1669

KNIGHT000164

ENDORSEMENT No. 11

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse[SM]

Automobile Liability Follow-Form Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Automobile Liability

This insurance does not apply to any liability arising out of the ownership, maintenance, operation, use or entrustment to others of any Auto owned or operated by or rented or loaned to any Insured.  Use includes operation and loading or unloading of any Auto.

However, this exclusion will not apply if coverage is provided for Bodily Injury or Property Damage by Scheduled Underlying Insurance.

Coverage under this policy for such Bodily Injury or Property Damage will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

Authorized Representative
or Countersignature (Where Applicable)

80398 (07/02)
AH0885

ENDORSEMENT No. 12

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE       13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Bacteria Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

**Bodily Injury, Property Damage or Personal Injury and Advertising Injury** or any other loss, injury, damage, cost or expense, including, but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by bacteria.

This exclusion applies regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supersede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

90985 (5/06)
AH1902

ENDORSEMENT No. 13

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE    13074559

Issued to:  KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Cross Suits Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following exclusion:

Cross Suits

This insurance does not apply to Bodily Injury, Property Damage, or Personal Injury and Advertising Injury to a Named Insured that is caused, in whole or in part, by any other Named Insured.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

80411 (1/04)
AH1268

KNIGHT000167

ENDORSEMENT No. 14

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE      13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Discrimination Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Discrimination

This insurance does not apply to any liability arising out of discrimination based upon age, gender, race, color, national origin, creed, religion, sexual orientation, marital status, veterans status, pregnancy, sickness, disease, disability, physical capabilities, physical characteristics, physical condition, mental capabilities, mental condition, or any other similar category or class, committed or alleged to have been committed by an Insured, or by anyone for whom an Insured is actually or allegedly responsible, whether intentional or unintentional, whether the discrimination is direct or indirect.

No inference shall be made from the omission of a category or class in the above paragraph that coverage applies to that category or class.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

86558 (8/04)
AH1454

ENDORSEMENT No. 15

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE    13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse<sup>SM</sup>

Electromagnetic Fields Exclusion

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Electromagnetic Fields

This insurance does not apply to any liability arising from Electromagnetic Fields generated by the Insured's transmission lines, distribution lines or other equipment or facilities, if such Electromagnetic Fields are a result of the Insured's normal operations of generation, transmission or distribution of electricity.

Section VII. DEFINITIONS is amended to include the following additional definition:

Electromagnetic Fields means electric and magnetic fields generated by a varying electrical current through any medium including but not limited to wires and whether or not intended for the purpose of conducting electricity.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

80418 (07/02)
AH0905

KNIGHT000169

ENDORSEMENT No. 16

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE      13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Employers' Liability / Stop Gap Limitation Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Employers' Liability

This insurance does not apply to Bodily Injury to any employee of the Insured arising out of and in the course of the employee's employment by the Insured.

However, if insurance for such Bodily Injury is provided by a policy listed in the Scheduled Underlying Insurance:

1.   The above exclusion shall not apply; and

2.   Coverage under this policy for such Bodily Injury will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

82616 (5/06)
AH1887

KNIGHT000170

ENDORSEMENT No. 17

This endorsement, effective 12.01 AM:  March 31, 2010

Forms a part of policy no.: BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Employee Benefits Liability Limitation Claims Made Version Endorsement

NOTICE:  Please read this endorsement carefully.  This endorsement provides coverage on a  claims made basis.  Except to the extent as may otherwise be provided herein, the coverage of this insurance is generally limited to liability for only those claims that are first made during the Policy Period and reported in writing to us.

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Employee Benefits Liability

This insurance does not apply to any liability arising out of:

1. any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

2. any act, error or omission committed by or on behalf of the Insured solely in the performance of one or more of the following administrative duties or activities:

   a. giving counsel to employees with respect to a Plan;

   b. interpreting a Plan;

   c. handling of records in connection with a Plan;

   d. effecting enrollment, termination or cancellation of employees under a Plan; or

   e. any claim against an Insured solely by reason of his, her or its status as an administrator, the Plan or you as sponsor of the Plan.

However, this exclusion will not apply only if and to the extent that coverage for such liability is provided by Scheduled Underlying Insurance.

Solely as respects this endorsement, this policy will only provide coverage for a Claim made against the Insured during the Policy Period:

   a) If the insurance provided by Scheduled Underlying Insurance provides coverage for Occurrences occurring on or after a specified Retroactive Date for a claim for damages because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury first made in writing against any Insured in accordance with Paragraph b) below during the Policy Period or any Extended Reporting Period we provide and written notice is received by us during the Policy Period or Extended Reporting Period (if applicable).

83073 (09/03)                              Page 1 of 2
AH1228

KNIGHT000171

b) A Claim by any person or organization seeking damages will be deemed to have been made at the earlier of the following times:

1. When notice of such Claim is received and recorded by any Insured in writing and reported to us during the Policy Period or any applicable extended reporting period; or

2. When we make settlement in accordance with Paragraph a) above.

Notwithstanding the above, this insurance shall not apply to:

1. any Claim alleging or arising out of an Occurrence committed on or after the Retroactive Date set forth in the Schedule Underlying Insurance, if the Insured, an officer, manager in your risk management, insurance or legal department or an employee who was authorized by you to give or receive notice of an Occurrence, knew as of the Continuity Date shown above that such Occurrence could result in a Claim.

2. any Claim alleging or arising out the same Occurrence or series of continuous, repeated or related Occurrences or alleging the same or similar facts, alleged or contained in any Claim which has been reported, or any Occurrence of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

3. any Claim alleging or arising out of any Claim or Suit pending as of the Continuity Date; or alleging or arising out of or relating to any fact, circumstance, situation or Occurrence alleged in such Claim or Suit.

If Scheduled Underlying Insurance does not contain a Continuity Date, the Continuity Date will be the Retroactive Date.

Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

Section VII. DEFINITIONS is amended to include the following additional definitions:

Claim means a written demand upon the Insured for compensatory damages or services and shall include the service of Suit or institution of arbitration proceedings against the Insured.

ERISA means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a Plan is subject.

Plan means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of ERISA or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1. a welfare plan, as defined in ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. a pension plan as defined in ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

3. a combination of 1. and 2. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Authorized Representative
or Countersignature (Where Applicable)

ENDORSEMENT No. 18

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no: BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Employers' Liability Limitation Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Employers' Liability

This insurance does not apply to Bodily Injury to any employee of the Insured arising out of and in the course of the employee's employment by the Insured.

However, if insurance for such Bodily Injury is provided by a policy listed in the Scheduled Underlying Insurance:

1.   This exclusion shall not apply; and

2.   Coverage under this policy for such Bodily Injury will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

83071 (11/03)
AH1338

KNIGHT000173

ENDORSEMENT No. 19

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no:  BE    13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Foreign Liability Limitation Endorsement
(With Total Terrorism Exclusion Applicable To Specified Countries)

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Foreign Liability

This insurance does not apply to Bodily Injury, Property Damage, or Personal Injury and Advertising Injury that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such Bodily Injury, Property Damage, or Personal Injury and Advertising Injury is provided by a policy listed in the Scheduled Underlying Insurance:

1.  This exclusion shall not apply; and

2.  Coverage under this policy for such Bodily Injury, Property Damage, or Personal Injury and Advertising Injury will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

Not withstanding 1. and 2. above, this insurance does not apply to Loss, injury, damage, claim or Suit, arising directly or indirectly as a result of or in connection with Terrorism that occurs in the following countries:

Afghanistan, Algeria, Central African Republic, Chad, Colombia, India, Iraq, Lebanon, Mauritania, Morocco, Nigeria, Pakistan, Palestinian Authority, Philippines, Somalia, and Yemen.

It is understood that to the extent any coverage may otherwise be provided for these above listed countries under this policy or any of its endorsements, the provisions of this exclusion will supercede.

Section VII. DEFINITIONS is a amended to include the following additional definition:

Terrorism means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

83078 (05/09)
AH2527

1 of 2

KNIGHT000174

1.  A government;

2.  The civilian population of a country, state or community; or

3.  To disrupt the economy of a country, state or community.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (Where Applicable)

83078 (05/09)
AH2527

2 of 2

KNIGHT000176

ENDORSEMENT No. 20

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no.:  BE      13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Fungus Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

This insurance does not apply to:

Bodily Injury, Property Damage or Personal Injury and Advertising Injury or any other loss, injury, damage, cost or expense, including, but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    a.  Any Fungus(i), Molds(s), mildew or yeast, or

    b.  Any Spore(s) or toxins created or produced by or emanating from such Fungus(i), Mold(s), mildew or yeast, or

    c.  Any substance, vapor , gas, or other emission or organic or inorganic body or substance produced by or arising out of any Fungus(i), Mold(s), mildew or yeast, or

    d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any Fungus(i), Mold(s), mildew, yeast, or Spore(s) or toxins emanating therefrom.

Paragraphs a., b., c. and d. above apply regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

Section VII. DEFINITIONS is amended to include the following additional definitions:

Fungus(i) includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms.

Mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

Spore(s) means any dormant or reproductive body produced by or arising or emanating out of any Fungus(i), Mold(s), mildew, plants, organisms or microorganisms.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

82449 (06/03)
AH1257

Page 1 of 1

KNIGHT000176

ENDORSEMENT No. 21

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Lead Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Lead

This insurance does not apply to any liability arising out of lead or the lead content of products.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supersede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

86471 (2/06)
AH1891

KNIGHT000177

ENDORSEMENT No. 22

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE    13074559

Issued to:  KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy With CrisisResponse®

Marine Liability Limitation Endorsement
(Including Jones Act & U.S. Longshoreman and Harbor Workers)

This policy is amended as follows:

A.  Solely as respects watercraft, Section V. Exclusions, Paragraph A. is deleted in its entirety.

B.  Section V. Exclusions is amended to include the following additional exclusion:

Marine

This insurance does not apply to any marine liability which includes, but is not limited to, the following:

| | |
|---|---|
| Charterers Liability | Protection and Indemnity Liability |
| Safe Berth Legal Liability | Ship Builders Liability |
| Towers Liability | Stevedores Liability |
| Ship Repairers Legal Liability | Wharfingers Liability |
| Terminal Operation Liability | U.S. Longshoreman and Harbor Workers |
| Jones Act | |

However, if insurance for marine liability is provided by Scheduled Underlying Insurance:

1. This exclusion shall not apply to marine liability coverage for Bodily Injury or Property Damage; and

2. Coverage under this policy for such Bodily Injury or Property Damage will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will not be broader than the coverage provided by Scheduled Underlying Insurance.

Except, however, this insurance does not apply to, and nothing contained in this endorsement will operate to provide any coverage with respect to:

1. Property Damage to any property in the Insured's care, custody or control; or

2. The cost or expense of, or incidental to, the removal of the wreck of any vessel.

even if such coverage is provided by Scheduled Underlying Insurance.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

86411 (8/04)
AH1416

KNIGHT000178

ENDORSEMENT No. 23

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE    13074559

Issued to:  KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### MTBE and Other Fuel Oxygenates Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of methyl tertiary-butyl ether ("MTBE") and other fuel oxygenates including, but not limited to, the following:

1.  ether oxygenates, such as ethyl tertiary-butyl ether ("ETBE"), tertiary-amyl methyl ether ("TAME"), tertiary-amyl ethyl ether ("TAEE"), diisopropyl ether ("DIPE"), and dimethyl ether ("DME"); and

2.  alcohol oxygenates, such as ethanol (ethyl alcohol), methanol (methyl alcohol), and tertiary-butyl alcohol ("TBA").

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

80449 (02/03)
AH1040

KNIGHT000179

ENDORSEMENT No. 24

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE      13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Professional Liability Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Professional Liability

This insurance does not apply to any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the Insured or any person for whom the Insured is legally responsible.

It is understood this exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

83093 (05/05)
AH1668

KNIGHT000180

ENDORSEMENT No. 25

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no.: BE     13074559

Issued to:  KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Radioactive Matter Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Radioactive Matter

This insurance does not apply to any liability arising out of radioactive matter or any form of radiation.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

83094 (09/03)
AH1247

KNIGHT000181

ENDORSEMENT No. 26

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE      13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse ®

Silica Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of Silica, Silica fiber(s) or Silica Dust or any product(s) containing Silica, Silica fiber(s) or Silica Dust.

Section VII. DEFINITIONS is amended to include the following additional definitions:

Silica means:

1.   The substance commonly known as Silica; and

2.   Any substance or product which has the same or substantially similar chemical formulation, structure or function as Silica, by whatever name manufactured, formulated, structured, sold or distributed.

Silica Dust means:

1.   Dust comprising of Silica only; and

2.   Dust comprising of Silica mixed with other dust or fiber(s) including, but not limited to, asbestos fibers.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

80479 (02/03)
AH1061

KNIGHT000182

ENDORSEMENT No. 27

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse[SM]

Sexual Abuse or Molestation Exclusion

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Sexual Abuse or Molestation

This insurance does not apply to any liability arising out of:

1.  The actual or alleged abuse or molestation by anyone of any person while in the care, custody or control of any Insured; or

2.  The negligent employment, investigation, supervision, reporting to the proper authorities or failure to so report, or retention of a person for whom any Insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

*Vincent Catapano*

..................................................................
Authorized Representative
or Countersignature (Where Applicable)

80478 (07/02)
AH0959

KNIGHT000183

ENDORSEMENT No. 28

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE      13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### Testing or Consulting Errors and Omissions Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Testing or consulting**

This insurance does not apply to Bodily Injury, Property Damage, or Personal Injury and Advertising Injury arising out of:

1.  An error, omission, defect or deficiency in:

    a.  any test performed; or

    b.  an evaluation, a consultation or advice given,

    by or on behalf of any Insured;

2.  The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3.  An error, omission, defect or deficiency in experimental data or the Insured's interpretation of such data.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

89485 (6/05)
AH1705

KNIGHT000184

ENDORSEMENT No. 29

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse<sup>SM</sup>

Time Element Pollution
Self-Insured Retention Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS, Paragraph Q. Pollution is deleted in its entirety and replaced by the following:

Pollution

This insurance does not apply to:

1.  Any Bodily Injury, Property Damage or Personal Injury and Advertising Injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants anywhere at any time;

2.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants; or

3.  Any loss, cost or expense arising out of any claim or Suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Pollutants.

However, Paragraph 1 of this exclusion will not apply to Bodily Injury or Property Damage arising out of any discharge, dispersal, seepage, migration, release or escape of Pollutants that meets all of the following conditions:

i.  It was abrupt and neither expected nor intended by the Insured.  This condition does not apply to a non-routine incident where such discharge, dispersal, seepage, migration, release or escape of Pollutants was a result of an attempt by the Insured to mitigate or avoid a discharge, dispersal, seepage, migration, release or escape of Pollutants that was itself abrupt and neither expected nor intended by the Insured and where substantial third party Bodily Injury or Property Damage could have occurred;

ii.  It commenced on a demonstrable, specific date during the Policy Period;

iii.  Its commencement became known to the Insured within (3) calendar days;

iv.  Its commencement was reported in writing to us within (30) calendar days of becoming known to the Insured; and

v.  Reasonable effort was expended by the Insured to terminate the discharge, dispersal, seepage, migration, release or escape of Pollutants as soon as conditions permitted.

However, nothing contained in this endorsement will operate to provide any coverage with respect to:

i.  Any site or location principally used by the Insured, or by others on the Insured's behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

ii.  Any fines or penalties;

KNIGHT000185

iii. Any clean up loss, cost or expense arising out of any governmental request, demand, order or statutory or regulatory requirement. However, this provision iii will not apply to third party clean up loss, cost or expense otherwise covered by this endorsement that are also the subject of a governmental request, demand, order or statutory or regulatory requirement;

iv. Acid rain or acid runoff;

v. Clean-up, removal, containment, treatment, detoxification or neutralization of Pollutants situated on premises which the Insured owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said Pollutants; or

vi. Any Bodily Injury, Property Damage or Personal Injury and Advertising Injury, or any loss, cost or expense arising out of any discharge, dispersal, seepage, migration, release or escape of Pollutants in knowing violation of or non compliance with governmental permits.

For the purpose of this endorsement only, the SELF-INSURED RETENTION in ITEM 5. of the DECLARATIONS, is amended to include the following additional provision:

$1,000,000 Each Occurrence (As respects all damages arising out of any discharge, dispersal, seepage, migration, release or escape of Pollutants covered under this endorsement). This Self-Insured Retention will not be reduced by Defense Expenses.

The above Self-Insured Retention applies whether or not there is any available Scheduled Underlying Insurance or Other Insurance. If there is Scheduled Underlying Insurance or Other Insurance applicable to a Loss, amounts received through such Scheduled Underlying Insurance or Other Insurance for payment of the Loss may be applied to reduce or exhaust the above Self-Insured Retention if such policies were purchased by the Named Insured to specifically apply as underlying insurance to this policy. However, in no event will amounts received through such Scheduled Underlying Insurance or Other Insurance for the payment of Defense Expenses reduce the above Self-Insured Retention.

For the purpose of this endorsement only, Section III. DEFENSE PROVISIONS Paragraphs A. and D. are deleted in their entirety and Paragraph A. is replaced by the following:

We will have no duty to defend any Suit against the Insured. We will, however, have the right, but not the duty, to participate in the defense of any Suit and the investigation of any claim to which this endorsement may apply. If we exercise this right, we will do so at our own expense.

For the purpose of this endorsement only, Section VII. DEFINITIONS is amended to include the following additional definitions:

Defense Expenses means a payment allocated to defend a specific Suit, including but not limited to:

1. Attorneys' fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or Suit;

4. Court costs taxed against the Insured in any Suit;

5. Pre-judgment interest awarded against the Insured; and

6. Interest that accrues after entry of judgment.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Authorized Representative
or Countersignature (Where Applicable)

KNIGHT000186

ENDORSEMENT No. 30

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:  KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

## Cancellation Clause Amended Endorsement
### (Credit Rating Trigger)

**TO THE EXTENT ANY PROVISION OF THIS ENDORSEMENT CONFLICTS WITH ANY PROVISION OF THE POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERSEDE.**

In consideration of the premium charged, it is hereby understood and agreed the Cancellation Condition of this policy is amended by adding the following provision to the end thereof:

> Notwithstanding the foregoing, in the event that a financial strength rating is issued (1) below A- by A.M. Best Co., or (2) below BBB by Standard & Poor's Ratings Services, for the insurance company providing this insurance (hereinafter "Credit Rating Downgrade"), this policy may be canceled by the first Named Insured referenced in Item 1. of the Declarations by mailing written prior notice to us or by surrender of this policy to us or our authorized agent.  If this policy is canceled by the first Named Insured referenced in Item 1. of the Declarations within 30 days after such Credit Rating Downgrade, the insurance company providing this insurance shall retain the pro rata proportion of the premium herein.

All other terms, conditions, definitions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

100085 (9/08)
AH2463

ENDORSEMENT No. 31

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no: BE    13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Retained Limit Amendatory Endorsement

This policy is amended as follows:

Solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

1.  The DECLARATIONS, ITEM 5, SELF INSURED RETENTION is deleted in its entirety.

2.  Section IV. LIMITS OF INSURANCE, Paragraphs B., G., H. and M. are deleted in their entireties and replaced by the following:

   B.  The General Aggregate Limit is the most we will pay for all damages covered under this policy except:

      1.  damages included within the Products-Completed Operations Hazard; and

      2.  damages because of Bodily Injury or Property Damage to which this insurance applies, caused by an Occurrence and resulting from the ownership, maintenance or use of an Auto.

   G.  If the total applicable Retained Limit(s) listed in the Schedule of Retained Limits are reduced or exhausted by payment of Loss to which this policy applies, we will:

      1.  in the event of reduction, pay in excess of the remaining underlying Retained Limits; or

      2.  in the event of exhaustion of the underlying Retained Limits, continue in force as underlying insurance.

   H.  Defense Expenses will be in addition to the applicable Limits of Insurance of this policy.  Provided, however, that if the amount of applicable Retained Limit over which this policy applies immediately in excess is specifically designated in the Schedule of Retained Limits as including Defense Expenses, then solely with respect to coverage afforded by this policy that is subject to such Retained Limit, such Defense Expenses will reduce the applicable Limits of Insurance of this policy.

   M.  We will not make any payment under this policy unless and until the total applicable Retained Limit(s) have been exhausted by the payment of Loss to which this policy applies and any applicable Other Insurance have been exhausted.

      When the amount of Loss has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the Insured the amount of such Loss falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

3.  Section III. DEFENSE PROVISIONS, Paragraph A. is deleted in its entirety and replaced by the following:

   III.  DEFENSE PROVISIONS

   A.  We will have the right and duty to defend any Suit against the Insured that seeks damages for Bodily Injury, Property Damage or Personal Injury and Advertising Injury covered by this policy, even if

KNIGHT000188

the Suit is groundless, false or fraudulent when the applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of Loss to which this policy applies.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

4. Section V. EXCLUSIONS, Paragraphs I.1., I.2., I.3., and M. are deleted in their entireties.

5. Section V. EXCLUSIONS, Paragraph Q. is amended as follows:

The last two sentences of Paragraph Q. are deleted and the clause "However, Paragraph 1 of this exclusion will not apply if coverage for such Bodily Injury or Property Damage as is described in subparagraphs 1) through 6) below is provided by Scheduled Underlying Insurance:", is deleted in its entirety and replaced by the following:

However, this exclusion will not apply as described in subparagraphs 1) through 6) below:

provided, however, that the above amendments to Section V. EXCLUSIONS, Paragraph Q., do not apply if a separate endorsement attached to this policy deletes and replaces Section V. EXCLUSIONS, Paragraph Q.

6. Section VII. DEFINITIONS is amended to include the following additional definition:

Defense Expenses mean payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or Suit, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or Suit;

4. Costs taxed against the Insured in any claim or Suit;

5. Pre-judgment interest awarded against the Insured; and

6. Interest that accrues after entry of judgment.

7. Section VII. DEFINITIONS, Paragraph D., subparagraph 1. is deleted and replaced by the following:

1. damages covered by this policy that are in excess of the Retained Limit; and

8. Section VII. DEFINITIONS, Paragraph M. is amended to include the following additional subparagraph:

8. Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations, including Your Work and Your Product, or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

a. The coverages and Limits of Insurance of this policy, or

b. The coverage and Limits of Insurance required by said contract or agreement.

However, no such person or organization is an Insured by virtue of this provision 8. of this Paragraph M. of Section VII. if such person or organization is a partnership, joint venture or limited liability company of which the Named Insured is a partner or member, or is a partner or member of such partnership, joint venture or limited liability company.

9. Section VII. DEFINITIONS, the phrase "Notwithstanding any of the above:" and subparagraphs a. and b. thereunder appearing at the end of Paragraph M. are deleted in their entireties and replaced by the following:

KNIGHT000189

Notwithstanding any of the above provisions 1. through 7. of this Paragraph M. of Section VII., no person or organization is an Insured with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a Named Insured in Item 1 of the Declarations.

10. Section VII. DEFINITIONS, Paragraph P. is deleted in its entirety and replaced by the following:

P.   Loss means those sums actually paid as judgments or settlements, provided, however, that if the applicable Retained Limit is specifically designated in the Schedule of Retained Limits as including Defense Expenses, then Loss shall include such Defense Expenses.

11. Section VII. DEFINITIONS, Paragraph R. is deleted in its entirety and replaced by the following:

R.   Named Insured means:

1.   any person or organization designated in Item 1 of the Declarations;

2.   as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any Bodily Injury or Property Damage that occurred or any Personal Injury and Advertising Injury that was caused by an Occurrence that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.   after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the Policy Period in which you maintain an interest of more than fifty percent (50%), provided that:

a.   coverage provided to such organization under this paragraph does not apply to any Bodily Injury or Property Damage that occurred or any Personal Injury and Advertising Injury that was caused by an Occurrence that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

b.   you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the Policy Period may be added as an Insured only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the Policy Period.

12. Section VII. DEFINITIONS, Paragraph Z. is deleted in its entirety and replaced by the following:

Z.   Retained Limit means the applicable limit(s) listed in the Schedule of Retained Limits.

The Retained Limit(s) listed in the Schedule of Retained Limits will apply whether or not there is any available Scheduled Underlying Insurance or Other Insurance. If there is Scheduled Underlying Insurance or Other Insurance applicable to a Loss, amounts received through such Scheduled Underlying Insurance or Other Insurance for payment of the Loss may be applied to reduce or exhaust the Retained Limit. Furthermore:

a.   If the applicable Retained Limit is specifically designated in the Schedule of Retained Limits as including Defense Expenses, then amounts received through Scheduled Underlying Insurance or Other Insurance providing coverage to the Insured for the payment of Defense Expenses shall reduce the Retained Limit.

b.   If the applicable Retained Limit is not specifically designated in the Schedule of Retained Limits as including Defense Expenses, then amounts received through Scheduled

KNIGHT000190

Underlying Insurance or Other Insurance providing coverage to the Insured for the payment of Defense Expenses shall not reduce the Retained Limit.

13. Section VI. CONDITIONS, Paragraphs A. and C. are deleted in their entireties and replaced by the following:

A.   Appeals

If the Insured or the Insured's underlying insurers do not appeal a judgment in excess of the total applicable Retained Limit(s), we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

C.   Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of Loss covered by this policy.  But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation within a Retained Limit.

14. If another endorsement attached to this policy states specifically that the provisions therein supercede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

All other terms, definitions, conditions and exclusions remain unchanged.

_Vincent Catapano_

Authorized Representative
or Countersignature (Where Applicable)

81583 (4/07)                    Page 4 of 5
AH2401

KNIGHT000191

Schedule of Retained Limits

Coverage(s)                              Retained Limit(s)

GENERAL LIABILITY                                            SELF INSURED RETENTION OF:
(KNIGHT RESOURCES, INC)                                     $21,000,000
                                                            EACH OCCURRENCE
                                                            $22,000,000
                                                            GENERAL AGGREGATE
                                                            $21,000,000
                                                            PRODUCTS/C. OPS AGGREGATE
                                                            $21,000,000
                                                            PERSONAL & ADVERTISING INJURY

                                                            Defense Expenses are in
                                                            addition to the limit.

KNIGHT000192

ENDORSEMENT No. 32

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

Commercial Umbrella Liability Policy with CrisisResponse®

Designated Entity Sublimit of Insurance

This policy is amended as follows:

The DECLARATIONS ITEM 3. LIMITS OF INSURANCE is amended to include the following additional provisions:

**Sublimits of Insurance for all liability arising out of the products and operations of the entities referenced in the Schedule of Designated Entities**

|   |   |   |
|---|---|---|
| A. | $5,000,000 | Each Occurrence Sublimit |
| B. | $5,000,000 | General Aggregate Sublimit |
| C. | $5,000,000 | Products-Completed Operations Aggregate. |

Section IV. LIMITS OF INSURANCE is amended to include the following additional provisions:

The Sublimits of Insurance shown in ITEM 3. of the DECLARATIONS (as amended above) are the most we will pay for all damages under this policy with respect to the liability of the Insured arising out of the operations of the entities listed in the Schedule of Designated Entities to the extent covered under the terms, conditions and definitions of this policy. These sublimits are part of and not in addition to the Each Occurrence and Aggregate Limit of Insurance shown in the Declarations.

**Schedule of Designated Entities**

El Caballero, Inc.
Le Chevallier

All other terms, definitions, conditions and exclusions remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

87213 (12/04)
AH1431

KNIGHT000193

ENDORSEMENT NO. 33

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no.: BE     13074559

Issued to:  KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

## WATERCRAFT WORK PLATFORM COVERAGE ENDORSEMENT

TO THE EXTENT ANY PROVISION OF THIS ENDORSEMENT CONFLICTS WITH ANY PROVISION OF THE POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERSEDE.

This policy is amended as follows:

1.   It is agreed that Section V. EXCLUSIONS, Paragraph A. will not apply to any liability arising out of the deck space of tugs, barges, work boats, crew boats, drilling or workover barges, when such watercraft is not operating under navigation and when such deck space is used only as a work platform in connection with oil, gas, seismic or geothermal exploration production operations of the Named Insured.

2.   Regardless of the limited watercraft coverage provided by this policy, this policy excludes any losses recoverable under any of the following or similar types policies: Environmental Liability, or Hull coverage regardless of whether such insurance is actually in force at the time of the loss and regardless of the limit of liability available under such insurance.

3.   With respect to Protection and Indemnity and/or Charter's Liability coverage, this policy shall follow the terms, definitions, conditions and exclusions of Policy number: OMH#5834617, issued by Great American Insurance Company of New York, as were present as of the inception date of this policy, subject to the policy period, limits of insurance, Schedule of Self Insured Retentions, and all conditions of this policy.

4.   Solely for purposes of coverage provided under this endorsement, the following supersedes any Pollution Exclusion contained in or endorsed to this policy:

This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused. Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

We shall have no duty to defend any suit arising out of or in any way related to pollution.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 34

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no.: BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:   CHARTIS SPECIALTY INSURANCE COMPANY

## AIRCRAFT AND WATERCRAFT LIMITATION ENDORSEMENT

This policy is amended as follows:

For the purpose of this endorsement only and solely with respect to any and all references to watercraft, Section V. EXCLUSIONS, A. Aircraft and Watercraft is deleted in its entirety and replaced by the following:

A.     Aircraft and Watercraft

1.   This insurance does not apply to Bodily Injury or Property Damage arising out of the ownership, maintenance, use, or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any Insured.  Use includes operation and loading and unloading.

2.   This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the Occurrence which caused the Bodily Injury or Property Damage involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any Insured.

This exclusion does not apply to a watercraft you do not own that is not being used to carry persons or property for a charge.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

KNIGHT000195

ENDORSEMENT NO.35

This endorsement, effective 12:01 AM: March 31, 2010

Forms a part of policy no.: BE      13074559

Issued to:   KNIGHT OIL TOOLS INC

By:   CHARTIS SPECIALTY INSURANCE COMPANY

## SCHEDULE OF NAMED INSURED(S) ENDORSEMENT

Knight Oil Tools, Inc
Eddie R. Knight Children's Trust
El Caballero, Inc.
Excel Oil Tools, Inc.
H & K Rentals, Inc.
Harmon Rentals, Inc.
Hub City Iron Works, Inc.
K & P Rental Company, Inc.
K-Barn, Inc.
Knight & Phillips Specialties, Inc.
Knight Acquisitions, Inc.
Knight Aviation, LLC
Knight Companies, Inc.
Knight Family Enterprises, LLC
Knight Fishing Services, Inc.
Douglas Oil Tools, Inc.
Knight Resources, Inc.
Knight Specialties, Inc.
Knight Well Services, Inc.
Le Chevallier, Inc.
Robinson Tubular Services, Inc.
Tri-Drill, Inc.
Prideco
Myco
Knight Manufacturing, Inc.
Advanced Safety Training & Management, Inc.
HMC Leasing, Inc.
Knight Saw Services, Inc.
Knight Information Systems, LLC
Knight SK Properties, LLC
Knight International, LLC
The Knight Companies Profit Sharing 401 (k) Plan
Rayne Properties

All other terms, definitions, conditions, and exclusions of this policy remain
unchanged.

Authorized Representative
or countersignature (where required by law)

KNIGHT000196

ENDORSEMENTS

KNIGHT000197

ENDORSEMENT NO. 36

This endorsement, effective 12:01 AM:  June 3, 2010

Forms a part of policy no.:  BE     13074559

Issued to:  KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

## AMENDATORY ENDORSEMENT

It is hereby agreed that Endorsement #35 - Schedule of Named Insured(s) is amended to add the following:

Alice 1 Property Corporation, Cunningham Road Property Corporation.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

*Archive Copy*

Authorized Representative
or countersignature (where required by law)

KNIGHT000198



12/29/2021 2:02:38 PM
Marilyn Burgess District Clerk
Harris County
Envelope No: 60372053
By: JACKSON, MONICA J
Filed: 12/29/2021 11:36:00 AM

HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** _____  **CURRENT COURT:** _____

**Name(s) of Documents to be served:** Plaintiff's Original Petition

**FILE DATE:** _12-28-21_____ Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** **RISK SPECIALISTS COMPANIES INSURANCE AGENCY, INC.**

Address of Service: **211 E. 7TH STREET, SUITE 620**

City, State & Zip:_ **AUSTIN, TEXAS 78701-3218**

Agent (if applicable) **CORPORATION SERVICE COMPANY d/b/a CSC-LAWYERS INCORPORATING SERVICE COMPANY**

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

☒ Citation ☐ Citation by Posting ☐ Citation by Publication ☐ Citations Rule 106 Service
☐ Citation Scire Facias Newspaper_____
☐ Temporary Restraining Order ☐ Precept ☐ Notice
☐ Protective Order
☐ Secretary of State Citation ($12.00) ☐ Capias (not by E-Issuance) ☐ Attachment (not by E-Issuance)
☐ Certiorari ☐ Highway Commission ($12.00)
☐ Commissioner of Insurance ($12.00) ☐ Hague Convention ($16.00) ☐ Garnishment
☐ Habeas Corpus (not by E-Issuance) ☐ Injunction ☐ Sequestration
☐ Subpoena
☐ Other (Please Describe) _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
☐ **ATTORNEY PICK-UP** (phone) _____ ☐ **E-Issuance by District Clerk**
☐ **MAIL to attorney** at: _____ **(No Service Copy Fees Charged)**
☐ **CONSTABLE** *Note:* The email registered with EfileTexas.gov must be
☒ **CERTIFIED MAIL by District Clerk** used to retrieve the E-Issuance Service Documents.
Visit www.hcdistrictclerk.com for more instructions.

☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____ Phone: _____
☐ **OTHER**, *explain*

**Issuance of Service Requested By:** Attorney/Party Name:_ **Mike Morris / Plaintiff** Bar #_ **14495800**

Mailing Address: **1221 McKinney, Suite 4300, Houston, Texas 77010**

Phone Number:____ **713-222-9542 Ext. 354**



12/29/2021 2:02:38 PM
Marilyn Burgess District Clerk
Harris County
Envelope No: 60372053
By: JACKSON, MONICA J
Filed: 12/29/2021 11:36:00 AM

**Marilyn Burgess**

HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** _____   **CURRENT COURT:** _____

**Name(s) of Documents to be served:** Plaintiff's Original Petition

**FILE DATE:** _12-28-21_____   Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** **CHARTIS SPECIALTY INSURANCE COMPNAY, now known as, AIG SPECIALTY INSURANCE COMPANY**

Address of Service: **333 GUADALUPE**

City, State & Zip: **AUSTIN, TEXAS 78701**_____

Agent (if applicable) **COMMISSIONER OF INSURANCE – TEXAS DEPARTMENT OF INSURANCE  (TO BE MAILED BY COMMISSIONER OF INSURANCE – TEXAS DEPARTMENT OF INSURANCE- CERTIFIED MAIL)- TO: COUNSEL, LEGAL DEPARTMENT, CHARTIS SPECIALTY INSURANCE COMPANY, 175 WATER STREET, NEW YORK, NEW YORK  10038)**

**TYPE OF SERVICE/PROCESS TO BE ISSUED**: (Check the proper Box)

| | | | |
|---|---|---|---|
| ☐ Citation | ☐ Citation by Posting | ☐ Citation by Publication | ☐ Citations Rule 106 Service |
| ☐ Citation Scire Facias | Newspaper_____ | | |
| ☐ Temporary Restraining Order | ☐ Precept | | ☐ Notice |
| ☐ Protective Order | | | |
| ☐ Secretary of State Citation ($12.00) | ☐ Capias (not by E-Issuance) | | ☐ Attachment (not by E-Issuance) |
| ☐ Certiorari | ☐ Highway Commission ($12.00) | | |
| ☒ Commissioner of Insurance ($12.00) | ☐ Hague Convention ($16.00) | | ☐ Garnishment |
| ☐ Habeas Corpus (not by E-Issuance) | ☐ Injunction | | ☐ Sequestration |
| ☐ Subpoena | | | |
| ☐ Other (Please Describe) _____ | | | |

**(See additional Forms for Post Judgment Service)**

**SERVICE BY (check one):**
☐ **ATTORNEY PICK-UP (phone)** _____
☐ **MAIL to attorney** at: _____
☐ **CONSTABLE**
☒ **CERTIFIED MAIL by District Clerk**

☐ **E-Issuance by District Clerk**
 **(No Service Copy Fees Charged)**
*Note*: The email registered with EfileTexas.gov must be used to retrieve the E-Issuance Service Documents. Visit www.hcdistrictclerk.com for more instructions.

☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____   Phone: _____

☐ **OTHER**, *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name:  **Mike Morris / Plaintiff**  Bar # **14495800**

Mailing Address:  **1221 McKinney, Suite 4300, Houston, Texas  77010**

Phone Number:  **713-222-9542  Ext. 354**

**7019 2970 0001 3562 1508**

CAUSE NO.   202183799

RECEIPT NO.   919240                          75.00       CTM
\*\*\*\*\*\*\*\*\*\*                          TR # 73955950

PLAINTIFF: RIPPY OIL COMPANY                    In The    133rd
            vs.                                 Judicial District Court
DEFENDANT: ACE AMERICAN INSURANCE COMPANY       of Harris County, Texas
                                                133RD DISTRICT COURT
                                                Houston, TX

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: ACE AMERICAN INSURANCE COMPANY
    MAY BE SERVED BY SERVING ITS DESIGNATED REGISTERED AGENT CT CORPORATION
    SYSTEM

    1999  BRYAN STREET SUITE 900   DALLAS  TX  75201 - 3136

    Attached is a certified copy of PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the 29th day of December, 2021, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
    This citation was issued on 3rd day of January, 2022, under my hand and
seal of said Court.

Issued at request of:
MORRIS, MICHAEL PATRICK                         MARILYN BURGESS, District Clerk
1221 MCKINNEY, SUITE 4300                       Harris County, Texas
HOUSTON, TX  77010                              201 Caroline, Houston, Texas 77002
Tel: (713) 222-9542                             (P.O. Box 4651, Houston, Texas 77210)
Bar No.: 14495800

                                                Generated By: JACKSON, MONICA   I8V//11918264

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy   of   this   citation   together   with   an   attached   copy   of
 PLAINTIFF'S ORIGINAL PETITION
to the following addressee at address:

_____        _____
                                         ADDRESS

_____        Service was executed in accordance with Rule 106
(a) ADDRESSEE                                (2) TRCP, upon the Defendant as evidenced by the
_____            return receipt incorporated herein and attached
                                             hereto at

                                         _____
                                         on _____ day of _____, _____
                                         by U.S. Postal delivery to _____,_____
                                         _____

                                         This citation was not executed for the following
                                         reason: _____
                                         _____
                                         _____

                                         MARILYN BURGESS, District Clerk
                                         Harris County, TEXAS

                                         By _____, Deputy

N.INT.CITM.P                 *73955950*            **RECORDER'S MEMORANDUM**
                                                   This instrument is of poor quality
                                                        at the time of imaging.

**7019 2970 0001 3562 1508**

CAUSE NO.  202183799

RECEIPT NO.  919240                    75.00      CTM
*********                    TR # 73955950

| | |
|---|---|
| PLAINTIFF: RIPPY OIL COMPANY<br>vs.<br>DEFENDANT: ACE AMERICAN INSURANCE COMPANY | In The   133rd<br>Judicial District Court<br>of Harris County, Texas<br>133RD DISTRICT COURT<br>Houston, TX |

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: ACE AMERICAN INSURANCE COMPANY
    MAY BE SERVED BY SERVING ITS DESIGNATED REGISTERED AGENT CT CORPORATION
    SYSTEM

    1999  BRYAN STREET SUITE 900   DALLAS TX  75201 - 3136

    Attached is a certified copy of <u>PLAINTIFF'S ORIGINAL PETITION</u>

This instrument was filed on the <u>29th day of December, 2021,</u> in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
    This citation was issued on 3rd day of January, 2022, under my hand and
seal of said Court.



MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

<u>Issued at request of:</u>
MORRIS, MICHAEL PATRICK
1221 MCKINNEY, SUITE 4300
HOUSTON, TX  77010
Tel: (713) 222-9542
<u>Bar No.:</u>  14495800

Generated By: JACKSON, MONICA  I8V//11918264

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy   of   this   citation   together   with   an   attached   copy   of
PLAINTIFF'S ORIGINAL PETITION
to the following addressee at address:

_____       _____
                                        ADDRESS

_____       Service was executed in accordance with Rule 106
(a) ADDRESSEE                               (2) TRCP, upon the Defendant as evidenced by the
                                            return receipt incorporated herein and attached
_____           hereto at

                                        _____
                                        on _____ day of _____, _____
                                        by U.S. Postal delivery to _____
                                        _____

                                        This citation was not executed for the following
                                        reason: _____
                                        _____

                                        MARILYN BURGESS, District Clerk
                                        Harris County, TEXAS

                                        By _____, Deputy

N.INT.CITM.P                    *73955950*

**7019 2970 0001 3562 1522**

CAUSE NO.  202183799

RECEIPT NO.  919240                    75.00          CTM

**\*\*\*\*\*\*\*\*\*\***                    TR # 73955961

---

PLAINTIFF: RIPPY OIL COMPANY                   In The    133rd
              vs.                              Judicial District Court
DEFENDANT: ACE AMERICAN INSURANCE COMPANY      of Harris County, Texas
                                               133RD DISTRICT COURT
                                               Houston, TX

---

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: RISK SPECIALISTS COMPANIES INSURANCE AGENCY MAY BE SERVED BY
    SERVING ITS DESIGNATED REGISTERED AGENT CORPORATION SERVICE COMPANY
    DBA CSC-LAWYERS INCORPORATING SERVICE COMPANY

    211  E 7TH STREET SUITE 620   AUSTIN  TX  78701 - 3218

    Attached is a certified copy of <u>PLAINTIFF'S ORIGINAL PETITION</u>

This instrument was filed on the <u>29th day of December, 2021</u>, in the above cited cause number
and court. The instrument attached describes the claim against you.

     YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
     This citation was issued on 3rd day of January, 2022, under my hand and
seal of said Court.

<u>Issued at request of</u>:                        MARILYN BURGESS, District Clerk
MORRIS, MICHAEL PATRICK                          Harris County, Texas
1221 MCKINNEY, SUITE 4300                        201 Caroline, Houston, Texas 77002
HOUSTON, TX  77010                               (P.O. Box 4651, Houston, Texas 77210)
Tel: (713) 222-9542
<u>Bar No.</u>: 14495800                           Generated By: JACKSON, MONICA  I8V//11918264

---

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy   of   this   citation   together   with   an   attached   copy   of
PLAINTIFF'S ORIGINAL PETITION
to the following addressee at address:

_____          ADDRESS

_____          Service was executed in accordance with Rule 106
(a)ADDRESSEE                                   (2) TRCP, upon the Defendant as evidenced by the
_____              return receipt incorporated herein and attached
                                              hereto at

                                           on _____ day of _____, _____
                                           by U.S. Postal delivery to _____
                                           _____

                                           This citation was not executed for the following
                                           reason: _____
                                           _____

                                           MARILYN BURGESS, District Clerk
                                           Harris County, TEXAS

                                           By _____, Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

N.INT.CITM.P                          *73955961*

**7019 2970 0001 3562 1522**

CAUSE NO.  202183799

RECEIPT NO.  919240                     75.00        CTM
*********                 TR # 73955961

| | |
|---|---|
| PLAINTIFF: RIPPY OIL COMPANY<br>vs.<br>DEFENDANT: ACE AMERICAN INSURANCE COMPANY | In The   133rd<br>Judicial District Court<br>of Harris County, Texas<br>133RD DISTRICT COURT<br>Houston, TX |

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: RISK SPECIALISTS COMPANIES INSURANCE AGENCY MAY BE SERVED BY
    SERVING ITS DESIGNATED REGISTERED AGENT CORPORATION SERVICE COMPANY
    DBA CSC-LAWYERS INCORPORATING SERVICE COMPANY

    211  E 7TH STREET SUITE 620   AUSTIN  TX  78701 - 3218

    Attached is a certified copy of <u>PLAINTIFF'S ORIGINAL PETITION</u>

This instrument was filed on the <u>29th day of December, 2021,</u> in the above cited cause number
and court. The instrument attached describes the claim against you.

     YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
     This citation was issued on 3rd day of January, 2022, under my hand and
seal of said Court.

<u>Issued at request of:</u>
MORRIS, MICHAEL PATRICK
1221 MCKINNEY, SUITE 4300
HOUSTON, TX  77010
Tel: (713) 222-9542
<u>Bar No.:</u>  14495800

*mah Burges*

MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: JACKSON, MONICA  I8V//11918264

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy  of  this  citation  together  with  an  attached  copy  of
 PLAINTIFF'S ORIGINAL PETITION
to the following addressee at address:

_____          _____
                                            ADDRESS

_____          Service was executed in accordance with Rule 106
(a) ADDRESSEE                                  (2) TRCP, upon the Defendant as evidenced by the
                                               return receipt incorporated herein and attached
_____             hereto at

                                            _____
                                            on _____ day of _____, _____
                                            by U.S. Postal delivery to _____
                                            _____

                                            This citation was not executed for the following
                                            reason: _____
                                            _____

                                            MARILYN BURGESS, District Clerk
                                            Harris County, TEXAS

                                            By _____, Deputy

N.INT.CITM.P                          **\*73955961\***

**7019 2970 0001 3562 1515**

CAUSE NO.  202183799

RECEIPT NO.  919240                    75.00        CTM
*********
TR # 73955953

PLAINTIFF: RIPPY OIL COMPANY                    In The    133rd
            vs.                                 Judicial District Court
DEFENDANT: ACE AMERICAN INSURANCE COMPANY       of Harris County, Texas
                                                133RD DISTRICT COURT
                                                Houston, TX

CITATION (INSURANCE COMMISSION)

THE STATE OF TEXAS
County of Harris

TO: CHARTIS SPECIALTY INSURANCE COMPANY (NOW KNOWN AS AIG SPECIALTY
    INSURANCE COMPANY) MAY BE SERVED THROUGH THE COMMISSIONER OF THE TEXAS
    DEPARTMENT OF INSURANCE 333 GUADALUPE AUSTIN TEXAS 78701
    FORWARD TO LEGAL DEPARTMENT
    175  WATER STREET   NEW YORK NY  10038

    Attached is a certified copy of PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the 29th day of December, 2021, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
    This citation was issued on 3rd day of January, 2022, under my hand and
seal of said Court.

Issued at request of:                           Marilyn Burgess, District Clerk
MORRIS, MICHAEL PATRICK                          Harris County, Texas
1221  MCKINNEY, SUITE 4300                       201 Caroline, Houston, Texas 77002
HOUSTON, TX  77010                               (P.O. Box 4651, Houston, Texas 77210)
Tel: (713) 222-9542
Bar No.:  14495800
                                                Generated By: JACKSON, MONICA  I8V//11918264

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M., on the _____ day of _____, _____.

Executed at (address) _____ in

_____ County at _____ o'clock ____.M., on the ____ day of _____,

_____, by delivering to _____ defendant, in person, a

true copy of this Citation together with the accompanying _____        copy(ies) of the
                                                                              Petition
attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.

FEE: $_____                           _____

                                        _____ of _____ County, Texas

_____            By _____
        Affiant                                        Deputy

On this day, _____, known to me to be the person whose
signature appears on the foregoing return, personally appeared. After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited on the
return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, _____.

                                        _____

                                                Notary Public

N.INT.INSR.P                    *73955953*

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

**7019 2970 0001 3562 1515**

CAUSE NO.   202183799

RECEIPT NO.   919240                                    75.00          CTM
                    *********

                                                            TR # 73955953

| | |
|---|---|
| PLAINTIFF: RIPPY OIL COMPANY<br>                vs.<br>DEFENDANT: ACE AMERICAN INSURANCE COMPANY | In The   133rd<br>Judicial District Court<br>of Harris County, Texas<br>133RD DISTRICT COURT<br>Houston, TX |

CITATION (INSURANCE COMMISSION)

THE STATE OF TEXAS
County of Harris

TO: CHARTIS SPECIALTY INSURANCE COMPANY (NOW KNOWN AS AIG SPECIALTY
    INSURANCE COMPANY) MAY BE SERVED THROUGH THE COMMISSIONER OF THE TEXAS
    DEPARTMENT OF INSURANCE 333 GUADALUPE AUSTIN TEXAS 78701
    FORWARD TO LEGAL DEPARTMENT
    175  WATER STREET   NEW YORK  NY  10038

    Attached is a certified copy of PLAINTIFF'S ORIGINAL PETITION


This instrument was filed on the 29th day of December, 2021, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
    This citation was issued on 3rd day of January, 2022, under my hand and
seal of said Court.



Issued at request of:                           MARILYN BURGESS, District Clerk
MORRIS, MICHAEL PATRICK                          Harris County, Texas
1221 MCKINNEY, SUITE 4300                        201 Caroline, Houston, Texas 77002
HOUSTON, TX  77010                               (P.O. Box 4651, Houston, Texas 77210)
Tel: (713) 222-9542
Bar No.:  14495800

                                          Generated By: JACKSON, MONICA  I8V//11918264

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M., on the _____ day of _____, _____.

Executed at (address) _____ in

_____ County at _____ o'clock ____.M., on the _____ day of _____,

_____, by delivering to _____ defendant, in person, a

true copy of this Citation together with the accompanying _____          copy(ies) of the
                                                                                        Petition
attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.

FEE: $_____                   _____

                                _____ of _____ County, Texas


_____        By _____
            Affiant                              Deputy

On this day, _____, known to me to be the person whose
signature appears on the foregoing return, personally appeared. After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited on the
return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, _____.

                                _____
                                              Notary Public

N.INT.INSR.P                          *73955953*



1-4-22

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.



1-4-22

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.



1-4-22

RECORDER'S MEMORANDUM
This Instrument is of poor quality
at the time of imaging.



## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

RISK SPECIALISTS COMPANIES INS

C/O CORPORATION SERVICE COMPANY

211 E 7TH ST SUITE 620

AUSTIN TX 78701-3218

2021-83799 COURT 133RD

9590 9402 4604 8323 6027 92

7019 2970 0001 3542 1522

PS Form 3811, July 2015 PSN 7630-02-000-9053

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X  Viva Tejas Logistics (AAC)

☐ Agent
☐ Addressee

B. Received by (Printed Name)

JAN 07 2022

C. Date of Delivery

Carlos Mendoz

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging.

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ ___ Delivery Restricted Delivery
☐ ___ al Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

MARILYN BURGESS
HARRIS COUNTY DISTRICT CLERK
P.O. BOX 4651
HOUSTON, TEXAS 77210-4651

USPS TRACKING #

9590 9402 4604 8323 6027 92

United States
Postal Service

MARILYN BURGESS
DISTRICT CLERK
HARRIS COUNTY, TEXAS

22 JAN 21  AM 9: 38

01-21-22

BY _____

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CHARTIS SPECIALTY INSURANCE CO
C/O COMMISSIONER OF TX DEPT OF INSUR
333 GUADALUPE
AUSTIN, TEXAS 78701
2021-83799 COURT 133RD

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

9590 9402 4604 8323 6027 78

7019 2970 0001 3562 1515

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

2021-83799

RECEIVED

JAN 06 2022

TEXAS DEPT. OF INSURANCE
MAIL SERVICES

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
(over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

MARILYN BURGESS
HARRIS COUNTY DISTRICT CLERK
P.O. BOX 4651
HOUSTON, TEXAS 77210-4651

USPS TRACKING #

9590 9402 4604 8323 6027 78

United States
Postal Service

MARILYN BURGESS
DISTRICT CLERK
HARRIS COUNTY, TEXAS

22 JAN 21  AM 9:37

01-21-22

BY
MAIL