

**AIG Property Casualty**
PO Box 10006
Shawnee Mission, KS
66225
www.aig.com

Stephen Romano
SENIOR ANALYST
EXCESS CASUALTY
T  212-458-5375
F  212-857-4855
stephen.romano@aig.com

February 26, 2020

***Via Email (cgriffin@knightoiltools.com) and Certified Mail-Return
Receipt Requested***
Cole Griffin, Esq.
KNIGHT OIL TOOLS, INC.
2727 SE Evangeline Thruway
Lafayette, LA 70508-2205

Re:     ***Rippy Oil Company, Rippy Interest LLC, The Genecov Group,
        Inc. and John D. Proctor v. Knight Oil Tools, Inc. and Pioneer
        Drilling Company**, Leon County District Court Case No.: 0-10-
        498*
       ***Named Insured:      Knight Oil Tools, Inc.***
       ***Policy No.:         BE 13074559 (3/31/2010-3/31/2011)***
       ***Insurer:            Chartis Specialty Insurance Company***
       ***Claimant:           Rippy Oil Company***
       ***Claim No.:          1346620288US***

Dear Mr. Griffin:

As you are aware, AIG Claims, Inc., a member company of AIG Property
Casualty, Inc. ("AIG Claims"), is the authorized representative and claims
administrator for Chartis Specialty Insurance Company ("Chartis"), which
issued Commercial Umbrella Liability Policy No. BE 13074559 to Knight Oil
Tools, Inc. ("Knight") in effect from March 31, 2010 to March 31, 2011.  The
purpose of this letter is to advise you of our position with respect to coverage
for the subject claim and to supplement our pre-trial March 28, 2017 and
post-trial August 9, 2018 coverage position letters.

We value you as a customer and appreciate your business; however, we
must inform you that, based on our review of the trial transcript, if the
underlying Judgment against Knight is affirmed, coverage will not be
available under the policy captioned above for the claims presented as more
fully discussed below.  After you have reviewed the letter, if there is
additional information you would like me to consider please forward same to
my attention.   Also, if you have any questions about this letter, please feel
free to contact me.

In considering your request for coverage, we have carefully reviewed the
insurance policy referenced above.  No other policies were considered.  If
you assert a right to coverage under another policy issued by any other
member company of AIG Claims, please submit notice pursuant to the
notice provisions contained in that policy.



EXHIBIT
**C**



## The Underlying Allegations

On or about January 13, 2011, Rippy Oil Company; Rippy Interest LLC; The Genecov Group, Inc.; and John D. Proctor (collectively "Rippy") filed suit against Knight and Pioneer Drilling in the 12th Judicial District Court in Leon County, Texas.  Rippy filed an amended complaint on October 26, 2016.

According to their Petition, Rippy sought drilling services and drill pipe for use in its well known as the Easterling No. 1-H well located in Leon County, Texas ("the Well").  The Well was allegedly the first of a multi-well program planned for the Aguila Vado Field, which comprised approximately 14,000 acres in Leon County.  Knight supplied the drill pipe, which was utilized by Pioneer, and allegedly represented that the drill pipe satisfied API Specification 5D 3 1/2"O.D. 13.30-PPF Grade S-135 drill pipe.  Knight allegedly been also marked the pipe as API premium and represented that the pipe had been inspected.  According to Rippy, Knight and Pioneer knew the purpose for which Rippy sought the drilling pipe and the drilling services and knew that Rippy was relying on Knight and Pioneer to furnish drill pipe and drilling services suitable and fit for that purpose.

According to Rippy, on May 11, 2010, Pioneer was using the drill pipe supplied by Knight during drilling operations when the drill pipe supplied by Knight catastrophically failed, destroying a valuable portion of the Well, which prevented its completion and subsequent production of oil reserves from the target intervals.  Rippy attempted to mitigate its damages by attempting to fish the failed drilled pipe, separated drill pipe string, bottom-hole assembly, and drill bit damaged and lost in the hole after notifying Knight of the drill pipe failure.  Despite Rippy's salvage efforts, Rippy could not reproduce the Well with resulting loss of use of well bore and hydrocarbon reserves.

Rippy claimed that Knight was negligent in the selection, inspection, labeling, marking, distribution, representation and use of the drill pipe.  Rippy also made a products liability claim against Knight, claiming that the drill pipe was defective in that it failed to conform to its design, specifications and represented qualities and characteristics; was not properly API inspected or labeled; was not API Premium Class; had undersized O.D. and I.D. tool joints that exceeded the maximum I.D. for API Premium Class drill pipe; and was excessively worn, corroded, pitted, and cracked.  Rippy also claimed breach of express warranty; breach of implied warranty of merchantability and fitness for a particular purpose; violation of Texas Deceptive Trade Practices Act; gross negligence; breach of contract; fraud; aiding and abetting; civil conspiracy; concert of action; spoliation; and successor liability.

As damages, Rippy sought cash market value damages for destruction of that portion of the Well, which is the market value of the Well less any salvage value, because reproducing that portion of the Well was impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the Well.  In the alternative, and should it be determined that the Well could be reproduced, Rippy sought recovery of the reasonable and necessary cost to reproduce the Well.  Rippy also sought



direct and/or consequential damages, including lost profits, loss of use, the loss of the lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole—all of which were allegedly caused by the drill pipe failure.  In addition, Rippy sought punitive damages and attorneys' fees.

## Judgment

On October 24, 2017, the United States District Court for the Western District of Louisiana lifted the automatic bankruptcy stay for the limited purpose of allowing the prosecution of _Rippy Oil Co., et al. v. Knight Oil Tools, Inc., et al._, Case No. 0-10-498, pending in the 369th JDC in Leon County, Texas.  Pursuant to the Court's order, Rippy was only entitled to seek recovery on the claims asserted solely from Knight's applicable insurance policies and Knight's liability was to be limited to the extent of any coverage provided by Knight's insurance policies.  Accordingly, Knight is only liable for any insured damages and is immune from liability for any uninsured damages.

The _Rippy Oil Co., et al. v. Knight Oil Tools, Inc., et al._ suit proceeded to trial before a jury on May 1, 2018.  On May 10, 2018, after the close of the evidence at trial, the jury found Knight breached its implied warranty of fitness for a particular purpose and made a negligent misrepresentation with respect to the condition of the drill pipe.  The jury found that neither Rippy nor Gyrodata contributed to the separation of the drill pipe.

The jury found that the Well was not capable of being reproduced by drilling another well and that the reasonable and necessary costs for drilling and equipping the Well were $1.5 million.  The jury also found that the fair market value of the Well before the pipe separation was $5.9 million and that the fair market value of the Well after the pipe separation was $0.  The jury also found that Rippy failed to pay Knight $361,356.87 in invoices.

Rippy filed a Motion for Judgment, and on June 4, 2018, the Court entered a Final Judgment ordering Knight to pay Rippy $5,538,643.13, plus prejudgment interest in the amount of $2,056,885.14 through June 1, 2017 and an additional $758.72 per day until the day before the final judgment is signed, with 5% interest, compounded annually, in post-judgment interest.

It is our understanding that Knight's appeal from the Judgment is currently pending.

## The Chartis Policy

Chartis Specialty Insurance Company issued Commercial Umbrella Liability Policy No. BE 13074559 to Knight Oil Tools, Inc. in effect from March 31, 2010 to March 31, 2011 ("the Chartis Policy").  The Chartis Policy is subject to a $25 million per occurrence/general aggregate limit of liability in excess of the $1 million commercial general liability policy issued by ACE American



Insurance Company ("ACE"). **Attached to this letter as Exhibit 1 are the relevant policy provisions for convenient review.** Kindly refer to the policy for its complete terms and conditions.

### Chartis' Coverage Position

Initially, we note that the Chartis Policy only applies, if at all, to those sums in excess of the Retained Limit that the insured becomes legally obligated to pay because of Property Damage[1] during the policy period and caused by an Occurrence.[2] It is our understanding that ACE has not paid the limits of its policy; accordingly, coverage is not currently implicated under the Chartis Policy.

In addition, Chartis reserves its right to disclaim coverage based on a lack of Property Damage caused by an Occurrence, as those terms are defined by the Chartis Policy.

Regardless, even if there has been Property Damage as a result of an Occurrence, such Property Damage is excluded from coverage by operation of the Impaired Property Exclusion.

The Chartis Policy's Impaired Property Exclusion precludes coverage for Property Damage to Impaired Property or property that has not been physically injured arising out of: (1) a defect, deficiency, inadequacy or dangerous condition in Your Work[3] or Your Product;[4] or (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. The Chartis Policy also excludes coverage for damage to "Your Work" and to "Your Product".

The jury awarded Rippy $5,538,643.13 based on the fair market value of the Well. Based on the Verdict, the Judgment, and the trial transcripts, Rippy was awarded damages solely for the loss of use of the Well, i.e. for property that was not physically injured, and the Impaired Property Exclusion therefore operates to preclude coverage because Rippy's damages arose out of a defect, deficiency, or inadequacy in Knight's drill pipe. The jury found that Knight's negligent misrepresentation regarding the condition of the drill pipe and Knight's breach of the implied warranty of fitness of the drill pipe for a particular purpose caused Rippy's loss of use damages.

---

[1] Property Damage is defined as physical injury to tangible property, including all resulting loss of use of that property; or, loss of use of tangible property that is not physically injured.

[2] Occurrence is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[3] Your Work is defined to include work or operations performed by You or on Your behalf; and materials, parts or equipment furnished in connection with such work or operations. Your Work also includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Work and the providing of or failure to provide warnings or instructions.

[4] Your Product is defined as any good or products, other than real property, manufactured, sold, handled, distributed or disposed of by You, others trading under Your name, or a person or organization whose business or assets You have acquired.



Accordingly, Rippy's damages arose out of Knight's failure to perform a contract or agreement in accordance with its terms, i.e. supply drill pipe suitable for Rippy's intended use.  Rippy's damages therefore fall within the Impaired Property Exclusion, because the damages are for "property that has not been physically injured" (i.e., the Well) arising out of a failure by Rippy to perform a contract or agreement in accordance with its terms (i.e., failure to provide drill pipe as specified or required for the job).  Further, there was no evidence presented at trial that the broken pipe caused any actual, physical injury to the Well or to any other property.  The Impaired Property Exclusion therefore operates to preclude coverage for the entire amount of the Judgment.

Chartis recognizes that the Impaired Property Exclusion is subject to an exception for the loss of use of other property arising out of sudden and accidental physical injury to Your Product after it has been put to its intended use.  Here, however, the Petition alleged that the pipe was excessively worn, corroded, pitted and cracked before it arrived at the Well site.  At trial, Rippy presented evidence that the cracks pre-existed the pipe's service at the Well.  Although Knight presented evidence that Rippy's Well plan may have caused or contributed to the cracks in the pipe, the jury rejected Knight's argument and assigned 0% fault to Rippy.  The jury's verdict form and the resulting Judgment (to the extent affirmed on appeal) therefore support the conclusion the drill pipe was deteriorated before it arrived at the Well and the failure of the drill pipe was caused by the pre-existing condition of the pipe.  Accordingly, based on the determination of the jury, the sudden and accidental exception to the Impaired Property Exclusion does not apply.

To the extent the damage award includes any amounts for damage to and/or the repair or replacement of Knight's defective work or its defective product, Chartis denies coverage for these damages pursuant to the "Your Work" and "Your Product" exclusions.

Chartis also reserves its right to disclaim coverage based on the potential applicability of the Testing or Consulting Errors and Omissions Exclusion.  That exclusion precludes coverage for any Property Damage arising out of an error, omission, defect or deficiency in advice given by or on behalf of any insured; or the reporting of or reliance upon any such advice; or an error, omission, defect or deficiency in experimental data or the insured's interpretation of such data.  Here, the jury found that Rippy justifiably relied on Knight's skill and judgment to furnish suitable drill pipe; i.e., Rippy relied on the evaluation, consultation or advice given by Knight regarding the suitability of the drill pipe and Rippy's reliance on Knight's evaluation, consultation or advice resulted in Rippy's damages.  Chartis therefore reserves its right to disclaim coverage under the Testing or Consulting Errors and Omissions Exclusion.

Chartis also reserves its right to disclaim coverage to the extent the Architects and Engineers Professional Liability Exclusion and/or the Professional Liability Exclusion apply.



## <u>Conclusion</u>

Chartis' coverage position is based on the information presently available to us. This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Chartis Policy, or any other policies of insurance issued by Chartis or any of its affiliates.  Chartis expressly reserves all of its rights under the Chartis Policy, including the right to assert additional defenses to any claims for coverage, if subsequent information indicates that such action is warranted.

Should you have any additional information that you feel would either cause us to review our position or would assist us in our determination, we ask that you advise us as soon as possible.  If you wish to have your own personal counsel become involved in this matter, at your own expense, please feel free to do so, and we will cooperate fully with such counsel.

In closing, allow me to reiterate that we value you as a customer and encourage you to contact us should you have any questions or concerns regarding the contents of this letter. Thank you for your cooperation in this matter.

Very truly yours,

Stephen J. Romano
Senior Analyst


cc:     ***Via Email (AmyN@poirriergroup.com) And Via Certified Mail –
        Return Receipt Requested***
        Amy V. Nunez, MBA, CISR
        POIRRIER GROUP, LLC
        300 Garfield Street
        Lafayette, LA 70501



## I. INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY

A. We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury to which this insurance applies or because of Bodily Injury or Property Damage to which this insurance applies assumed by the Insured under an Insured Contract.

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B. This policy applies, only if:

   1. the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period; and

\*\*\*

## III. DEFENSE PROVISIONS

A. We will have the right and duty to defend any Suit against the Insured that seeks damages for Bodily Injury, Property Damage or Personal Injury and Advertising Injury covered by this policy, even if the Suit is groundless, false or fraudulent when:

   1. the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss to which this policy applies and the total applicable limits of Other Insurance have been exhausted; or

   2. the damages sought because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury would not be covered by Scheduled Underlying Insurance or any applicable Other Insurance, even if the total applicable limits of either the Scheduled Underlying Insurance or any applicable Other Insurance had not been exhausted by the payment of Loss.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B. We will have no duty to defend the Insured against any Suit seeking damages for Bodily Injury, Property Damage or Personal Injury and Advertising Injury to which this insurance does not apply.

\*\*\*



D. Except as provided in Paragraph A. above, we will have no duty to defend any Suit against the Insured. We will, however, have the right, but not the duty, to participate in the defense of any Suit and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

E. We will not defend any Suit, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of Loss and we will have the right to withdraw from the further defense of such Suit by tendering control of said defense to the Insured.

| IV. LIMITS OF INSURANCE |
|---|

\*\*\*

M. We will not make any payment under this policy unless and until:

1. the total applicable limits of Scheduled Underlying Insurance have been exhausted by the payment of Loss to which this policy applies and any applicable, Other Insurance have been exhausted by the payment of Loss; or

2. the total applicable Self-Insured Retention has been satisfied by the payment of Loss to which this policy applies.

When the amount of Loss has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the Insured the amount of such Loss falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

| V. EXCLUSIONS |
|---|

\*\*\*

D. Damage to Impaired Property or Property Not Physically Injured

This insurance does not apply to Property Damage to Impaired Property or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.



This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to Your Product or Your Work after it has been put to its intended use.

\*\*\*

F. Damage to Your Product

This insurance does not apply to Property Damage to Your

Product arising out of it or any part of it.

\*\*\*

## VI. CONDITIONS

\*\*\*

4. No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

\*\*\*

L. Other Insurance

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the Other Insurance. However, this provision will not apply if the Other Insurance is specifically written to be excess of this policy.

\*\*\*

## VII. DEFINITIONS

\*\*\*

L. Impaired Property means tangible property, other than Your Product or Your Work, that cannot be used or is less useful because:

1. it incorporates Your Product or Your Work that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to

fulfill the terms of a

contract or

agreement; if such

property can be

restored to use by:



1.  the repair, replacement, adjustment or removal of Your Product or Your Work; or

2.  your fulfilling the terms of the contract or agreement.

\*\*\*

P.  Loss means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a Suit or to investigate a claim reduce the applicable limits of Scheduled Underlying Insurance, then Loss shall include such expenses.

\*\*\*

S.  Occurrence means:

1.  as respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one Occurrence.

2.  as respects Personal Injury and Advertising Injury, an offense arising out of your business that causes Personal Injury and Advertising Injury. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one Occurrence, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

    \*\*\*

Y.  Property Damage means:

1.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.  loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the Occurrence that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z.  Retained Limit means:



     1. the total applicable limits of Scheduled Underlying Insurance and any applicable Other Insurance providing coverage to the Insured; or

     2. the Self-Insured Retention applicable to each Occurrence that results in damages not covered by Scheduled Underlying Insurance nor any applicable Other Insurance providing coverage to the Insured.

\*\*\*

AA. Scheduled Underlying Insurance means:

     1. the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

     2. automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

Scheduled Underlying Insurance does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

\*\*\*

DD. Your Product means:

     1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       a. you;

       b. others trading under your name; or

       c. a person or organization whose business or assets you have acquired; and

     2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Your Product includes:

     1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Product; and

     2. the providing of or failure to provide warnings or instructions.

Your Product does not include vending machines or other property rented to or located for the use of others but not sold.

EE. Your Work means:



1   work or operations performed by you or on your behalf; and

2.  materials, parts or equipment furnished in connection with such work or operations.

Your Work includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Work; and

2.  the providing of or failure to provide warnings or instructions.

***

## SCHEDULE OF UNDERLYING INSURANCE

GENERAL LIABILITY                    ACE American Insurance Co.
       $1,000,000
(Knight Oil tools, Inc.)                           03/31/10
       EACH OCCURRENCE
                                                   03/31/11
       $10,000,000

       GENERAL AGGREGATE

                                                         ***


Architects and Engineers Professional Liability Exclusion

This policy is amended as follows:

Section V. EXCLUSIONS is amended to

    include the following additional exclusion:

    Architects and Engineers

    This insurance does not apply to any liability arising out of any act, error or omission, malpractice or mistake committed or alleged to have been committed by or on behalf of the Insured in the performance of architectural or engineering services, including but not limited to:

    1. the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications; and

    2.  supervisory, inspection or engineering services.



It is understood this exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured**.**

\*\*\*

## Professional Liability Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to

include the following additional exclusion:

Professional Liability

This insurance does not apply to any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the Insured or any person for whom the Insured is legally responsible.

It is understood this exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured**.**

\*\*\*

## Testing or Consulting Errors and Omissions Exclusion Endorsement

This policy is amended as follows:

Section V. EXCLUSIONS is amended to

include the following additional exclusion:

Testing or consulting

This insurance does not apply to Bodily Injury, Property Damage, or Personal Injury and Advertising Injury arising out of:

1.An error, omission, defect or deficiency in:

  a.   any test performed; or

  b.   an

  evaluation, a

  consultation

  or advice

  given, by or



on behalf of

any Insured**;**

2. The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3. An error, omission, defect or deficiency in experimental data or the Insured's interpretation of such data.

\*\*\*