Filed 10/26/2016 4:49:37 PM
Beverly Wilson
District Clerk
Leon County, Texas
Alex Earley

NO. 0-10-498

| | | |
|---|---|---|
| RIPPY OIL COMPANY, RIPPY INTEREST LLC, THE GENECOV GROUP, INC., And JOHN D. PROCTOR, | § § § § | IN THE DISTRICT COURT OF |
| PLAINTIFFS | § § | |
| VS. | § § | LEON COUNTY, TEXAS |
| KNIGHT OIL TOOLS, INC., And PIONEER DRILLING COMPANY, | § § § | |
| DEFENDANTS | § | 278th JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, RIPPY OIL COMPANY ("RIPPY OIL") on its own behalf, and on behalf of all working interest owners, to-wit: Rippy Interest LLC; and The Genecov Group, Inc., and John D. Proctor (hereinafter sometimes referred to as Plaintiffs) complaining of KNIGHT OIL TOOLS, INC. now known as Knight Oil Tools LLC ("KNIGHT OIL TOOLS") and PIONEER DRILLING COMPANY ("PIONEER") hereinafter sometimes referred to as Defendants, and for cause of action, would show the Court the following:

### I.

### DISCOVERY PLAN

Plaintiffs request that the discovery in this case be conducted under Level 3.

### II.

### PARTIES



Plaintiff, RIPPY OIL, is a Texas corporation with its principal place of business in Tyler, Smith County, Texas. Rippy Oil brings suit on its own behalf and on behalf of all working interest owners, to-wit: Rippy Interest LLC; The Genecov Group, Inc., and John Procter.

Plaintiff, RIPPY INTEREST LLC, is a Texas limited liability company with its principal place of business in Tyler, Smith County, Texas.

Plaintiff, THE GENECOV GROUP, INC., is a Texas corporation with its principal place of business in Tyler, Smith County, Texas.

Plaintiff, John D. Proctor, is an individual residing in Tyler, Smith County, Texas.

Defendant, KNIGHT OIL TOOLS, INC., now KNIGHT OIL TOOLS LLC, (Knight Oil Tools) is a Louisiana corporation and now a limited liability company authorized by the Texas Secretary of State to do business in Texas and doing business in Texas. Knight Oil Tools' principal place of business in Texas is Houston, Harris County, Texas. Knight Oil Tools can be served with process by serving its registered agent Timothy R. Brown at 333 Clay Street, Suite 3300, Houston, Texas 77002. Defendant Knight Oil Tools, Inc has made an appearance and is being served with this First Amended Petition by serving its attorney of record.

Defendant, PIONEER DRILLING COMPANY, (Pioneer Drilling) is a Texas corporation with its principal place of business in Texas and can be served with process by serving its registered agent CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Dallas County, Texas 75201. Defendant Pioneer Drilling Company has made an appearance and is being served with this First Amended Petition by serving its attorney of record.

2

III.

JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this lawsuit because the amount in controversy is in excess of the minimal jurisdictional limits of the Court. The Court has personal jurisdiction over Defendants, because they have purposely availed themselves of the privileges and benefits of conducting business in Texas pursuant to §17.042 of the Texas Civil Practice & Remedies Code, have engaged in business in Texas by providing services to Texas residents, which services were to be performed in whole or in part in Texas, and the cause of action made the basis of this suit arises out of Defendants' contacts with and in the state of Texas.

Venue is proper in Leon County, Texas pursuant to the provisions of §§ 15.001, 15.002(a)(1) of the Texas Civil Practice & Remedies Code because Leon County is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

IV.

FACTUAL SUMMARY

At all times mentioned below, Plaintiff Rippy Oil Company was, and is now, engaged in the oil and gas business, including the exploration, drilling, and production of hydrocarbons.

At all times mentioned below, Defendant Knight Oil Tools was, and is now, engaged in the business of providing drilling services including supplying drill pipe and inspection services through its wholly owned, supervised, and captured in-house inspection division Robinson Tubular Services Inc., a Knight Oil Tools company, which merged effective April 4, 2011 into Knight Oil Tools LLC the successor in interest to Knight Oil Tools Inc. which was also merged into Knight Oil Tools LLC in April 2011. Knight Oil Tools LLC assumed all liabilities and obligations of Robinson Tubular

3

Services Inc. and Knight Oil Tools Inc. in April 2011 including liabilities for the drill pipe failure made the basis of this lawsuit.

At all times mentioned below, Defendant Pioneer Drilling was, and is now, engaged in the business of providing drilling services including the use of drill pipe.

Heretofore, Defendants provided Plaintiff certain drilling services, sales, and rentals including the supplying and rental of drill pipe by Defendant Knight Oil Tools for which Defendants have invoiced Plaintiffs in excess of the minimum jurisdictional limits of this Court. Plaintiffs sought the drilling services and drill pipe for use in their well known as the Easterling No. 1-H well located in Leon County, Texas. The Easterling No. 1-H well was one of the first of a multi-well program planned for the Aguila Vado (Eagleford Shale) Field discovered by Rippy Oil Company which comprised approximately 14,000 acres in Leon County. Plaintiffs acquired its mineral acreage at an average cost well below the mineral acreage costs subsequent to Plaintiffs successful discover of the Aguila Vado Field.

The drill pipe supplied and delivered by Defendant Knight Oil Tools to Plaintiffs for utilization by drilling contractor, Defendant Pioneer Drilling, was represented to be API inspected, API Premium Class, 3 ½" O.D. 13.30-PPF Grade S-135 drill pipe with API Premium Class IF or NC38 tool joints designated by center punch mark on pin upset and two white bands around pin end pipe body and accompanying inspection report (hereinafter "drill pipe" or "drill pipe in question"), that was safe, suitable, and fit for use in the horizontal drilling of Plaintiffs' well. Indeed, after allegedly performing the appropriate API inspection pursuant to API Recommended Practice 7G and/or 7G - 2, Defendant Knight Oil Tools marked the drill pipe in question as API Premium with one center punch and two painted double white bands only and no other color paint band or bands

4

on the drill pipe tool joint. Defendant Knight Oil Tools also represented that drill pipe including tool joints had been inspected. Drill pipe marked with one center punch and painted with two double white bands conveys a well established industry representation to users of drill pipe in the oil and gas business that the drill pipe including tool joints, has been inspected and found to be API Premium Class. Defendant Knight Oil Tools knew or in the exercise of ordinary care should have known that one center punch and two painted double white bands conveyed and represented to the user that the drill pipe in question was API inspected and API Premium Class and met certain qualities, characteristics, and capacities that made the drill pipe suitable for use in drilling horizontal wells. Defendant Knight Oil Tools knew that Plaintiffs' drilling consultant and Defendant Pioneer Drilling would be relying on the one center punch and/or double white bands and accompanying inspection papers as a representation that the drill pipe in question was API inspected and API premium class drill pipe, that was safe, suitable, and fit for use in the horizontal drilling of Plaintiffs' well.

At the time the drill pipe was distributed and supplied, Defendants knew or had reason to know the purpose for which Plaintiffs sought the drill pipe and drilling services and that Plaintiffs were relying on Defendants to furnish drill pipe and drilling services suitable and fit for that purpose.

On or about May 11, 2010, Defendant Pioneer Drilling was utilizing the drill pipe supplied and represented to have been API inspected and API Premium Class by Defendant Knight Oil Tools during normal drilling operations and well within the capacity of API Premium Class drill pipe. The drill pipe was being utilized well within the capacity, capabilities, and operating parameters of API Premium Class drill pipe, when the drill pipe supplied by Defendant Knight Oil Tools catastrophically failed, destroying a valuable portion of the Easterling No. 1-H well which prevented

its completion and subsequent production of oil reserves from the target intervals Plaintiffs had successfully penetrated with the Easterling No. 1-H well bore. Plaintiffs made every effort to mitigate their damages by attempting to fish the failed drill pipe, separated drill pipe string, bottom-hole assembly, and drill bit damaged and lost in the hole after notifying Defendant Knight Oil Tools of the drill pipe failure. Despite efforts to salvage same, Plaintiffs could not reproduce the Easterling No. 1-H well with resulting loss of well bore and hydrocarbon reserves, and drilling equipment damaged and lost down hole and charged to Plaintiffs, all of which caused Plaintiffs to suffer damages set forth below in excess of the minimum jurisdictional limits of this Court.

V.

NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary." Defendants were negligent in the selection, inspection, labeling, marking, distribution, representation, and use of the drill pipe in question. Defendants' negligence was a proximate cause of Plaintiffs' damages. Discovery is continuing, and Plaintiffs cannot more specifically allege the specific acts of negligent inspection, distribution, representation, and utilization of the drill pipe in question on the part of Defendants at this time because facts in that regard are particularly within the knowledge of Defendant Knight Oil Tools before delivery of the drill pipe (and after its return) and Defendant Pioneer Drilling after delivery of the drill pipe to the Easterling No. 1-H well-site. In the alternative, in the event Plaintiffs are unable to prove specific acts of negligent inspection, distribution, representation, and utilization of the drill pipe in question, Plaintiffs rely on the doctrine of *res ipsa loquitur*. In this connection, Plaintiffs would show that the character of the occurrence giving rise to this litigation is such that it would not have happened in the absence of negligence, and

6

the inspection, supply, distribution, representation, and use of the drill pipe in question was within the exclusive control of Defendants at the time the negligence probably occurred.

Additionally, Defendant Knight Oil Tools initially represented that it would supply API inspected, API Premium Class drill pipe to Plaintiffs. Defendant Knight Oil Tools undertook to obtain and provide API inspected and API Premium Class drill pipe. Defendant Knight Oil Tools failed to exercise reasonable care to secure API inspected and API Premium Class drill pipe, that was safe, suitable, and fit for use in the horizontal drilling of Plaintiffs' well. Indeed, the drill pipe supplied by Defendant Knight Oil Tools was not properly API inspected or labeled, was not API Premium Class, had undersized O.D. and I.D. tool joints that also exceeded maximum I.D. for API Premium Class drill pipe, and was excessively worn, corroded, pitted, and cracked before it arrived at the Easterling No. 1-H well-site which rendered the drill pipe unsafe, unsuitable, and unfit for the use of the horizontal drilling of Plaintiffs' well. Defendant Knight Oil Tools knowingly supplied Plaintiffs with false and/or misleading information, including but not limited to, the fact that the drill pipe was API inspected and API Premium Class as signified by the false inspection papers, one center punch mark, and painted double white bands on each joint of drill pipe delivered to the well-site including the drill pipe that failed. Plaintiffs relied on the representation and undertaking by Defendant Knight Oil Tools in using the drill pipe. Defendant Knight Oil Tools did not exercise reasonable care or competence in selecting, inspecting, marking, labeling, representing, or communicating information about the drill pipe. If the drill pipe had been as represented by Defendant Knight Oil Tools, Plaintiffs would not have suffered the damages Plaintiffs suffered. The negligence and negligent misrepresentation of Knight Oil Tools in this regard and to be proved at trial was a proximate cause of Plaintiffs' damages.

Moreover, Defendant Pioneer Drilling undertook to visually inspect the drill pipe in question before using same and to notify Plaintiffs of any apparent defects therein. Defendant Pioneer Drilling failed to notify Plaintiffs of any visual defects in the drill pipe in question until after the drill pipe had failed in the well. After the drill pipe failure, it was determined that the drill pipe supplied by Defendant Knight Oil Tools was not properly API inspected or labeled, was not API Premium Class, had undersized O.D. and I.D. tool joints that also exceeded the maximum I.D. for API Premium Class drill pipe and was excessively worn, corroded, pitted, and cracked which rendered the drill pipe unsafe, unsuitable, and unfit for use in the horizontal drilling of Plaintiffs' well. Defendant Pioneer Drilling represented that it would perform a visual inspection of the drill pipe in question. Plaintiffs relied on the representation and undertaking by Defendant Pioneer Drilling. If Defendant Pioneer had discharged its representation and undertaking, Plaintiffs would not have suffered the damages Plaintiffs suffered. Defendant Pioneer Drilling's negligence and negligent misrepresentation in this regard was a proximate cause of Plaintiffs' damages including amounts Defendant Knight Oil Tools seeks to recover from Plaintiffs.

Defendants' negligence and negligent misrepresentation as set out above was a proximate cause of injury to Plaintiffs, which resulted in the following damages: cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' negligence and negligent misrepresentation proximately caused

8

direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore and  hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendants' breach of legal duties owed Plaintiffs.

VI.

STRICT LIABILITY/ PRODUCT LIABILITY

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary," and the causes of action asserted in Paragraph V under "Negligence and Negligent Misrepresentation."

Defendant Knight Oil Tools engaged in the business of designing, manufacturing, constructing, rebuilding, fabricating, processing, assembling, and marketing drill pipe for use (by drilling contractors, mineral interest owners, and operators) in drilling oil and gas wells including lateral on horizontal wells.

The drill pipe in question that was placed in the stream of commerce and distributed by Defendant Knight Oil Tools was defective and unsafe for its intended purpose at the time it left the control of Defendant Knight Oil Tools and at the time it was delivered to Plaintiffs' well-site.  The drill pipe in question was defective in that it failed to conform to its design, specifications, and represented qualities and characteristics, was not properly API inspected or labeled, was not API Premium Class, had undersized O.D. and I.D. tool joints that also exceeded the maximum I.D. for API Premium Class drill pipe and was excessively worn, corroded, pitted, and cracked which rendered the drill pipe unsafe, unsuitable, unfit, and unreasonably dangerous for use in drilling of

9

Plaintiffs' well. The drill pipe in question was in the same or substantially same condition at the time it failed as it was when it was originally distributed by Defendant Knight Oil Tools to the Easterling No. 1-H well-site.  Defendant Knight Oil Tools' defective drill pipe was the producing cause of Plaintiffs' damages: cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' negligence and negligent misrepresentation proximately caused direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendants' breach of legal duties owed Plaintiffs.

Moreover, although Defendant Knight Oil Tools was not the manufacturer of the drilling pipe in question, Defendant Knight Oil Tools is a "manufacturer" as defined by § 82.001(4) and is nevertheless liable for product liability under Chapter 82 of the Texas Civil Practice & Remedy Codes as a "seller" pursuant to § 82.001(3). Specifically, Defendant Knight Oil Tools as seller is liable to Plaintiffs pursuant to § 82.003(a)(2), (4), (5), (6) and (7).

10

## VI.

### BREACH OF EXPRESS WARRANTY OF GOODS

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary." Defendant Knight Oil Tools distributed, sold, rented, and/or otherwise placed in the stream of commerce for commercial purposes and use by Plaintiffs the above-described drill pipe. Defendant Knight Oil Tools made a representation to Plaintiffs about the quality of the drill pipe. Specifically, Defendant Knight Oil Tools represented that the drill pipe supplied and utilized in drilling the Easterling No. 1-H well was API inspected, API Premium Class drill pipe that was safe, suitable, and fit for use in the horizontal drilling of Plaintiffs' well. Among other representations, Defendant Knight Oil Tools marked the drill pipe and distributed same with one center punch mark and double white painted bands only. Defendant Knight Oil Tools also presented a false inspection report with delivery of the drill pipe.

Defendant Knight Oil Tools made the representation as an affirmation of fact. Moreover, Defendant Knight Oil Tools possessed superior knowledge and it is an actionable statement of fact when made, as it was here, by Defendant Knight Oil Tools who knew, or should have known, Plaintiffs were justifiably relying on its superior knowledge. The drill pipe did not comply with Defendant Knight Oil Tools' representations in that the drill pipe was not properly API inspected or labeled and was not API Premium Class, but instead had undersized O.D. and I.D. tool joints that also exceed the maximum I.D. and was excessively worn, corroded, pitted, and cracked, which was a breach of Defendant Knight Oil Tools' express warranty. Plaintiffs notified Defendant Knight Oil Tools of the breach of the express warranty.

11

Defendants' breach of warranty directly and proximately caused injury to Plaintiffs, which resulted in the following damages: cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' breach of warranty proximately caused direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore, hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendant Knight Oil Tools' breach of express warranty.

VII.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary". In the alternative, Plaintiffs would show that Defendant Knight Oil Tools was a seller and distributor of the drill pipe rented and distributed to Plaintiffs.

The drill pipe was unmerchantable when Defendants tendered it to Plaintiffs because it was not properly API inspected or labeled and was not API Premium Class, but instead had undersized O.D. and I.D. tool joints, that also exceeded the maximum I.D. for API Premium

Class drill pipe and was excessively worn, corroded, pitted, and cracked, to the extent that it would not withstand customary drilling activity, with the operational capacity of API Premium Class drill pipe, which is a breach of implied warranty of merchantability.

Plaintiffs notified Defendants of the breach of the warranty of merchantability.

Defendants' breach of implied warranty of merchantability directly and proximately caused injury to Plaintiffs, which resulted in the following damages:  cash market value damages for destruction of that portion of the Easterling No. 1-H well, which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' breach of warranty proximately caused direct and/or consequential damages to include the loss of the Easterling No. 1-H lateral well bore, hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendant Knight Oil Tools' breach of warranty.

Further, Defendant Knight Oil Tools distributed the drill pipe in question knowing that Plaintiffs sought the drill pipe for use in drilling its well.  Defendant Knight Oil Tools knew that Plaintiffs were relying on Defendant Knight Oil Tools' skill or judgment to select, inspect, and classify drill pipe fit for API Premium Class designation, identified by one center punch and double white bands, for the intended purpose.  Defendants delivered and utilized drill pipe that

was not properly API inspected and labeled; was not API Premium Class as noted above; was not

acceptable or worthy to receive one center punch and be painted with double white bands only;

and was so defective and flawed because of excessive wear, corrosion, pitting, and cracking that

the drill pipe was unfit for use in any drilling including horizontal drilling.

Plaintiffs notified Defendants of the breach of the warranty of fitness for a particular

purpose.

Defendants' breach of implied warranty of fitness for a particular purpose directly and

proximately caused injury to Plaintiffs, which resulted in the following damages:

Cash market value damages for destruction of that portion of the Easterling No. 1-H well,

which is the market value of the well less any salvage value, because reproducing that portion of

the well is impossible and the cost would exceed its value due to the irreparable damage

occasioned to that portion of the well.  In the alternative, should the trier of fact find that the

Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and

necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendant Knight Oil

Tools' breach caused direct and/or consequential damages to include the loss of the Easterling

No. 1-H lateral well bore and hydrocarbon reserves, the additional drilling costs incurred

following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and

other rental equipment lost down hole all of which damages were legally caused by the drill pipe

failure and Defendant Knight Oil Tools' breach of warranty of merchantability and fitness for a

particular purpose.

VIII.

<u>VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT</u>

Plaintiffs incorporate herein by reference the factual allegations contained in the preceding Paragraphs V, VI, VII, as well as those allegations set forth in Paragraph IV under "Factual Summary".

Defendant Knight Oil Tools engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act (Tex. Bus. & Comm. Code § 17.41 et. seq.) as alleged herein.

Defendants violated § 17.46(b) of the Texas Business & Commerce Code in that Defendants:

a. represented that goods (drill pipe) were of a particular standard, quality or grade, or that goods are of a particular style or model , when they are of another;

b. represented that goods (drill pipe) had approval, characteristics or uses that they did have not have;

c. failed to disclose information about goods (drill pipe) that was known at the time of the transaction with the intention to induce Plaintiff into a transaction it otherwise would not have entered into if the information had been disclosed for the benefit of others, including the Plaintiffs;

d. caused confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services. (drill pipe and inspection of same).

As described above in Paragraphs V, VI, and VII, these acts, practices and/or omissions by Defendant Knight Oil Tools were false, misleading and deceptive. As previously described, Plaintiffs relied upon all of these acts, practices, and/or omissions to their detriment, and they were a producing cause of damages to Plaintiffs.

15

Moreover, Defendant Knight Oil Tools have violated Texas Business & Commerce Code § 17.50 by breaching the express and implied warranties described above in Paragraphs VI and VII.

The acts, practices, and/or omissions made by Defendant Knight Oil Tools and the warranties breached by Defendant Knight Oil Tools were a producing cause of Plaintiffs' damages in an amount in excess of the minimum jurisdictional limits of this Court.

The acts, practices and/or omissions made by Defendant Knight Oil Tools as described above were committed knowingly.  Defendant Knight Oil Tools was actually aware, at the time of their conduct, of the falsity and deception about which Plaintiffs are complaining.  Moreover, Defendant Knight Oil Tools were aware of the conditions, defects or failures which constitute the breaches of warranties described above.

Plaintiffs would further assert the applicability of Section 17.42 of the Texas Business and Commerce Code and that any attempt by Defendant Knight Oil Tools to assert waiver release, limitation of liability, indemnity, or other alleged exculpatory defenses are contrary to public policy, unenforceable, and void.

Defendant Knight Oil Tools' violation of the Texas Deceptive Trade Practices Act was a proximate and/or producing cause of injury to Plaintiffs which resulted in the following damages: cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to

reproduce the Easterling No. 1-H well. Additionally, Defendants' violation of the Texas Deceptive Trade Practices Act was a producing and/or proximate cause of direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendant Knight Oil Tools' violations of the Texas Deceptive Trade Practices Act.

IX.

GROSS NEGLIGENCE

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary" and Paragraph V under "Negligence and Negligent Misrepresentation."

Plaintiffs would further show that the conduct of Defendants when viewed objectively from Defendants' stand point at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeding with conscious indifference to the rights, safety, or welfare of others.  As a result of Defendants' gross negligence, Plaintiffs are entitled to punitive and/or exemplary damages pursuant to Chapter 41 of the Texas Civil Practice & Remedies Code. Moreover, exemplary damages are not capped in this case as Defendant Knight Oil Tools violated § 41.008(c)(11) of the Texas Civil Practice & Remedies Code and § 32.46 of the Texas Penal Code by securing execution of a document by deception.

X.

<u>BREACH OF CONTRACT</u>

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under

"Factual Summary." In the alternative, and without waiving the causes of action plead above in

Paragraphs V, VI, VII, VIII, and IX, Plaintiffs would assert that Defendant Knight Oil Tools and

Defendant Pioneer Drilling agreed to provide certain drilling goods and/or services, including the

supplying of drill pipe represented to be API inspected and API Premium Class drill pipe. The

drill pipe in question failed under normal and customary drilling activity within the represented

capacity of API Premium Class drill pipe. Defendants knew that Plaintiffs were relying on

Defendants' skill or judgment to properly select, inspect, label, represent, and deliver drill pipe

fit for the intended purpose. Defendants selected, inspected, labeled, delivered, represented, and

utilized drill pipe that was not API inspected; was not API Premium Class; was misrepresented

as double white band with one center punch mark when in fact it had undersized O.D. and I.D.

tool joints, that also exceeded the maximum I.D. for API Premium Class pipe and was so

excessively worn, corroded, pitted, and cracked that the drill pipe was unfit for use in horizontal

drilling and should never have been marked with one center punch mark and painted as double

white band API Premium Class drill pipe and delivered to the Easterling well-site. Defendants

breached its agreement with Plaintiffs. As a proximate cause of said breach, Plaintiffs have been

damaged in excess of the minimum jurisdictional limits of this Court including: cash market

value damages for destruction of that portion of the Easterling No. 1-H well which is the market

value of the well less any salvage value, because reproducing that portion of the well is

impossible and the cost would exceed its value due to the irreparable damage occasioned to that

portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well

could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to

reproduce the Easterling No. 1-H well. Additionally, Defendants' breach of contract proximately

caused direct and/or consequential damages including the loss of the Easterling No. 1-H lateral

well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe

separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment

lost down hole all of which damages were legally caused by the drill pipe failure and Defendant

Knight Oil Tools' breach of contract.

XI.

FRAUD

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under

"Factual Summary" and Paragraphs VII, VIII, and IX. Defendant Knight Oil Tools made false

representations by representing that the drill pipe was API inspected and by classifying the drill

pipe in question as API Premium Class. Moreover, Defendant Knight Oil Tools fraudulently

represented the drill pipe was API Premium Class by use of one center punch mark and double

white bands only on each joint drill pipe delivered to the Easterling No. 1-H well site

accompanied by a false inspection report when in fact the drill pipe in question was not API

Premium Class and could not be classified as API Premium Class. These representations were

material and false in that had the drill pipe been properly inspected and marked it would not have

been classified API premium and marked with one center punch mark and painted with a double

white band only.  When Defendant, Knight Oil Tools, made this representation, they knew the

representation was false or made the representation recklessly, as a positive assertion, without

19

knowledge of its truth.  Likewise, Defendant Knight Oil Tools made the representation with the intent that Plaintiffs act on it.  Plaintiffs relied on the representations to their detriment in that had the drill pipe in question been properly inspected and classified it would not have been marked with one center punch mark and double white bands only or otherwise accompanied by a false inspection report and would not have been used in the drilling of Plaintiffs' well.  As a proximate cause of Defendants' fraud, Plaintiffs have been damaged in excess of the minimal jurisdictional limits of this Court including:  cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' fraud proximately caused direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendant Knight Oil Tools' fraud.

XII.

AIDING AND ABETTING, CIVIL CONSPIRACY,

CONCERT OF ACTION, SPOLIATION, AND SUCCESSOR LIABILITY

Defendant Knight Oil Tools, and its employees, agents, and representatives had a duty to exercise reasonable care and judgment in its inspection of the drill pipe in question to ensure it

20

complied with API specifications including API Recommended Practice 7G or 7G-2 or other applicable industry guidelines for certifying API Premium Class drill pipe that would be safe, suitable or fit for the use as intended. Defendant Knight Oil Tools failed to exercise reasonable care and judgment in the selection, assessment, evaluation, inspection, and representations of the condition of the drill pipe in question. As a result, Defendant Knight Oil Tools delivered excessively worn, corroded, pitted, and cracked drill pipe that was negligently, falsely, fraudulently, and/or deceptively marked as API Premium Class drill pipe when it was not API Premium Class and should have never been delivered to the Easterling No. 1-H drill site. Moreover, Defendant Knight Oil Tools measured and recorded minimum O.D .numbers on numerous joints of drill pipe including the joint of drill pipe that failed which did not meet O.D. minimums or I.D. maximums for tool joints required by API Premium Class certification and industry standards. Further, had Defendant Knight Oil Tools properly performed a standard API Recommended Practice 7G or 7G-2 inspection, the drill pipe that failed would not have been classified as API Premium Class, would have been accompanied by proper inspection papers instead of the false inspection report that was delivered, and would not have been used in the Easterling No. 1-H well. Despite failing to perform the API recommended practice 7G or 7G-2 inspection, Robinson Tubular Services, Defendant Knight Oil Tools' wholly owned, controlled, and supervised in-house inspection service, which was not an independent third party inspection service, with Defendant Knight Oil Tools knowledge, approval, and ratification, nevertheless, placed one center punch mark on pin upset and painted double white bands on the drill pipe in question representing to all foreseeable users that the drill pipe was API Premium Class when it was not. Plaintiffs believe that Defendant Knight Oil Tools and its wholly owned, controlled, and

supervised in-house inspection service Robinson Tubular Services, a Knight Oil Tools company, which was merged into Knight Oil Tools LLC in April 2011, entered into an agreement to misrepresent a mixed string of different weight, worn out, corroded, pitted, and cracked drill pipe, as API inspected, API Premium Class, utilizing one center punch mark and double white bands only, when in fact the drill pipe in question was not fit to be classified as API Premium Class, double white banded drill pipe. Following its failure, Defendant Knight Oil Tools has conspired to cover up the evidence that the drill pipe in question was not API inspected, API Premium Class, double white banded drill pipe. Accordingly, Defendant Knight Oil Tools is responsible for the acts of the others including Knight Oil Tools wholly owned, controlled, and supervised in-house inspection service Robinson Tubular Services, a Knight company, that were done in the furtherance of the common purpose to cover up the misrepresentation of the drill pipe in question.

Moreover, such conduct constitutes spoliation and Plaintiffs would request an appropriate spoliation instruction at the time this case is submitted to the jury.

Subsequent to the drill pipe failure and filing of this suit, Knight Oil Tools Inc. and Robinson Tubular Services Inc. were merged into Knight Oil Tools LLC which assumed the liabilities and obligations of Knight Oil Tools Inc. and Robinson Tubular Services Inc. Knight Oil Tools Inc., now Knight Oil Tools LLC, is the named insured on the policies of liability insurance produced by Defendant Knight Oil Tools in this case in response to Request for Disclosures.

## XIII.

## DAMAGES

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary," and the causes of action asserted in Paragraphs V, VI, VII, VIII, IX, X, XI, and XII.

As a result of Defendants' strict liability/ product liability, breach of warranty, negligence, negligent misrepresentation, violations of the Texas Deceptive Practices Act, gross negligence, breach of contract, and fraud as set out in Paragraphs V through XII, Plaintiffs have suffered damages in excess of the minimal jurisdictional limits of this Court to include:

a.    General damages;

b.    Special damages;

c.    Actual damages;

d.    Incidental and consequential damages;

e.    Cash-market value of the Easterling No. 1-H well and hydrocarbon reserves;

f.    Out-of-pocket damages including the loss of the Easterling No. 1-H lateral well bore and the cost of the drill bit, bottom-hole assembly, and other rental equipment damaged, lost, and/or destroyed down hole;

g.    Loss of use damages;

h.    Mitigation damages including the cost to attempt to fish the drill pipe that separated along with the drill pipe string, bottom-hole assembly, and drill bit;

i.    Loss profits;

j.    Repair and/or replacement damages;

k.  Damages to the Easterling No. 1-H well lease and/or loss of reservoir and/or reservoir damage and lost hydrocarbon reserves; or in the alternative, the cost to reproduce the Easterling No. 1-H well;

l.  Additional or treble damages permitted under the Texas Deceptive Treble Practices Act;

m.  Punitive and/or exemplary damages as allowed by law;

n.  Reasonable and necessary attorneys' fees and costs through trial and on appeal;

o.  Pre-judgment interest and post-judgment interest as permitted by law; and

p.  Taxable court costs.

## XIV.

## ATTORNEYS' FEES

This is the type of action against Defendant Knight Oil Tools that gives rise to attorneys' fees and, therefore, Plaintiffs would further show that it was necessary to employ the services of The Krist Law Firm, P.C. and the firm of Tekell, Book, Allen & Morris, L.L.P. and specifically, Ronald D. Krist and Mike Morris, in order to assert their claim again Defendants. Accordingly, Plaintiffs seek to recover attorneys' fees, expenses, and costs pursuant to Tex. Civ. Prac. & Rem. Code. §38.001 and Section 17.50(d) of the Texas Deceptive Trade Practices Act to prosecute this matter to conclusion through trial and on appeal.

## XV.

## CONDITIONS PRECEDENT

Pursuant to Texas Rule of Civil Procedure 54, Plaintiffs aver generally that all conditions precedent have been performed or have occurred.

## XVI.

### SELF-AUTHENTICATION

Pursuant to Texas Rule of Civil Procedure 193.7, Plaintiffs hereby give actual written notice that all documents produced in this litigation shall be used by the Plaintiffs at pre-trial proceedings and trial.  Hence, all documents produced in this litigation are deemed self-authenticating for use in any pre-trial proceeding or at trial; and any objections thereto by the Defendants shall be in writing or placed on the record, giving Plaintiffs a reasonable opportunity to establish the challenged documents authenticity.

## XVII.

### RESERVATION OF RIGHTS

Plaintiffs fully reserve the right to amend or supplement this petition to add additional causes of action, parties and/or claims as discovery continues.

## XVIII.

### MONETARY RELIEF REQUESTED

Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs seek monetary relief over $1,000,000. Plaintiffs would state that the actual, exemplary, and/or additional damages awarded Plaintiffs are within the sound discretion of the trier of fact. Pursuant to Defendants special exceptions and request under Texas Rule of Civil Procedure 47(d), Plaintiffs seek a maximum amount of direct and consequential economic and actual damages, excluding pre-judgment and post-judgment interest, attorneys' fees and costs, not to exceed $11,239,642; additional damages not to exceed three times the amount of economic damages found; and/or

exemplary damages to be awarded as a penalty or by way of punishment, in the discretion of the jury not to exceed $30,000,000.

## XIX.

## JURY REQUEST

Plaintiffs request a jury trial of this matter and have accordingly paid the proper fee with the filing of Plaintiffs' Original Petition and continue to demand a jury trial pursuant to Texas Rule of Civil Procedure 216.

## XX.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have:

(1)    judgment against Defendants for all direct and consequential economic and actual damages, exemplary damages, and/or additional damages in a sum in excess of the minium the jurisdictional limits of this Court;

(2)    pre-judgment and post-judgment interest at the maximum rate permitted by law;

(3)    costs of court;

(4)    attorneys' fees and expenses litigation through trial and on appeal; and

(5)    such other and further relief to which Plaintiffs may be justly entitled.

Respectfully Submitted,

THE KRIST LAW FIRM, P.C.

BY: _Ronald D Krist_
RONALD D. KRIST
State Bar No. 11727000

26

Marina View Building
2600 South Shore Blvd., Suite 120
League City, Texas 77573
(281) 283-8500
(281) 488-3489 - Fax

TEKELL, BOOK, ALLEN & MORRIS, L.L.P.

BY: _____
MIKE MORRIS
State Bar No. 14495800
1221 McKinney, Suite 4300
Houston, Texas 77010-2010
(713) 222-9542
(713) 655-7727  - Fax

ATTORNEYS FOR PLAINTIFFS, RIPPY OIL
COMPANY, RIPPY INTEREST LLC, THE
GENECOV GROUP, INC., and JOHN PROCTER

27